UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
|     - v - | :    **19 Cr. 521(PKC)** |
| | : |
| **PETER BRIGHT,** | : |
|     Defendant. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### DEFENDANT PETER BRIGHT'S
### MOTION TO SUPPRESS STATEMENTS

                                         Federal Defenders of New York
                                         Attorneys for Defendant
                                         52 Duane Street - 10th Floor
                                         New York, NY 10007
                                         Tel.: (212) 417-8735/8728

                                         **Zawadi Baharanyi**
                                         **Amy Gallicchio**
                                                Of Counsel

| | |
|---|---|
| TO: | GEOFFREY BERMAN |
| | United States Attorney |
| | Southern District of New York |
| | One St. Andrew's Plaza |
| | New York, NY 10007 |
| **Attn:** | **AUSA Alexander Li** |

## NOTICE OF MOTION

Defendant Peter Bright hereby moves this Court, pursuant to Rule 12 of the Federal Rules of Criminal Procedure, for an order suppressing Mr. Bright's post-arrest statements made during his interrogation at an FBI office in New York.[1] These statements were elicited from Mr. Bright after he had invoked his Fifth Amendment right to counsel, under Miranda v. Arizona, 384 U.S. 436 (1966), and its progeny.

## BACKGROUND[2]

Mr. Bright was arrested in connection with this case on May 22, 2019. After his arrest, FBI Agents transported him to a FBI field office in New York. While en route, the agents told Mr. Bright that he would have the chance to talk about what happened when they reached the office. The agents did not advise Mr. Bright of his Miranda right to counsel or his right to remain silent during the car ride.

At the FBI office, Mr. Bright was taken into a room and handcuffed to a rail affixed to a wall. Shortly after, Detective Arkens interviewed Mr. Bright, obtaining pedigree information. Mr. Bright revealed during this exchange that he was born in the United Kingdom and lives in New York. After Detective Arkens finished

---

[1] At the October 18, 2019 conference in this matter, Mr. Bright informed the Court of his intention also to move for suppression of post-arrest statements made by him while he was being transported to the FBI field office. At the conference, the government provided notice that it does not intend to use these statements at trial. In an abundance of caution, Mr. Bright informs the Court that these statements were taken in violation of Miranda and were also made involuntarily under the Fifth Amendment.

[2] This background is based on information and belief, review of the discovery in this matter, and communications with the government.

gathering pedigree information, FBI Agent Spivak and FBI Agent Adamczyk entered the room, sat across from Mr. Bright, and began questioning him. The Agents told Mr. Bright that they were interested in information he could provide about "Liz," the person he had been communicating with online and met prior to his arrest who was in fact an undercover FBI Agent.  The following exchange then occurred:

**SPIVAK:**  I stopped the recording.  So, again, this is just so we can have a conversation freely about Liz.

**PETER BRIGHT:**  Okay.

**SPIVAK:**  Okay?  Before we ask you any questions, [PH] understand your rights.  You have the right to remain silent.  Anything you say can be used against you in court.  You have the right to talk to a lawyer for advice before we ask you any questions.  You have the right to have a lawyer with you during questioning.  If you cannot afford a lawyer, one will be appointed for you before any questions if you wish.

**PETER BRIGHT:**  Yeah.

**SPIVAK:**  And if you decide to answer questions without a lawyer present, you have the right to stop answering at any time.  You understand everything I just said to you?

**PETER BRIGHT:**  Yeah.

**SPIVAK:**  Yeah, you're cool talking to us today?

2

**PETER BRIGHT:**  In an ideal world, I would have a lawyer here.  But I'll answer your questions.  It's fine.

Mr. Bright's statement that in an "ideal world" he would have counsel with him was an invocation of his right to counsel. Despite this statement, Agent Spivak and Agent Adamczyk continued to question him in detail about his alleged conduct for over an hour.

In July 2019, Mr. Bright was indicted for one count of Attempted Enticement of a Minor, in violation of 18 U.S.C. § 922(g)(1).  Among the evidence that the government seeks to introduce against him at trial are the post-arrest statements he made after he had invoked his right to counsel.

