UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

PETER BRIGHT,

           Defendant.

---

19 Cr. 521 (PKC)

 

# THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S MOTION TO SUPPRESS STATEMENTS

 

                                          GEOFFREY S. BERMAN
                                          United States Attorney for the
                                          Southern District of New York
                                          One Saint Andrew's Plaza
                                          New York, NY 10007

Alexander Li
Assistant United States Attorney
    *Of Counsel*

**PRELIMINARY STATEMENT**

By motion dated November 1, 2019 ("Mem."), ECF Doc. No. 13, defendant Peter Bright seeks to suppress his post-arrest statements on the ground that they were elicited after he said, "In an ideal world, I would have a lawyer here." Because Bright's reference to a hypothetical lawyer was not an "an unambiguous or unequivocal request for counsel," *Davis v. United States*, 512 U.S. 452, 462 (1994), it was not an invocation of his Fifth Amendment right to counsel. This is particularly so given the interviewing agents' immediate follow-up colloquy with Bright, in which he confirmed both orally and in writing that he was willing to speak to law enforcement without a lawyer present. Bright's motion to suppress should therefore be denied without an evidentiary hearing.[1]

**BACKGROUND**

Bright is charged in this case with attempted child enticement, in violation of 18 U.S.C. §§ 2422(b) and 2. As alleged in the complaint, ECF Doc. No. 1, between April 18, 2019 and May 22, 2019, Bright engaged in text message and telephone communications with an undercover agent (the "UC") of the Federal Bureau of Investigation ("FBI"), who was posing as the mother of a nine-year-old boy and a seven-year-old girl (the "Minors"). In the course of these communications, Bright and the UC discussed the possibility of Bright meeting the Minors to engage in sexual activity. On May 22, 2019, Bright met the UC in person and was arrested by the FBI as he was walking to the UC's purported residence to meet the Minors.

Following his arrest, Bright was driven to an FBI office, where he provided pedigree information. Bright was then interviewed by FBI Special Agents Aaron Spivack and Leslie

---

[1] Prior to the filing of the defendant's motion, the Court scheduled an evidentiary hearing for November 18, 2019. Because the papers make clear there is no material factual dispute, no evidentiary hearing is needed to resolve the defendant's motion.

Adamczyk. At the start of the interview, which was video-recorded, Bright and the agents had the following exchange:

> SPIVACK: Before we ask you any questions, understand your rights. You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions. You have the right to have a lawyer with you during questioning. If you cannot afford a lawyer, one will be appointed for you before any questions if you wish.
>
> BRIGHT: Yeah.
>
> SPIVACK: And if you decide to answer questions without a lawyer present, you have the right to stop answering at any time. You understand everything I just said to you?
>
> BRIGHT: Yeah.
>
> SPIVACK: Yeah, you're cool talking to us today?
>
> BRIGHT: In an ideal world, I would have a lawyer here. Um, but I'm happy to answer your questions. It's fine.
>
> SPIVACK: We're curious to hear, obviously, what the, you know, the recording was about.[2] Look, you have every right to a lawyer.
>
> BRIGHT: Yeah.
>
> SPIVACK: What we'll ask, you know, if you don't like anything that we're saying, you can tell us to, you know, to stop, okay? Is that fair?
>
> BRIGHT: Yes, that -- yeah it is.
>
> ADAMCZYK: Or, you -- yeah, if there's a question you don't like, you say "I don't want to answer that question."
>
> SPIVACK: The only thing that Leslie and I will ask of you this during this, uh, is just to be honest with us. Like Leslie said, if there's a

---

[2] Before meeting the UC, Bright initiated an audio recording on a phone that he carried on his person. The recording was active from that time through the beginning of his post-arrest interview with the agents. In Bright's presence, Agent Spivack stopped Bright's recording before the exchange transcribed above. *See* Mem. at 2.

2

|  |  |  |
|---|---|---|
|  |  | question you don't like, rather than lie about it, just ask to move on. Is that okay? |
| BRIGHT: |  | Yeah, that's fine. |
| SPIVACK: |  | Fair agreement? |
| BRIGHT: |  | Yeah. |
| ADAMCZYK: |  | If you could just read, starting there-- |
| BRIGHT: |  | "I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present." |

Bright then signed a written consent form, attached hereto as Exhibit A, that included the text of the waiver he had just read out loud.

