UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
UNITED STATES OF AMERICA,                    :

      -against-                                           :         19 Cr. 521 (PKC)

PETER BRIGHT,                                          :

      Defendant.                                         :

-------------------------------------------------------------x

## DEFENDANT PETER BRIGHT'S
## MOTIONS *IN LIMINE*

                       David E. Patton
                       Federal Defenders of New York, Inc.
                       Attorney for Defendant
                         Peter Bright
                       52 Duane Street, 10th Floor
                       New York, New York 10007
                       Tel.: (212) 417-8700

                           Amy Gallicchio
                           Zawadi Baharanyi
                            *Of Counsel*

TO:   Geoffrey S. Berman
         United States Attorney
         Southern District of New York
         One St. Andrew's Plaza
         New York, New York 10007

              Attn.:  Alexander Li
                     Timothy Howard
                     Assistant United States Attorneys
                     Southern District of New York

**PRELIMINARY STATEMENT**

Defendant Peter Bright respectfully submits the following motions *in limine* in advance of trial, which is scheduled to begin on February 10, 2020. Mr. Bright is charged with a single count of attempted enticement of a child, in violation of 18 U.S.C. § 2422(b). The Government's Motion *in Limine* of January 10, 2020 ("Govt. MIL") seeks an evidentiary rulings from the Court in advance of trial regarding evidence it seeks to admit pursuant to Federal Rule of Evidence 404(b). We oppose the Government's request and ask that the Court preclude the proposed evidence.

Mr. Bright also moves this Court, pursuant to Federal Rule of Criminal Procedure 24(a), to allow counsel to personally voir dire prospective jurors.

Finally, Mr. Bright has been informed by the Government that it intends to introduce portions of his post-arrest statement to law enforcement. The parties are attempting to resolve any differences we may have regarding this evidence. If there are issues that we cannot reach agreement on, I respectfully request leave to file a supplemental motion *in limine* with the Court.

**ARGUMENT**

**I.     The Court Should Preclude the Government's Proposed 404(b) Evidence**

The Government seeks to introduce at trial evidence of prior acts that it claims provide proof of Mr. Bright's "motive, intent, and absence of mistake or accident," Govt. MIL at 2, which the Government claims are "placed in dispute by Bright's post-arrest statement that he communicated with the Mother not to engage in sexual activity with the Minors, but rather to gather evidence against the Mother that he would later provide to law enforcement." Govt. MIL at 4. The Government's version of the facts reports half of the

1

story of why Mr. Bright communicated with the mother/undercover agent.  Mr. Bright also informed law enforcement that when he first began communicating with the mother/undercover agent, he believed that she was engaging in "age play," a kink in which consenting adults regress in age and play the role of a child.   In this case, Mr. Bright believed that the agent was playing the role of a mother and other adults would play the role of her 7 and 9 year old children.  He described to the agents that the "kink" that he was particularly interested in was "daddy dom, little girl" ("DDLG"), a form of dominance and submission.  It is a kink where consenting adults, often referred to as "littles," regress to a particular age and role play.  Mr. Bright's explanation made it clear that age-play is very different from desiring actual children.  Mr. Bright informed the arresting agents that at some point in his communication with the undercover, he began to suspect that she was speaking about actual children.  It was then that his focus changed to gathering information against the "Mother" to later provide to the police.

The Government identifies four categories of evidence they seek to introduce: (1) rape law tweets; (2) jail bait tweets; (3) child attraction chats; and (4) direct child communications. The Government alleges that this evidence speaks to Mr. Bright's "sexual attraction to children," Govt. MIL at 4, making it "more probable that his intent in this case was to engage in sexual activity with the Minors and less probable that his intent was to enforce the child exploitation laws." *Id*. at 5.  Again, the Government ignores Mr. Bright's primary intent which was to engage in sexual activity with consenting adults who engage in age and role playing.

