UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PETER BRIGHT,<br>　　　　　　　　Defendant. | 19 Cr. 521 (PKC) |

## THE GOVERNMENT'S SUPPLEMENTAL MOTIONS *IN LIMINE* AND OPPOSITION TO THE DEFENDANT'S MOTIONS *IN LIMINE*

　　　　　　　　　　　　　　　　　　　　GEOFFREY S. BERMAN
　　　　　　　　　　　　　　　　　　　　United States Attorney for the
　　　　　　　　　　　　　　　　　　　　Southern District of New York
　　　　　　　　　　　　　　　　　　　　One Saint Andrew's Plaza
　　　　　　　　　　　　　　　　　　　　New York, NY 10007

Alexander Li
Timothy Howard
Assistant United States Attorneys
　　*Of Counsel*

The Government respectfully submits this memorandum (1) in further support of its motion *in limine* (Gov't Mot.) filed on January 10, 2020, ECF Doc. No. 23, requesting permission to offer evidence of the defendant's intent pursuant to Federal Rule of Evidence 404(b), (2) in opposition to defendant Peter Bright's motions *in limine* (Def. Mot.) filed on January 24, 2020, ECF Doc. No. 29, requesting permission to conduct attorney voir dire, (3) requesting the preclusion of expert testimony noticed by the defense on January 28, 2020, and (4) requesting the preclusion of specific-act evidence offered by the defense that Bright previously engaged in sexual activity with consenting adults.

## I. THE GOVERNMENT'S RULE 404(B) EVIDENCE SHOULD BE ADMITTED

As set forth in its opening memorandum, the Government intends to offer the Rule 404(b) Evidence — consisting of the Rape Law Tweet, the Jailbait Tweets, the Child Attraction Chats, and the Direct Child Communications — as evidence of the defendant's motive and intent to entice the Minors to engage in sexual activity, and absence of mistake or accident.[1]  This evidence is highly probative because in his post-arrest statement, Bright claimed that he participated in the communications at issue not to engage in sexual activity with the Minors, but rather to gather evidence against the Mother that he would later provide to law enforcement.  The 404(b) Evidence shows that for years, Bright pronounced his sexual attraction to children and belief that age-based rape laws are "stupid."  This evidence makes it more probable that his intent in this case was to engage in sexual activity with the Minors, as the Government alleges, and less probable that his intent was to aid the enforcement of the child exploitation laws, as Bright claimed during his post-arrest statement.

---

[1] Unless otherwise specified, all capitalized terms have the same meaning as in the Government's opening brief.

The defense argues that the Rule 404(b) Evidence is not relevant because Bright *also* claimed in his post-arrest statement that he at first thought the Mother was engaged in "'daddy dom, little girl' ('DDLG'), a form of dominance and submission . . . where consenting adults, often referred to as 'littles,' regress to a particular age and role play." (Def. Mot. at 2). As an initial matter, the Rule 404(b) Evidence is relevant to this DDLG explanation: Because the Rule 404(b) Evidence relates to children — not adults pretending to be children — it tends to prove that Bright communicated with the Mother because he was sexually attracted to children, not because he was sexually attracted to adults pretending to be children. But even if the Rule 404(b) Evidence did not relate to Bright's DDLG explanation — and it does — it would still be relevant to Bright's claim that at some point, "his focus changed to gathering information against the 'Mother' to later provide to the police." (Def. Mot. at 2). However couched, the defendant claims that he did not intend to engage in sexual activity with the Minors, and the Government claims that he did. The Rule 404(b) Evidence is relevant to this dispute.

The defense's objections to the Government's specific categories of Rule 404(b) Evidence also falter.

*First*, the defense argues the Rape Law Tweet — *i.e.*, Bright's statement on Twitter that "age-based rape laws (rather than consent-based) are stupid" — is irrelevant because "it is not at all unreasonable to disagree with age-based statutory rape laws." (Def. Mot. at 4). But reasonable or not, Bright's professed disagreement with "age-based rape laws" makes it less probable that his intent was, as he claims, to help enforce those very same laws.

