UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
|    - v - | : |
| | :    19 CR. 521 (PKC) |
| **PETER BRIGHT,** | : |
|    Defendant. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

# DEFENDANT PETER BRIGHT'S RESPONSE TO THE GOVERNMENT'S SUPPLEMENTAL MOTION <u>IN LIMINE</u>

 

DAVID PATTON, ESQ.
Federal Defenders of New York
Attorney for Defendant
**Peter Bright**
52 Duane Street, 10th Floor
New York, NY 10007
Tel.: (212) 417-8728
Amy Gallicchio, Esq.
**Zawadi Baharanyi**, Esq.
Of Counsel


TO:      Geoffrey S. Berman, Esq.
            United States Attorney
            Southern District of New York
            1 St. Andrew's Plaza
            New York, NY 10007

Attn:     Alexander Li, Esq.
            Timothy Howard, Esq.
            Assistant United States Attorneys

Mr. Bright, through undersigned counsel, respectfully submits this response to the Government's Supplemental Motion in Limine (Govt. Supp. Motion). Specifically, Mr. Bright requests that the Court exclude and/or limit the government's proposed 404(b) testimony, exclude portions of Mr. Bright's post-arrest statement, admit specific evidence of Mr. Bright's prior age play activity, and permit testimony by the defense expert, Dr. James Cantor, on age play, pedophilia and child sex abuse.

## I. THE COURT SHOULD PRECLUDE AND/OR LIMIT 404(B) TESTIMONY RELATED TO THE DIRECT CHILD COMMUNICATION

The government seeks to admit several portions of Mr. Bright's recorded post arrest statement pursuant to Rule 404(b) related to his prior communications with a 17 and 14 year old.  We have attached transcripts of the government's proposed evidence.  See Transcripts of Recorded Conversations, Clips 6, 7,8,9,10,12, attached collectively as Exhibit A.   Mr. Bright has already moved to preclude this evidence in his Motion in Limine filed on January 24, 2020.   Should the Court determine that some or all of this evidence is relevant, Mr. Bright asks the Court to limit the amount of evidence the government now seeks to introduce.  The proposed evidence is cumulative and goes far beyond the purpose cited by the government for its admissibility.  The repetition creates unfair prejudice and tends to confuse and mislead the jury about it admissible purpose.

Furthermore, the statements, comments, and opinions of Agent Spivack and Adamczyk peppered throughout the statement are irrelevant and prejudicial.  For example, in clip 10, Mr. Bright is asked if he was "ever going to say something about the 14 year old" and then berated for his answers.  Agent Spivack and Adamczyk make the following comments, among others,

- "But who are you to make that judgement, right? Isn't that what we're here for, to help vet that out?"  p. 4:4-6
- "You think then- it's better then to have a 14 year old send you a pic of her pussy? . . . Okay. A nude pic. But you think that's better than us trying to get involved." p. 4:12-13, 16-17

2

- "Or you think it's just better to like let these kids keep trading naked pictures and not get involved at all?" p. 4:18-20
- "And I would say this to you, hold on a second. How old are you? . . . Thirty-eight. I would say this, a 14 year old sending a nude pic to her 14 year old boyfriend is one thing . . . A 14 year sending a nude pic to a 38 year old man is another." p. 4:23-24; 5:1-3, 5-6
- "So if she's doing that to you, do you not think at that point maybe somebody should get involved because that person -- is that 14 year old not fucked up to the point maybe she needs some help? No offense to you. But you're a thirty-eight year old man." p. 5:8-12
- "We work human trafficking and I can tell you we're right." p. 5:16-17
- "And is this based off your experience working in law enforcement or just stuff you see on TV? – Which is always right." p. 6:1-2, 4

These statements by Agent Spivack and Adamczyk are not evidence of prior acts admissible under Rule 404(b) to prove Mr. Bright's intent. They are commentary on their own assessment of Mr. Bright's explanation, which is irrelevant and inadmissible and usurps the role of the jury.

## II. THE COURT SHOULD PRECLUDE A PORTION OF MR. BRIGHT'S POST-ARREST STATEMENT

As indicated in Mr. Bright's Motions In Limine filed on January 24, 2020, the government intends to offer in evidence portions of Mr. Bright's recorded post-arrest statement. The parties have resolved most differences regarding this evidence with the exception of one portion of the statement. With respect to that portion, Mr. Bright moves to prelude its admission as irrelevant and improper opinion testimony. A transcript of the portion of the statement that is in dispute is attached as Exhibit B, Recorded Conversation Clip 11.

First, the questions posed by the agents and the answers given by Mr. Bright throughout this clip are irrelevant, and therefore inadmissible. Fed. Rule Evid. 401. For example, Mr. Bright is asked by Special Agent Spivack,

- "If you are Leslie [SA Adamczyk] and I, okay, and you come across this chat, what do you think?" p.1: 1-3.
- "But what would a person think, not knowing –" p. 1: 12-13.

