UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PETER BRIGHT,<br><br>                    Defendant. | 19 Cr. 521 (PKC) |

**THE GOVERNMENT'S REPLY MEMORANDUM IN LAW
IN SUPPORT OF ITS SUPPLEMENTAL MOTIONS *IN LIMINE***

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
One Saint Andrew's Plaza
New York, NY 10007

Alexander Li
Timothy Howard
Assistant United States Attorneys
       *Of Counsel*

The Government respectfully submits this memorandum in further support of its supplemental motions *in limine* (Gov't Mem.) filed on January 30, 2020, ECF Doc. No. 31, and in reply to the defendant's memorandum (Def. Mem.), filed on February 4, 2020, ECF Doc. No. 36. For the additional reasons set forth below, the Court should (1) permit the Government to introduce the challenged portions of the defendant's post-arrest statement, (2) preclude specific-act evidence relating to the defendant's prior "age play" activity, and (3) preclude the expert testimony of Dr. James Cantor.

## I. THE CHALLENGED PORTIONS OF THE DEFENDANT'S POST-ARREST STATEMENT SHOULD BE ADMITTED

The defense argues that the Court should preclude or limit the Government's use of certain portions of the defendant's post-arrest statement, which was recorded on video. This request should be denied.

### A. Clips 6–10 and 12

The defense argues that six clips relating to the defendant's prior sexual communications with a 17 year-old girl ("Girl-1") and her 14 year-old sister ("Girl-2") — *viz.*, Clips 6–10 and 12 (the "Direct Child Communications") — should either be precluded under Federal Rule of Evidence 404 or limited as unduly cumulative under Rule 403. (*See* Def. Mem. at 2 & Ex. A (transcripts).) For the reasons set forth in the Government's prior briefs, the Direct Child Communications should not be precluded under Rule 404 because they are evidence of the defendant's motive, intent, and absence of mistake or accident.

Nor are the Direct Child Communications unduly cumulative. The post-arrest video is approximately two hours, and a large portion of that time is spent on Bright's communications

with Girl-1 and Girl-2.  The six clips comprising the Direct Child Communications total just nine minutes.[1]  Each clip adds new and relevant information:

- Clip 6:  The defendant admits he communicated with Girl-1 and that she sent him a nude-ish photograph.

- Clip 7:  Girl-1 told the defendant she was a prostitute.  The defendant acknowledges Girl-2 was also real but denies exchanging messages with her.

- Clip 8:  The defendant admits he did exchange messages with Girl-2 but distinguishes it from his DDLG activities.

- Clip 9:  The defendant admits he received a photograph of Girl-2 in panties and a t-shirt.  The defendant states he found it flattering to flirt with Girl-1 and Girl-2.

- Clip 10:  The defendant admits he might have also received a nude photograph from Girl-2.  The defendant states that he found Girl-1's prostitution concerning and, after back-and-forth with the interviewing agents, agrees in substance that Girl-2's conduct was also potentially of concern.  The defendant states he did not notify law enforcement of Girl-1 or Girl-2 because he was skeptical of police involvement based, in part, upon his work as a journalist.

- Clip 12:  The defendant admits that he suggested meeting Girl-1, and it was possible the meeting would have been sexual.

The defense also argues that certain questions or statements by the interviewing agents should be precluded because they convey the agents' skepticism of the defendant's responses. (Def. Mem. at 2–3).  But it is not possible to understand the defendant's responses without also knowing the questions.  As the Seventh Circuit recently explained:

> [I]nterrogations are an inherently interactive process, and so Frusti's half of the interrogations were material to the context of Voecks' answers.  What Frusti asked of or said to Voecks during interrogation was not offered for its truth, but rather to establish what questions or statements Voecks was responding to and the effect the former had on Voecks as the listener.  This was a legitimate non-hearsay purpose aimed at providing the jury with the full context of Voecks' prior statements.

---

[1] This excludes the first half of Clip 6, which does not relate to Girl-1 or Girl-2.