## **ARGUMENT**

In Miranda v. Arizona, the Supreme Court recognized certain rights of the accused when subjected to custodial interrogation. One such right is the right to counsel during custodial interrogation. To safeguard their Fifth Amendment right against self-incrimination, "a suspect subject to custodial interrogation has the right to consult with an attorney and to have counsel present during questioning, and . . . the police must explain this right to him before questioning begins." Davis v. U.S., 512 U.S. 452, 457 (1994) (citing Miranda v. Arizona, 384 U.S. 436, 469-473 (1966)).

Once a suspect invokes his right to counsel, interrogation must stop until counsel is present or until the suspect initiates communication with law enforcement, thus waiving his rights under Miranda. See Edwards v. Arizona, 451

3

U.S. 477 (1981); Wood v. Ercole, 644 F.3d 83, 90 (2d Cir. 2011). This rule, established in Edwards, applies to all post-invocation custodial interrogations, unless there has been a significant break in custody. See Maryland v. Shatazer, 559 U.S. 98, 111 (2010) (holding that a 14-day break in custody following Shatzer's invocation of his right to counsel was sufficient to eliminate the coercive effects of custody allowing for a valid subsequent waiver of the Miranda right to counsel). Custodial statements obtained after an invocation of the right to counsel without an attorney present or without a clear and voluntary waiver by the accused, cannot be used by the government in its case-in-chief.

By this motion Mr. Bright seeks suppression of all statements elicited from him by FBI agents after he had invoked his right to counsel.

### 1. Mr. Bright's Statements to FBI Agents Were a Clear Invocation of His Right to Counsel

Mr. Bright's statements to FBI agents during his interrogation in an FBI field office must be suppressed because they were elicited after he invoked his Miranda right to counsel. Invoking the right to counsel requires no magic set of words. See Miranda, 384 U.S. at 444 ("If . . .[the defendant] indicates in *any* manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." (emphasis added)). The accused must simply "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Davis, 512 U.S. at 459.

4

Using this objective test, courts in the Second Circuit have examined the circumstances surrounding the custodial statements of the accused to determine whether there has been an invocation of the right to counsel. See Wood v. Ercole, 644 F.3d 83, 91 (2d Cir. 2011) (concluding that the defendant's statement, "I think I should get a lawyer," was an unambiguous invocation considering the circumstances surrounding his interrogation); see also United States v. Seppala, No. 16-CR-436 (KMW), 2017 WL 5633167, at *3 (S.D.N.Y. Nov. 22, 2017) (considering the defendant's prior record and prior experience with law enforcement interrogations in deciding that his statement, "Do I have an opportunity to call an attorney?" was an invocation of his right to counsel); Thompson v. Fischer, No. 02-CV-0526 (JBW), 2003 WL 23198787, at *15 (E.D.N.Y. Oct. 31, 2003) ( "Given petitioner's criminal record, he was sufficiently sophisticated to express his desire for a lawyer if he had wanted one.")

Here, Mr. Bright invoked his Miranda right to counsel early in his interrogation by FBI agents. After being read his Miranda rights, Mr. Bright stated, "In an ideal world, I would have a lawyer here." Mr. Bright's statement was an invocation of his right to counsel. While saying, "I assert my right to counsel" or "I want a lawyer" would be ideal invocations, such language is not required. Wood, 644 F.3d at 92  ("[W]e refuse to require criminal defendants to 'speak with the discrimination of an Oxford don.'") (quoting Davis, 512 U.S. at 476). Mr. Bright did not need an ideal world to be entitled to counsel while he was being interrogated by two FBI agents, nor was he required to use any particular language or phrase to

5

assert this right to counsel. A reasonable officer should have understood Mr. Bright's statement to be an indication that he wanted to have a lawyer present before continuing with the interrogation.