Following his oral and written waiver, Bright made statements to the agents in which he admitted, among other things, that he was the person who had been communicating with the UC about engaging in sexual activity with the Minors.

## ARGUMENT

In *Davis v. United States*, the Supreme Court held that a "suspect must unambiguously request counsel" in order to invoke his right to counsel under the Fifth Amendment. 512 U.S. at 459. "If an accused makes a statement concerning the right to counsel 'that is ambiguous or equivocal' or makes no statement, the police are not required to end the interrogation, *ibid.*, or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights." *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010) (quoting *Davis*, 512 U.S. at 461–62). Consistent with this rule, courts have held remarks far more direct than Bright's — "In an ideal world, I would have a lawyer here" — not to be an invocation:

- "I think I want a lawyer," followed by "Do you think I need a lawyer?" *Diaz v. Senkowski*, 76 F.3d 61, 63 (2d Cir. 1996).

- Defendant stated he "was going to get a lawyer." *United States v. Scarpa*, 897 F.2d 63, 68 (2d Cir. 1990).

- Defendant "informed the officers that he had a lawyer for an unrelated charge." *United States v. Oehne*, 698 F.3d 119, 123 (2d Cir. 2012).

- "Maybe I should talk to a lawyer." *Davis*, 512 U.S. at 462.

*See also United States v. Banki*, No. 10 Cr. 08, 2010 WL 11606510, at *2 (S.D.N.Y. Mar. 24, 2010) (JFK) (surveying cases). Because Bright's reference to a lawyer in "an ideal world" was not an "unambiguous or unequivocal request for counsel," *Davis*, 512 U.S. at 462, Bright did not invoke his Fifth Amendment right to counsel.

Relying principally upon *Wood v. Ercole*, 644 F.3d 83 (2d Cir. 2011), Bright argues that this Court should look to the circumstances surrounding Bright's remark to divine his true intent. (Mem. at 4–6). But the circumstances in this case *confirm* Bright's waiver. In *Wood*, the Second Circuit held any ambiguity in the statement "I think I should get a lawyer" was resolved in favor of invocation when, immediately following Wood's statement, the detective responded "ok," handed Wood a telephone, and left the room. 644 F.3d at 91. Here, by contrast, any ambiguity in Bright's reference to a lawyer in "an ideal world" was resolved by his very next words: "Um, but I'm happy to answer your questions. It's fine."[3]

The agents' ensuing colloquy with Bright further confirm his intent to speak without a lawyer present. While not required, *Davis*, 512 U.S. at 461–62, the agents in this case took up the suggestion in *Wood* to ask "a clarifying question designed to ferret out [the accused's] true

---

[3] Bright suggests he is not "savv[y]" because he is "neither from this country nor familiar with its criminal processes." Mem. at 6. Bright is a dual citizen of the United Kingdom and the United States — both English-speaking countries — and worked as journalist in the United States.

4

intent."  644 F.3d at 91.  After Bright's remark about an "ideal world," Agent Spivack reiterated to Bright that "you have every right to a lawyer."  Agent Spivack then proposed they speak subject to Bright's option to skip any question and asked Bright if it was a "fair agreement."  Bright answered in the affirmative.  Finally, at Agent Adamczyk's request, Bright reviewed and read out loud the statement on a written waiver, which Bright signed immediately thereafter (Ex. A), that "[a]t this time, I am willing to answer questions without a lawyer present."  Far from invoking his right to counsel, Bright's words and actions clearly conveyed that he understood his rights and wished to waive them.  *See United States v. Taylor*, 745 F.3d 15, 23 (2d Cir. 2014) ("In general, a suspect who reads, acknowledges, and signs an 'advice of rights' form before making a statement has knowingly and voluntarily waived *Miranda* rights.").

## CONCLUSION

In sum, Bright's statement that "In an ideal world, I would have a lawyer here" was not an unambiguous request for counsel and therefore imposed no obligation on the agents to cease questioning or ask clarifying questions.  Nevertheless, the agents did clarify and Bright confirmed, both orally and in writing, that he was willing to speak without a lawyer present.  Because there is no dispute over the material facts, Bright's motion to suppress his post-arrest statement should be denied without an evidentiary hearing.

Dated: New York, New York
       November 5, 2019

              Respectfully submitted,

              GEOFFREY S. BERMAN
              United States Attorney for the
              Southern District of New York

       By: /s/ Alexander Li
           Alexander Li
           Assistant United States Attorney
           Tel.: 212-637-2265