To admit evidence under Rule 404(b), a court must find that the evidence is "(1) offered for a proper purpose, (2) relevant, and (3) substantially more probative than

prejudicial." *United States v. Downing*, 297 F.3d 52, 58 (2d Cir. 2002) (citing *Huddleston v. United States*, 485 U.S. 681 (1988)). Although the Second Circuit employs an inclusionary approach to this rule, the rule does not "authorize the admission of any and every sort of other-act evidence simply because a defendant proffers an innocent explanation for the charged conduct." *United States v. Gordon*, 987 F.2d 902, 908 (2d Cir. 1993). In addition, evidence should not be admitted if its sole purpose is to show the "defendant's bad character" or propensity towards criminal activity. *See United States v. Pascarella*, 84 F.3d 61, 62 (2d Cir. 1996).

Furthermore, to admit Rule 404(b) evidence to prove intent, the Second Circuit requires some meaningful similarity between the prior and current acts. *See United States v. Garcia*, 291 F.3d 127, 137-38 (2d Cir. 2002) ("The Government may not invoke Rule 404(b) and proceed to offer, carte blanche, any prior act of the defendant in the same category of crime. The Government must identify a similarity or connection between the two acts that makes the prior act relevant to establishing knowledge of the current act.").

The Government's proposed 404(b) evidence should be precluded because there is no meaningful similarity between the prior acts in any of the four categories and the current charge.   Even if relevance is sufficiently established by the Government, the minimally probative value of the proposed evidence is substantially outweighed by the obvious danger of unfair prejudice it would create.

**A.  Rape Law Tweets**

The Government seeks to introduce a tweet that Mr. Bright posted on his Twitter account over six years ago, in 2013.   In that posting, Mr. Bright expresses his opinion that age-based rape laws versus consent–based laws are "stupid."   Clearly this tweet is a

3

commentary on the arbitrariness of statutory rape laws as they relate to the legal age of consent.  It is not supporting or condoning sex with children.  Indeed, the age of consent is an arbitrary number that varies state to state from 16 to 18 years old and country to country.  Additionally, some states have "Romeo and Juliet" laws that lower the age of consent there the parties are close in age to each other while others do not.  The age of consent in New York is 17, however, there are many provisions that lower that age based on the relative age of the parties.  Around the world, the age of consent varies even more, from 11 to 20 years old.  For example, in the United Kingdom it is 16, in France it is 15, 14 in Italy, and 13 in Japan.

Given the wide range of opinion on the age of consent, it is not at all unreasonable to disagree with age-based statutory rape laws.  The Government's letter repeats portions of Rule 404(b), but does not articulate any way in which this tweet from 6 years ago is relevant to Mr. Bright's current charge or offered for a proper purpose.  Mr. Bright's tweet in this regard has no relevance to the question of his intent in the instant offense which involves the allegation that he attempted to entice a seven and nine-year-old to engage in illegal sexual activity.  The tweet does not speak to "sexual attraction to children" nor does it make it "more probable that his intent in this case was to engage in sexual activity with the Minors."

### B.  Jail Bait Tweets

The Government seeks to introduce tweets from May 2009 and October 2009 where Mr. Bright expresses his "admiration for 'jailbait' around him."  Govt. MIL at 3, 2.   These tweets bear no meaningful similarity or connection to the current charge such that they are relevant to intent.   Again, the Government's motion but does not articulate any way in which

these tweets from 10 years ago are relevant to Mr. Bright's current charge or offered for a proper purpose.

These 10 year old tweets are obviously comments made in jest.  Jailbait is a slang term and defined as "a girl under the age of consent with whom sexual intercourse is unlawful and constitutes statutory rape."  In *Merriam-Webster Online, Retrieved January 17, 2020,* from https://www.merriam-webster.com/dictionary.  While it may be an off color comment about teenage girls, it does not speak to sexual attraction to prepubescent children and it does not make it more probable that, 10 years later, Mr. Bright intended to engage in sexual activity with a 7 and 9 year old.  Any slight relevance, of which there is none, is more than substantially outweighed by the obvious danger of unfair prejudice it would create.