*Second*, the defense argues that the Jailbait Tweets — *i.e.*, Bright's statements on Twitter of his admiration for the "jailbait" around him — are "obviously comments made in jest." (Def. Mot. at 5). Whether a "comment was serious or a joke goes to the weight of the evidence, not its

2

admissibility." *United States v. Brown*, No. 12 Cr. 97 (GMN) (VCF), 2018 WL 1903121, at *5 (D. Nev. Apr. 19, 2018) (defendant's comment regarding his attraction to a fifteen-year-old admissible to prove identity, motive, and absence of mistake in a child pornography case). The defense also argues that the Jailbait Tweets are irrelevant because they are merely "off color comment[s] about teenage girls" and do not speak to "sexual attraction to prepubescent children." (Def. Mot. at 5). But "[e]vidence of other acts need not be identical to the charged conduct to show knowledge or intent pursuant to Rule 404(b), so long as the evidence is relevant in that it provides a reasonable basis for inferring knowledge or intent." *United States v. Cadet*, 664 F.3d 27, 32–33 (2d Cir. 2011).

*Third*, the defense argues that the Child Attraction Chats — *i.e.*, Bright's statements in Internet chat messages of his sexual interest in 13 year-old and 15 year-old girls — are mere jokes and are not probative of his sexual attraction to 7 year-old and 9 year-old children. (Def. Mot. at 5–6). Again, whether Bright was joking goes to weight, not admissibility, and identity of ages is not required to "provide[] a reasonable basis for inferring knowledge or intent," *Cadet*, 664 F.3d at 33. In *United States v. Brand*, 467 F.3d 179, 197–98 (2d Cir. 2006), the Second Circuit held that the defendant's possession of child pornography — without inquiring into the ages of the minors depicted — evidenced an "abnormal sexual attraction to children" that was relevant to whether the defendant intended to entice a 13 year-old girl; the Child Attraction Chats reveal the same "abnormal sexual attraction to children" in this case. The defense also argues that the Child Attraction Chats are too remote in time because they occurred seven to nine years before the conduct at issue here. (Def. Mot. at 6). But "[n]either Rule 403 nor any analogous Rule provides any bright-line rule as to how old is too old." *United States v. Larson*, 112 F.3d 600, 605 (2d Cir. 1997) (admitting similar act evidence that occurred 16 to 20 years before trial).

3

If anything, the fact that Bright engaged in the Child Attraction Chats over an extended period of time *increases* their probative value, because they evidence his longstanding "abnormal sexual attraction to children."

*Fourth*, the defense argues that the Direct Child Communications — *i.e.*, Bright's communications with who he believed to be a 17 year-old girl ("Girl-1") and her 14 year-old sister ("Girl-2") — are insufficiently sexual and therefore irrelevant. (Def. Mot. at 7). As an initial matter, the Direct Child Communications comprise three types of evidence: Bright's post-arrest statement, Bright's prior chats, and Bright's prior emails. The Government no longer intends to offer the chats or the emails concerning Girl-1 and Girl-2. The Government does intend to offer portions of Bright's post-arrest statement in which he said, in part and in substance, that: (1) he had "flirty" chat communications with Girl-1 and Girl-2; (2) he received a "nude-ish" photograph from Girl-1, a photograph from Girl-2 of Girl-2 wearing panties and a t-shirt, and possibly also a nude photograph from Girl-2; (3) Bright suggested meeting Girl-1, and it was possible the meeting would have been sexual; (4) Girl-1 told Bright that she engages in prostitution; and (5) Bright did not plan to report either Girl-1 or Girl-2 to law enforcement. This evidence is relevant because it speaks both to Bright's sexual attraction to minors and his reluctance to involve law enforcement in matters of sexual activity involving children.[2] This makes it more probable that Bright's intent in this case was to engage in sexual activity with the

---

[2] The defense notes that any sexual encounter with Girl-1 would have been lawful given the age of consent in New York is 17. (Def. Mot. at 7). Rule 404(b) applies to "crimes, wrongs, or acts;" the acts need not be illegal. Bright's sexual communications with a 17 year-old girl is probative of his "abnormal sexual attraction to children," just as child pornography — which may involve a 17 year-old minor — is probative of the same. *Brand*, 467 F.3d at 197–98. Bright's refusal to report Girl-1 to law enforcement, despite learning she was a child prostitute, is also probative of whether he intended to gather evidence for law enforcement in this case.