3

- "So what would a lay person – what would an average law enforcement official –"p. 2: 2-3.

Mr. Bright's judgment on what SA Spivack and SA Adamczyk would think or what a "layperson" or "average law enforcement official" would say it looked like for Mr. Bright when reading the chats with the undercover is completely irrelevant. What Mr. Bright thinks the chats look like arguably may be relevant but what the thinks others might think is immaterial. Even if relevant, this evidence should be precluded. Any probative value is substantially outweighed by the unfair prejudice it will create and will undoubtedly confuse and mislead the jury. Fed.R.Evid.403.

Second, the disputed portion is rife with the agent's own opinions on what the chats look like. Agent Adamczyk's opinion on the sexual nature of the chats and that "it looks like you were coming to have sex with a seven and nine year old" and Agent Spivack's opinion that "[i]t looks bad because it looks like you were going to have sex with a young children" are also irrelevant under Rule 401 and inadmissible under Rule 701. They would never be permitted to testify to those opinions at trial and the government shouldn't be allowed to get these opinions in through a back door by couching it as an interrogation technique. The agents are opining on matters that are for the jury to decide.

### III.  SPECIFIC EVIDENCE OF PRIOR AGEPLAY RELATED ACTIVITY SHOULD BE ADMITTED

It is Mr. Bright's theory of defense that he began communicating with the undercover agent with the intent to engage in ageplay communication and that he did not have the intent to engage in sexual activity with children when he met with her. It is abundantly clear that the government will argue to the jury that Mr. Bright communicated with the undercover agent because he was sexually attracted to children, [and] not because he was sexually attracted to adults pretending to be children." Govt. Supp. Motion at 2. It is also likely that the government will argue that the explanation given by Mr. Bright regarding ageplay is a fabrication and a cover made up after he got caught.

4

In support of his defense, Mr. Bright intends to offer evidence that, prior to his communication with the undercover agent, he frequently communicated with many other adults about age play. The evidence he intends to offer will be both testimony and exhibits. The exhibits consist of prior ageplay chats with such other adults. These chats are attached here as Exhibit C. This evidence, as the government concedes, is relevant to intent. The government objects not to "any testimony the defense may wish to elicit regarding Bright's sexual interest in adults (including adults pretending to be children)," but "to the introduction of evidence to prove up these traits on specific occasion." Govt. Supp. Motion at 10.

The government mistakes the proffered evidence of prior ageplay communications as character evidence, which it is not. The evidence is not being offered to prove up character traits or, as the government suggests, is it "proof of the absence of criminal acts on [other] specific occasions." United States v. Scarpa, 897 F.2d 63, 70 (2d Cir. 1990). The evidence precluded in Scarpa was not offered as evidence of Scarpa's intent. Scarpa and the holding in United States v. Benedetto, 571 F.2d 1246 (2d Cir. 1978), also cited by the government, forbid proof of specific acts under circumstances when, on a prior occasion, a defendant had an opportunity to commit a crime and didn't. Applied to this case, the rulings in Scarpa and Benedetto would prevent Mr. Bright from offering extrinsic evidence of prior instances when he had the opportunity to engage in sexual conduct with a minor (either in person or in online communication) but didn't. That is not what Mr. Bright seeks to introduce. Mr. Bright is offering the "other acts" evidence to prove his motive, intent, plan, and knowledge. Rule 404(b).

Just as the government's proffered 404(b) evidence is offered on the issue of intent, so too is Mr. Bright's specific evidence of prior ageplay. It is evidence that supports the theory of defense that Mr. Bright, a practicing ageplayer, began communicating with the undercover agent for that purpose only. He should not be constrained to merely testifying about his prior ageplay practice and be precluded from offering evidence of specific prior instances of ageplay, in the form of chats, to support his claim of intent. The evidence is directly relevant to Mr. Bright's intent

5

which the government's theory calls into question and is a central issue in dispute in this case.

### IV. THE COURT SHOULD PERMIT EXPERT TESTIMONY FROM DR. JAMES CANTOR

Pursuant to his Sixth Amendment right to present a defense, Mr. Bright seeks to present the testimony of Dr. James Cantor, a clinical psychologist, neuroscientist, and sex researcher. Dr. Cantor would testify to the nature and characteristics of age play, pedophilia and child sex abuse. Despite the government's failure to request expert notice, Mr. Bright informed the government that it intended to call an expert in age play and child sex abuse prior to serving the government with written expert notice on January 27, 2020.[1]

The government now seeks to preclude Dr. Cantor from testifying. The government contends that Dr. Cantor's proposed testimony regarding age play is "well within the grasp of the average juror" and that any testimony regarding the general characteristics of pedophilia or child abuse would be irrelevant and prejudicial. Govt. Supp. Mot. at 7. Contrary to the government's assertions, Dr. Cantor's intended testimony on age play, pedophilia and child sex abuse is "beyond the ken of the average juror" and highly probative given the nature of the allegations and Mr. Bright's theory of defense.