2

*United States v. Fernandez*, 914 F.3d 1105, 1111 (7th Cir. 2019).  To the extent there is any marginal prejudice on account of the form of the agents' questions or statements, it can be cured by a limiting instruction that the questions or statements should be considered not for their truth but only "to establish what questions or statements [the defendant] was responding to and the effect the former had on [the defendant] as the listener."  *Id.*

  **B.**  **Clip 11**

  The defense also argues that a portion of Clip 11 should be precluded as irrelevant and improper opinion testimony.  (Def. Mem. at 3–4).  In the challenged portion, the interviewing agents ask the defendant what "a layperson on the street" would think of Bright's chats with the Mother.  (*Id.* at Ex. B (transcript)).  Bright answers:  "They would probably think that I want to have sex with her kids."  Bright goes on to claim, however, that "it was very ambiguous to me at the start," and that he "felt [the Mother] had to believe . . . because otherwise there's nothing to record."  Bright further explains that he was motivated by videos of other people "nailing . . . predators" and adds, "it looks like a real high, like just being able to say to someone, ha, I've got you."  The defense challenges the portions of Clip 11 relating to what a "layperson" or an "average law enforcement officer" would think of Bright's chats, but does not challenge the portions of Clip 11 relating to Bright's explanations.  (Def. Mem. at 3–4).

  The challenged portions of Clip 11 are relevant to help the jury assess the credibility of Bright's explanations, which the Government believes are false.  Bright's tone and demeanor grow markedly more agitated over the course of Clip 11, as he attempts to explain his activities despite their apparent illegality.  Showing Bright's explanations without the context of the immediately preceding exchange would convey a misleading impression of consistency and would deprive the jury of the effect of the challenged portion of Clip 11 "on [the defendant] as the listener."  *Fernandez*, 914 F.3d at 1111.

Nevertheless, as a compromise, the Government proposes that Clip 11 be trimmed to begin with Special Agent Spivack's statement "The chats in the totality . . ." (Def. Mem, Ex. B). This proposal would remove the initial exchange with Bright regarding what "a layperson on the street" would say, as well as Bright's response that "it was very ambiguous to me at the start." The remainder of Clip 11 is less than one minute. As revised, Clip 11 would include Bright's statement that he "felt [the Mother] had to believe . . . because otherwise there's nothing to record," as well as his explanation that he was motivated by watching videos. While this revised clip would include a brief exchange between the defendant and the agents on why the chats "look[] very bad," this exchange is necessary to place Bright's explanations into context and for the jury to evaluate Bright's credibility. Any residual prejudice can be cured with a limiting instruction that the agents' questions should not be considered for their truth.

## II.   SPECIFIC-ACT PROOF OF PRIOR "AGE PLAY" SHOULD BE PRECLUDED

The defense argues that the defendant's prior communications with adults pretending to be children (the "Age Play Chats") should be admitted under Rule 404(b) as evidence of Bright's intent. (*See* Def. Mem. at 4–6 & Ex. C (chats)). The Age Play Chats are not relevant for this purpose. The Government does not dispute that the defendant previously engaged in "age play" or that he has a genuine interest in that activity. The Government disputes only that the defendant's intent was to engage in "age play" *in this case*. Just as "a defendant cannot introduce evidence of innocent behavior on other occasions to prove his innocence" on the charged occasion, *United States v. Gambino*, 838 F. Supp. 744, 748 (S.D.N.Y. 1993), Bright cannot introduce evidence that he was previously engaged in the lawful activity of "age play" to prove he was engaged in lawful activity here. *See generally United States v. Rivera*, No. 13-CR-149 KAM, 2015 WL 1725991, at *2 (E.D.N.Y. Apr. 15, 2015) (collecting cases).

4

Put differently, the intent that the Government must prove is that, on the specific occasion charged here, the defendant intended to entice a minor to engage in sexual activity. The Government's Rule 404(b) Evidence is probative of this issue because it tends to prove that the defendant was sexually attracted to children and, therefore, was more likely to have sought sexual activity with a minor on the occasion charged here. The Age Play Chats, by contrast, tend to prove that the defendant was sexually attracted to adults pretending to be children. That fact, accepted as true, does not make it more or less likely that the defendant intended to entice a minor on the occasion charged here.

If the Court disagrees and holds the Age Play Chats admissible under Rule 404(b), the Government respectfully requests the Court limit, pursuant to Rule 403, the quantity of Age Play Chats admitted to two sets of chats. The five sets of chats proffered by the defense is needlessly cumulative given the parties do not dispute that the defendant previously engaged in "age play" and had a genuine interest in the activity. Admitting all of the Age Play Chats would waste time and could confuse the jury into believing they must determine the defendant's intent on each of the prior occasions.