The circumstances surrounding Mr. Bright's statement to law enforcement provide further proof that he invoked his right to counsel. Mr. Bright is not a native of the United States. FBI agents were aware that Mr. Bright was born and lived most of his life in England. Moreover, Mr. Bright's arrest in this matter is his first contact with the criminal justice system. Mr. Bright's lack of familiarity with the criminal justice system matters when evaluating his choice of words in invoking his right to counsel. While a savvier defendant might have more clearly articulated his desire for counsel, Mr. Bright is neither from this country nor familiar with its criminal processes. His statement about having a lawyer in an "ideal world," reveals a desire for a lawyer expressed by someone uncertain of his right to one and how to assert it. In light of Mr. Bright's background, known by the agents at the time of questioning, his statements reasonably conveyed his preference to have a lawyer present during the interrogation.

    2.    **Mr. Bright Did Not Waive His Right to Counsel After FBI Agents Continued to Engage Him**

By invoking his Miranda right to counsel, Mr. Bright was entitled to additional protections. Absent a significant break in custody, law enforcement cannot continue to question a suspect "even if he has been advised of his rights." Edwards, 451 U.S. at 484. The additional protections established in Edwards are

designed to protect suspects from undue coercion after they have asserted their right to counsel. The Court in Edwards recognized that repeated questioning or engagement by law enforcement after an invocation, even if the suspect has again been advised of his rights, would have a coercive effect thereby jeopardizing a suspect's Fifth Amendment right against compelled self-incrimination. Id.

After Mr. Bright expressed his preference for a lawyer, FBI agents continued to engage him:

**SPIVAK:** -- you know, the recording was about.  Look, you have every right to a lawyer.

**ADAMCZYK:**  Yeah.

**SPIVAK:**  What we'll ask, you know, if you don't like anything that we're saying, you can tell us to, you know, to stop, okay?  Is that fair?

**ADAMCZYK:**  Or, you -- yeah, if there's a question –

**PETER BRIGHT:**  That's fine.  Yeah.

**ADAMCZYK:**  -- you don't like, you say I don't want to answer that question.

At no point did the agents stop their communication with Mr. Bright. Instead, they continued to speak with him and declined to provide him with an opportunity to consult with a lawyer. The agents eventually instructed Mr. Bright to read and sign the Miranda waiver of rights form. The agents' actions communicated to Mr. Bright that although they were aware of his desire for a lawyer, they would nonetheless seek a waiver of his right to counsel. But, Edwards

7

makes clear that this waiver after invocation was not valid. Id; see also Seppala, 2017 WL 5633167, at *4 (finding that the defendant had not waived his Miranda right to counsel after invoking despite reading and signing a waiver of rights form).

Mr. Bright did not re-initiate communication with FBI agents after invoking his right to counsel because there was never a break in their communication. The agents did not stop questioning him after he expressed his desire for counsel. Therefore, consistent with the rule established in Edwards, Mr. Bright's subsequent waiver of his Miranda right to counsel was not voluntary.

### 3. Mr. Bright's statements must be suppressed as they were elicited in violation of his *Miranda* rights

"Evidence collected in violation of a suspect's right to counsel is inadmissible as part of the prosecution's case-in-chief." Wood, 644 F.3d at 90-91 (citing Miranda v. Arizona, 384 U.S. at 494, 86 S.Ct. 1602); United States v. Morales, 788 F.2d 883, 885 (2d Cir.1986). Mr. Bright invoked his right to counsel when he expressed his desire for the presence of counsel during his interrogation. Yet, agents continued to question and engage him after this invocation without counsel and without a valid waiver. Therefore, statements elicited from Mr. Bright after he invoked his right to counsel must be suppressed pursuant to Miranda v. Arizona.

## CONCLUSION

The Court should grant this motion and suppress the statements obtained in violation of Mr. Bright's Miranda right to counsel. In the alterative, the Court should hold an evidentiary hearing on this motion.

Dated:   New York, New York
         November 1, 2019

                                      Respectfully submitted,
                                      Federal Defenders of New York

                    By:   /s/
                                      **Zawadi Baharanyi**
                                      **Amy Gallicchio**
                                      Attorneys for Defendant
                                      52 Duane Street - 10th Floor
                                      New York, New York 10007
                                      Tel.: (212) 417-8735