### C. Child Attraction Chats

The Government seeks to introduce three separate Google chats which they claim are "sufficiently similar" to the crime charged to be relevant to the issue of intent.  The Government alleges that the chats are evidence of attraction to children and a desire to have sex with a 13 year-old and a 15 year-old. The excerpts identified by the Government in its MIL should be read in context.  The complete chats are attached as Exhibits A, B and C.  None of the chats meet the requirements necessary for admissibility under Rule 404(b).  They are remote in time and are not sufficiently similar acts to a crime alleging an intent to have sexual contact with a 7 and 9-year-old.

1. *September 27, 2010 Chat*.  Exhibit A. First and foremost, it is obvious that the comments made in this chat were jokes.   In fact, following the comment, "I would bone a 15 year old in an instant," Mr. Bright uses the smiley symbol ":p" which conveys sticking the tongue out.   Again, a crude and tasteless joke about a

5

15-year-old girl is a far cry from probative evidence of a desire to have sex with a 7 and 9-year-old.

2. *July 29, 2011 Chat*. Exhibit B. This nine-year old Google chat is between Mr. Bright and his wife before they were married. As the Court will see in this chat exchange, Mr. Bright and his wife (then girlfriend) are clearly engaging in playful banter about their attraction to pop stars including Justin Bieber who Mr. Bright makes crude sexual comments about. His comment about the then 13 year old pop-star (name redacted) is clearly a joke that is followed by the acronym of "lol" (laugh out loud). The chat quickly moves on to another pop star. This chat conversation is not probative of motive, intent or absence of mistake or accident. It does not speak to sexual attraction to a 7 and 9 year old and it does not make it more probable that, 8 years later, Mr. Bright intended to engage in sexual activity with a 7 and 9 year old.

3. *February 10, 2012 Chat*. Exhibit C. As with the first two Google chats, this chat is nothing more than crude and tasteless banter and not a "prior act." The individual Mr. Bright is chatting with certainly took Mr. Bright's comments as a joke and responded over an over with "lol." In the course of the exchange, Mr. Bright also makes what is clearly a joke about the age of consent at the Vatican. Like the others, this chat is remote in time and not a prior act similar in any way to the crime charged to be relevant to intent.

D. **Direct Child Communications**

The Government seeks to introduce evidence that Mr. Bright "engaged in communications of a sexual nature with what he believed were a 17 year-old and her 14 year-

6

old sister." Govt. MIL p. 2. First, given that the age of consent in New York is 17 years old, any sexual communication Mr. Bright had with the 17 year old was legal and, therefore, irrelevant to the question of his intent in the instant case. Next, both Mr. Bright's post arrest statement and the emails with the 14 year old make it abundantly clear that Mr. Bright was interested in meeting with the 17 year old and not the 14 year old. In the email exchange with the 14 year old Mr. Bright writes the following: "You need to persuade your sister that she needs to come over so I can help her first," "I was hoping your sister would come over today," and "Tell her to come to me." Mr. Bright never invited the 14 year old to meet with him. In fact Mr. Bright tells law enforcement that he has nothing in common with 14 year old girls and that he thought she was a "dumb teenager." Neither the group chat nor the email exchange with the 14 year old are sexual in nature and are at best flirtatious. Mr. Bright does not ask for nude pictures or sexually explicit pictures of either girl in the chat or email exchange.

This proposed evidence fails to meet the requirements necessary for admission pursuant to Rule 404(b). It is not relevant because it does not, as the Government claims, speak to Mr. Bright's attraction to children. Nor does the fact of these communications make it more probable that his intent in this case was to engage in sexual conduct with prepubescent children and less probable that his intent was to engage in either age-play or to enforce the child exploitation laws. The potential for prejudice is great and substantially outweighs any slight probative value such evidence might have.

\* \* \*

In support of its motion, the Government alleges that this case is similar to *United States v. Brand*, 467 F.3d 179 (2d Cir. 2006). In *Brand*, the Court held that evidence that

Brand possessed child pornography was admissible as 404(b) evidence because "a direct connection exists between child pornography and pedophilia." *Id*. at 197.  Brand not only possessed child pornography but he kept the images in the same computer folder in which he kept the photograph of the undercover agent who was posing as a 13-year-old named Julia.  The Court found the "a reasonable juror could conclude that Brand was whetting his own sexual appetite for his encounter with 'Julie.'" *Id*. at 198.  The Court explained further, "The child pornography found on Brand's computer certainly suggests just such an abnormal sexual attraction by Brand . . . We believe this abnormal sexual attraction to children establishes the similarity or connection required to show relevance."  Id.  *Brand* bears no resemblance to the facts in this case.  First, Mr. Bright did not possess any child pornography on any of his electronic devices, all of which law enforcement seized and searched.  Second, the proposed tweets, chats, and emails do not suggest an "abnormal sexual attraction" to prepubescent children that establishes the similarity or connection to the instant crime required to show relevance.