4

Minors, as the Government alleges, and less probable that Bright's intent was to help enforce the child exploitation laws, as Bright claimed in his post-arrest statement.

## II.     ATTORNEY VOIR DIRE SHOULD BE DENIED

In its motions *in limine*, the defense requests 30 minutes of attorney-conducted voir dire by each side on the ground that attorney voir dire "is a more effective tool for eliciting bias than questioning conducted by the Court alone." (Def. Mot. at 9). The Government respectfully submits that the Court is perfectly capable of eliciting any bias from prospective jurors, particularly given the input it has solicited from the parties on the questions to ask. The defense notes the sensitive subject matter in this case (Def. Mot. at 10), but other judges in this district have led voir dire without incident in child exploitation cases. *See, e.g.*, *United States v. DiTomasso*, 14 Cr. 160 (SAS) (child pornography trial); *United States v. Waqar*, 18 Cr. 342 (SHS) (child enticement trial).

There is simply no reason to believe that voir dire led by the Court presents the greater likelihood of an impartial jury. So long as a court's questioning "survey[s] the likely sources of bias and prompt[s] the jurors . . . to consider for themselves what other sources of potential bias there might be," *United States v. Zane*, 495 F.2d 683, 693 (2d Cir. 1974), the district court is granted considerable deference in how to conduct the voir dire process. Indeed, the Second Circuit has long questioned the value of attorney-led voir dire, and has noted the "many articles relating the abuses of attorney-controlled [v]oir dire, which suggest that a reasonable inquiry into the essentials raised in the particular case should be sufficient, and that the trial judge should retain the discretion to apply limits." *United States v. Barnes*, 604 F.2d 121, 142 n.10 (2d Cir. 1979). As Judge Weinstein has observed, "[a]ttorney-driven voir dire is disfavored, since the opportunity is often abused to delay and to prejudice the jury." *United States v. Taveras*, 436

5

F.Supp.2d 493, 504 (E.D.N.Y. 2006), *aff'd in part*, *rev'd in part on other grounds*, *United States v. Pepin*, 514 F.3d 193 (2d Cir. 2008).

**III.     DR. CANTOR'S EXPERT TESTIMONY SHOULD BE PRECLUDED**

On January 28, 2020, the defense noticed its intent to call as an expert witness Dr. James Cantor, a psychologist and researcher based in Toronto.  (*See* Ex. A, Defense Expert Notice). The expert notice states that Dr. Cantor — who, we understand from the defense, has *not* examined the defendant — would (1) "explain the characteristics of 'Age Play,' a form of role-playing where an individual acts or treats another as though they were a different age," (2) "testify about the general characteristics and behaviors of individuals with Pedophilia and individuals who have engaged in child sexual abuse," and (3) "testify that there is no relationship between engaging in 'Age Play' and committing an illegal sex act against a minor or desiring sex with a minor."  (Ex. A).  These subjects of testimony either do not require specialized knowledge or are irrelevant, and any minimal relevance is substantially outweighed by the risk of unfair prejudice, confusion, and misleading the jury.  In addition, the expert notice does not identify the bases or reasons for Dr. Cantor's opinion, and therefore does not comply with Federal Rule of Criminal Procedure 16(b)(1)(C).  For these reasons, Dr. Cantor should be precluded from testifying.