### a. Dr. Cantor's testimony on age play, pedophilia and child sexual abuse is relevant given the nature of the allegations.

The government questions the relevance of Dr. Cantor's proposed testimony on age play, pedophilia, and child sex abuse. The Federal Rules of Evidence broadly defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401.

---

[1] Under Rule 16(b)(1)(C)(1), a defendant is required to provide written notice "at the government's request."

Testimony about age play, pedophilia and child sex abuse is relevant given the nature of the allegations. The government will undoubtedly use Mr. Bright's messages to an undercover agent to argue that Mr. Bright wanted to have sex with children and as proof that Mr. Bright met with the undercover agent with the intent to have sex with children.

At trial, Mr. Bright will show that he was not expressing an interest in sex with a 7 and 9 year old when communicating with the undercover agent but instead was engaging in a particular type of role-play. Mr. Bright actively engages in role-play involving bondage, discipline, dominance and submission, sadomasochism, commonly referred to as BDSM. He is particularly interested in age play- an alternative sexual practice where individuals pretend to be ages different than their own. When Mr. Bright engaged with the undercover agent on Kink'd, a website for individuals interested in BDSM and role-play, he was engaging in age play; he was not expressing a desire to have sex with children, nor was he arranging to have sex with actual children.

To understand and appreciate Mr. Bright's defense, the jury will need to understand BDSM and age play, as well as the normal characteristics and behavior of individuals who actually desire and seek sex with children. Dr. Cantor's proffered testimony would educate the jury on ageplay and the ways in which individuals who desire to or have sex with children, find, meet, and engage with their victims. Their usual behavior and characteristics are relevant because Mr. Bright is accused of being one of these individuals–someone who desired to and intended to have sex with a child. The jury will hear testimony about Mr. Bright's conduct through the government's witnesses and Mr. Bright, if he testifies, and will see that his conduct and behavior was not consistent with an individual seeking sex with children, therefore making it less probable that Mr. Bright intended to have sex with a 7 and 9 year old.

7

### b. **Dr. Cantor's testimony on ageplay, pedophilia and child sex abuse is not likely to confuse or mislead the jury.**

Federal Rule of Evidence 403 permits the trial court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. 403.

Contrary to the government's argument, testimony about the general characteristics of and relationship between age play, pedophilia, and child sex abuse would not be unduly prejudicial or misleading. While the ultimate issue is whether Mr. Bright intended to entice a minor into illegal sex acts, whether his conduct and characteristics are consistent with a pedophile or sex abuser is nevertheless relevant evidence that can *assist* the trier of fact in determining the ultimate issue in this case.

Experts are routinely permitted to provide general testimony from which the jury, after evaluating all of the evidence, can draw certain inferences about the ultimate issue. For example, in narcotics cases, the Second Circuit routinely allows the government to present expert testimony on the "typical operations of drug dealers." See United States v. Barrow, 400 F.3d 109 (2d Cir. 2005); U.S. v. Boissoneault, 926 F.2d 230, 232 (2d. Cir. 1991) (compiling a list of Second Circuit cases approving "the use of expert testimony by government agents to describe the characteristics and operating methods off narcotics dealers."). In these cases the jury is often asked to infer that the defendant is guilty of the narcotics offense in part because his or her conduct is consistent with the "general characteristics and operating methods" of drug dealers. This testimony is allowed despite any risk that juries would confuse the issue of whether the defendant sold drugs (the ultimate issue) with the issue of whether the defendant's characteristics or conduct was merely consistent with the characteristics of a drug dealer.

8

Finally, Dr. Cantor's proposed testimony about the relationship between age play and pedophilia/sex abuse is not prejudicial or misleading. Dr. Cantor will not testify that Mr. Bright's communications or conduct were in fact consistent with age play. Nor will he testify about Mr. Bright's attraction to or interest in sex with children. Instead, Dr. Cantor will testify that based on his training, experience and review of the literature, that there is no relationship between an interest in age play and child sex abuse. Rather than confuse or mislead the jury, Dr. Cantor's testimony is necessary to help prevent the jury from drawing an unfounded inference when presented with evidence about Mr. Bright's interest in age play. It is highly likely, for example, that the jurors would believe that having sex with an individual who is pretending to be a child, indicates a desire to have sex with children.

The Second Circuit has permitted similar testimony in other child sex abuse cases. In United States v. Brand, 467 F. 3d 179, 188 (2d. Cir. 2006), the Court permitted the defendant to call a psychiatrist who testified that "no relationship exists between possessing or viewing child pornography and committing an illegal sexual act against a minor." This testimony is analogous to Dr. Cantor's proposed testimony regarding the relationship between age play and sexual acts against minors or desiring sex with minors.