## III.   DR. CANTOR'S EXPERT TESTIMONY SHOULD BE PRECLUDED

The defense seeks to offer the expert testimony of Dr. James Cantor on the characteristics of "age play," pedophilia, and the relationship between the two.[2] Relying principally on dicta in *United States v. Joseph*, 542 F.3d 13 (2d Cir. 2008), the defense argues Dr. Cantor's testimony is relevant to understanding Bright's defense that he was engaged in "age play." (Def. Mem. at

---

[2] The Government requested expert notice on January 6, 2020, when the defense first informed the Government by phone that it may call a witness to explain "age play" to the jury. In all events, "the proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied . . . ." *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007).

5

10). In *Joseph*, however, the defense made a detailed proffer of what opinions the expert would offer, as well the bases for those opinions. For example, the defense in *Joseph* proffered that their expert would testify about the "methods chatters use to 'de-mask' the other participant [in an online chat room]: such as asking for a photograph, attempting a phone conversation, asking for information that can be independently verified or even attempting to meet in a public space." 542 F.3d at 22. The defense in *Joseph* further established that their expert "wrote his Ph.D. thesis on sexual communication on the Internet and had testified previously on the subject in federal court," and had also "conducted a large number of interviews and studied chat-room conversations to understand sexual behavior on the Internet." *Id.* at 21.

Here, by contrast, the defense has offered little information on the substantive opinions that Dr. Cantor would offer. The defense broadly states that "Dr. Cantor's proffered testimony would educate the jury on ageplay and the ways in which individuals who desire to or have sex with children, find, meet, and engage with their victims." (Def. Mem. at 7). The defense intends to argue from this testimony that the defendant does not fit the "usual behavior and characteristics" of a pedophile or child abuser, but does fit the usual characteristics of someone engaged in "age play." (*Id.*). Devoid from the expert notice and defense brief, however, is any explanation of what Dr. Cantor opines *are* the "usual behavior and characteristics" of an "age player," pedophile, or child abuser. Without knowing what Dr. Cantor's opinions *are*, the Court cannot fulfill its gatekeeping responsibility under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592–93 (1993), and the Government cannot test Dr. Cantor's opinions through focused cross-examination.

Nor can the Court fulfill its gatekeeping obligations without understanding the bases and reasons for Dr. Cantor's opinions. In its brief, the defense states Dr. Cantor's testimony would

6

be based on "his extensive training as a clinical psychologist and neuro scientist," his "experience interviewing and/or treating hundreds of individuals with atypical sexual interests and/or sexual disorders," and his review of unspecified literature. (Def. Mem. at 11). These general references to Dr. Cantor's training and experience as a psychologist and sex researcher do not explain the bases for Dr. Cantor's opinions about "age play" or the relationship between "age play" and pedophilia. Unlike the expert in *Joseph*, who based on his proffered testimony about chat-room participants on his studies of "chat-room conversations to understand sexual behavior on the Internet," 542 F.3d at 21, Dr. Cantor has no obvious basis for any opinion on "the norms of ageplayers, their methods of interacting and the language used in ageplay" (Def. Mem. at 10). *Cf. United States v. Gillis*, 938 F.3d 1181, 1195 n.5 (11th Cir. 2019) (distinguishing *Joseph* as a case about relevance, not the reliability of the expert opinion).

Finally, even if Dr. Cantor's opinions were relevant under Rule 401 and admissible under Rule 702 and *Daubert*, they should be excluded under Rule 403 because any limited relevance is substantially outweighed by the risk of unfair prejudice, confusion, and misleading the jury. (*See* Gov't Mem. at 6–9). In the alternative, the Court should adjourn the trial for the Government to consider introducing expert testimony in response.

## CONCLUSION

For the additional foregoing reasons, the Court should (1) permit the Government to introduce the challenged portions of the defendant's post-arrest statement, (2) preclude specific-act evidence relating to the defendant's prior "age play" activity, and (3) preclude the expert testimony of Dr. Cantor.

Dated: New York, New York
February 5, 2020

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

By:   /s/ Alexander Li
Alexander Li
Timothy Howard
Assistant United States Attorneys
Tel.: 212-637-2265/-2308