The Government also references the Second Circuit decision in *United States v. Douglas*, 415 F.App'x 271(2d Cir. 2011) in support for its motion but *Douglas* has even less relevance to the instant case than *Brand*.  In *Douglas*, the Court held that Douglas's prior internet chat in which he admitted to molesting his niece and other children was properly admitted as 404(b) evidence.  The Court held that the evidence was relevant to intent because "it tended to show that Douglas's conversations with 'Liz" [the undercover agent] were not mere talk but were directed at having sexual contact with a minor, as he had done in the past." *Id*. at 273.   The chats and emails in the instant case are a far cry from the admissible evidence in *Douglas*.  None of the Government's proposed 404(b) evidence demonstrates in

8

any way that Mr. Bright had prior sexual contact with a minor and has no bearing on the question of his legitimate dual intent: first to engage in age-play and second to obtain information to later turn over to the police.

The Court should preclude the introduction of the proposed 404(b) evidence as having no relevance to the question of intent. In addition, the proposed evidence bears no similarity or connection to the crime charged. Even if the Court were to find that any of the 404(b) evidence was relevant to some proper purpose, it should nevertheless be excluded because its marginal relevance is substantially outweighed by the extremely prejudicial, provocative, and inflammatory nature of the evidence. The prejudice would be overwhelming and could not be remedied with a curative instruction. Introduction of this evidence would unquestionably deny Mr. Bright a fair trial.

## II. Request For Attorney Conducted Voir Dire

Mr. Bright requests that the Court permit each side thirty minutes of attorney-conducted voir dire as a complement and addition to the Court's voir dire. Federal Rule of Criminal Procedure 24(a)(1) explicitly allows this Court to permit attorney voir dire. Attorney conducted voir dire is a more effective tool for eliciting bias than questioning conducted by the Court alone. Jurors are likely to feel less inhibited about offering more candid responses to an attorney than to the judge whom the prospective jurors may be more likely to provide with the "correct" answer due to the judge's role in the proceeding. Furthermore, the trial judge cannot have the same interest in discerning juror bias as does an adversary, and the adversaries may be more sensitive to those jurors' responses which may need follow-up inquiry. Moreover, the trial judge is less familiar with the evidence and case theory than are the parties.

In addition, this case presents a number of sensitive issues which require careful and precise juror questioning to uncover biases and prejudices. Undoubtedly, many prospective jurors will have strong feelings about the charge in this case. Without careful questioning which is informed by a thorough knowledge of the specific facts of the case, these biases may well remain undetected.

While some additional time may be required to allow for attorney participation in voir dire, it should not seriously affect the flow of court business. In weighing arguments for attorney voir dire against administrative concerns, it must be kept clearly in mind the function of the jury: it will determine the fate of a fellow citizen. Based on the factors previously cited, Mr. Bright respectfully moves that pursuant to Rule 24(a), Federal Rules of Criminal Procedure, the Court allow counsel to participate in the voir dire examination of prospective jurors.

## **CONCLUSION**

For the foregoing reasons, the Court should preclude the Government from introducing the proposed 404(b) evidence, allow attorney conducted voir dire, and grant Mr. Bright's motions *in limine.*

Dated:  New York, New York
         January 24, 2020

>Respectfully submitted,
>FEDERAL DEFENDERS OF NEW YORK

By:     /s/ Amy Gallicchio_____
        Amy Gallicchio
        Zawadi Baharanyi
        Attorneys for Peter Bright
        52 Duane Street - 10th Floor
        New York NY 10007
        Tel:  (212) 417-8728