Under Federal Rule of Evidence 702, a party seeking admission of expert testimony must demonstrate that the testimony is based on the witness's "scientific, technical, or other specialized knowledge."  Expert testimony is inadmissible when it merely addresses "lay matters which a jury is capable of understanding and deciding without the expert's help."  *Andrews* v. *Metro N. Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989).  Even where expert testimony properly falls within Rule 702, the Court continues to review for relevance under Rule 401 and the risk of unfair prejudice, confusion, or misleading the jury under Rule 403.  "Expert evidence

can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 595 (1993) (internal quotation marks omitted).

Given the weight afforded to expert testimony, Dr. Cantor's proposed testimony should be evaluated with particular caution because Dr. Cantor did not examine Bright. The expert notice states that Dr. Cantor will testify generally about "age play," pedophilia, and the relationship between the two. But the defense will ultimately argue from these general concepts that a particular individual — Bright — did not possess the requisite intent on the particular occasions charged in this case. In an analogous case, the Tenth Circuit held the district court properly excluded expert testimony on false confessions where the expert "did not examine [the defendant], and was not going to specifically discuss him or the circumstances surrounding his confession in her testimony." *United States v. Benally*, 541 F.3d 990, 995 (10th Cir. 2008). The court explained that "[e]ven if we were to assume the limited relevance of this general testimony, . . . a district court could reasonably conclude that the prejudice to the prosecution that would result from permitting an expert to opine that prior confessions should essentially be disregarded because they are just as likely to be true as untrue, substantially outweighs the testimony's minimal probative value." *Id.* As discussed below, the relevance of Dr. Cantor's proposed testimony in this case is equally minimal and the risk of unfair prejudice equally great.

Dr. Cantor's first area of proposed testimony — an explanation of the characteristics of "age play" — does not require any specialized expertise. Presumably, the defense intends to argue that Bright's communications with the Mother were motivated by his sexual interest in DDLG (a form of "age play" where adults pretend to be children), rather than any sexual interest

7

in actual children. The characteristics of DDLG are "well within the grasp of the average juror." *United States v. Mejia*, 545 F.3d 179, 194 (2d Cir. 2008). Indeed, the defense explained the concept in just two sentences in its brief. (Def. Mot. at 2.) Moreover, as a practical matter, the Government intends to introduce the portion of Bright's post-arrest statement where he declares his interest in DDLG and explains the kink *as he understands it*, which is far more relevant than any explanation of "age play" in the abstract.

Dr. Cantor's second area of proposed testimony — an explanation of the characteristics of pedophilia and child abusers — is irrelevant. A jury does not need to know the characteristics of a generic pedophile or generic child abuser to answer the question in dispute: whether Bright intended to entice a minor to engage in sexual activity. Moreover, Dr. Cantor's proposed testimony about the profile of a generic pedophile or generic child abuser would likely confuse the issues and mislead the jury into believing that the issue here is whether Bright fits the profile of a generic pedophile. In other words, a jury would likely conflate the relevant issue (whether Bright intended to entice a minor to engage in sexual activity) with the issue suggested by Dr. Cantor (whether Bright's characteristics are consistent with the characteristics of a generic pedophile). Accordingly, even if the proposed testimony had any marginal probative value, it should be excluded for unfair prejudice under Rule 403.

For similar reasons, Dr. Cantor's third area of proposed testimony — his opinion that engaging in "age play" bears "no relationship" with pedophilia or child abuse — is largely irrelevant and misleading. It may be true that a participation in "age play," standing alone, does not imply pedophilia or child abuse. But this opinion does not assist the jury, which must consider not merely Bright's professed interest in "age play" standing alone but *in combination* with the other evidence of intent in this case. Dr. Cantor's proposed testimony about the absence

of a relationship between "age play" and pedophilia would only confuse the issues and mislead the jury into believing if Bright participated in age play, he is *not likely* to be sexually attracted to children, and therefore *not likely* to have intended to engage the Minors in sexual activity.[3] For this reason, any probative value of the proposed testimony would be substantially outweighed by the risk of unfair prejudice.