### c. Dr. Cantor's testimony on age play would help the jury understand the evidence to be presented.

Expert testimony is proper "only if it concerns matters that the average juror is not capable of understanding on his or her own." U.S. v. Mejia, 545 F.3d 179, 194 (2d. Cir. 2008) (citing United States v. Amuso, 21 F.3d 1251, 1263 (2d Cir. 1994). Courts routinely permit expert testimony for the purpose of educating jurors in areas that are "beyond the ken" of the average juror, such as street level drug deals, United States v. Barrow, 400 F.3d 109 (2d. Cir. 2005); general/usual practices of child molesters, United States v. Hawyard, 359 F. 3d 631, 636 (3d. Cir. 2004); common behavior of abuse victims, United States v. Alzanki, 54 F.3d 994, 1005 (1st Cir. 1995). Expert testimony is also appropriate when "the jury has knowledge of

9

the subject, but the knowledge may be incomplete or inaccurate." See 29 Wright & Gold, Federal Practice and Procedure: Evidence §6264 at 213 (1997).

The government intends to introduce Mr. Bright's statements where he describes his interest in ageplay. If called to testify, Mr. Bright would discuss his interest in age play. Age play will therefore be a focus of the case and is a critical piece of Mr. Bright's defense. While the average juror may have heard of roleplay, they would likely be unfamiliar with the specific practice of ageplay. Dr. Cantor's proposed testimony would explain the characteristics of ageplay and the motivations of those who engage in it (commonly referred to as ageplayers). Specifically, Dr. Cantor would educate the jury on the norms of ageplayers, their methods of interacting and the language used in ageplay.

The Second Circuit encouraged the use of similar expert testimony in an internet enticement case. In United States v. Joseph, 542 F.3d 13 (2d Cir. 2008), the Court advised the district court to permit the testimony of a defense expert who would testify generally on sexual role-playing in internet chatrooms. The Court opined that this testimony was both relevant and helpful to the jury:

> Although some jurors may have familiarity with Internet messaging, it is unlikely that the average juror is familiar with the role-playing activity that Dr. Herriot was prepared to explain in the specific context of sexually oriented conversation in cyberspace. Many prospective jurors at Joseph's trial acknowledged that they had never visited a chat-room, and professed no understanding of what occurs there. Obviously a jury would not have to accept Joseph's claim that he planned only to meet "Julie" to learn who she was and that he lacked any intention to engage in sexual conduct with her, but the frequent occurrence of such "de-mask[ing]" of chat-room participants might provide support for his defense.

Dr. Cantor's proposed testimony is analogous to the proposed expert testimony in Joseph. Just as jurors are likely unfamiliar with sexual role-playing in chatrooms, they are likely unfamiliar with sexual role-playing in the BDSM and "kink" context, especially when it involves adopting the dress and mannerisms of children. Mr. Bright's post-arrest statements are not sufficient to educate the jury

10

on BDSM and ageplay nor is a jury likely to credit Mr. Bright's explanation of ageplay given his interest in the case. Dr. Cantor's testimony would explain that ageplay is an established and documented practice with its own language, behavior, and norms, and would help the trier of fact understand the evidence and Mr. Bright's defense.

### d. Dr. Cantor's Testimony is Based on his Training, Experience, Research and Review of Relevant Literature.

Dr. Cantor's testimony on ageplay, pedophilia and child sex abuse, would be based on his extensive training as a clinical psychologist and neuro scientist. This training is outlined in detail in Dr. Cantor's curriculum vitae provided as an exhibit to the government's Supplemental Motion. Dr. Cantor's testimony would also be based on his experience interviewing and/or treating hundreds of individuals with atypical sexual interests and/or sexual disorders.  Finally, his testimony would be based on his review of literature, including literature published in journals where Dr. Cantor serves on the editorial board (e.g. <u>Journal of Sex Research</u>, <u>The Archive of Sexual Behavior</u>, and <u>Sexual Abuse: A Journal of Research and Treatment</u>).

## V. CONCLUSION

    For the foregoing reasons, Mr. Bright respectfully requests that the Court exclude and/or limit 404(b) evidence, exclude portions of his post-arrest statements, admit specific evidence of prior ageplay activity, and permit expert testimony by Dr. James Cantor.

Dated: New York, New York
    February 4, 2020

                Respectfully submitted,
                Federal Defenders of New York

          By: /s/
             **Amy Gallicchio**
             **Zawadi Baharanyi**
             Attorneys for Defendant
               **Peter Bright**
             52 Duane Street - 10th Floor
             New York, New York 10007
             Tel.: (212) 417-8728