Finally, the expert notice does not disclose the "bases and reasons" for Dr. Cantor's opinions, as required by Federal Rule of Criminal Procedure 16(b)(1)(C). Without this information, the Court cannot "perform its function as a gatekeeper of expert testimony under *Daubert* . . . ." *United States v. Ulbricht*, 858 F.3d 71, 116 (2d Cir. 2017). Nor can the Government "test the merit of the expert's testimony through focused cross-examination." *Id.* at 114 (internal quotation marks omitted). Where, as here, an expert notice is "plainly inadequate," the court "has broad discretion in fashioning a remedy, which may include granting a continuance or ordering the exclusion of evidence." *Id.* at 115 (internal quotation marks omitted). Given less than two weeks remain before trial, exclusion is the appropriate remedy. Alternatively, the Court should grant a continuance for the defense to provide adequate notice and for the Government to consider introducing expert testimony in response.

## IV. SPECIFIC-ACT EVIDENCE OF THE DEFENDANT'S SEXUAL ACTIVITY WITH ADULTS SHOULD BE PRECLUDED

Based on discussions with the defense, the Government anticipates that the defense may offer specific-act evidence, such as chat communications, that Bright previously engaged in

---

[3] Because the jurors may understand Dr. Cantor's opinion to be, in effect, that Bright did not intend to engage the Minors in sexual activity, it comes perilously close to violating the stricture of Federal Rule of Evidence 704(b) that "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense."

sexual activity with consenting adults.  The Government does not object to any testimony the defense may wish to elicit regarding Bright's sexual interest in adults (including adults pretending to be children).  The Government does object, however, to the introduction of evidence to prove up these traits on specific occasions.

It is settled law that "[a] defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on [other] specific occasions." *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990).  Similarly, while a defendant may offer general testimony from a character witness about his reputation for a "pertinent trait of character," or the witness's opinion of the defendant as regards that trait, *see* Fed. R. Evid. 404(a)(2)(A) & 405(a), a defendant can neither testify nor offer other proof to establish specific acts in conformity with that trait that are not an element of the offense.  *See, e.g.*, *United States v. Benedetto*, 571 F.2d 1246, 1249–50 (2d Cir. 1978) (defense-proffered character evidence of defendant's specific acts improperly admitted because "character evidence has long been admissible only in the form of reputation and not in the form of a recitation of good or bad acts").  Indeed, Federal Rule of Evidence 405(b) expressly precludes proof of the defendant's good character by specific acts where, as here, the defendant's character or trait of character is not an essential element of the crime charged.[4]

---

[4] As the Advisory Committee Notes and applicable case law make plain, cases in which character is an essential element of the crime charged are rare:  "Illustrations are:  the chastity of the victim under a statute specifying her chastity as an element of the crime of seduction, or the competency of the driver in an action for negligently entrusting a motor vehicle to an incompetent driver."  Advisory Committee Note to Fed. R. Evid. 404(a); *see, e.g.*, *United States v. Doyle*, 130 F.3d 523, 542 (2d Cir. 1997) (explaining that "the exception of Rule 405(b)" cannot be read to "swallow the general rule of 405(a) that proof of specific acts is not allowed"); *Shakur* v. *United States*, 32 F. Supp. 2d 651, 668-69 (S.D.N.Y. 1999) (discussing this rule).

## CONCLUSION

For the foregoing reasons, the Government respectfully requests the Court issue a ruling (1) permitting the introduction of the Rule 404(b) Evidence, (2) denying permission to conduct attorney voir dire, (3) precluding the expert testimony of Dr. James Cantor, and (4) precluding the introduction of specific-act evidence that Bright previously engaged in sexual activity with consenting adults.

Dated: New York, New York
      January 30, 2020

                              Respectfully submitted,

                              GEOFFREY S. BERMAN
                              United States Attorney for the
                              Southern District of New York

By:    /s/ Alexander Li
        Alexander Li
        Timothy Howard
        Assistant United States Attorneys
        Tel.: 212-637-2265/-2308