K275briC                    conference

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,              New York, N.Y.

4           v.                            19 Cr. 521 (PKC)

5  PETER BRIGHT,

6             Defendant.

7  ------------------------------x

8                                        February 7, 2020
                                         2:30 p.m.
9

10 Before:

11                 HON. P. KEVIN CASTEL,

12                                       District Judge

13

14                    APPEARANCES

15 GEOFFREY S. BERMAN
        United States Attorney for the
16      Southern District of New York
   BY:  ALEXANDER LI
17      TIMOTHY T. HOWARD
        Assistant United States Attorneys
18

19 FEDERAL DEFENDERS OF NEW YORK
        Attorneys for Defendant
20 BY:  ZAWADI BAHARANYI
        AMY GALLICCHIO

21 ALSO PRESENT:  ELIZABETH JENSEN, Special Agent, FBI
                  ALONDRA RAYES, Paralegal, Federal Defenders
22

23

24

25

K275briC                         conference

1              (Case called)

2              THE DEPUTY CLERK:  For the government.

3              MR. LI:  Good afternoon, your Honor.  Alexander Li and

4    Timothy Howard for the government.

5              THE COURT:  Good afternoon to you both.

6              MR. LI:  Good afternoon.  With us is FBI special agent

7    Elizabeth Jensen.

8              THE COURT:  All right, Ms. Jensen.  Good afternoon.

9              And for the defendant?

10             MS. GALLICCHIO:  Good afternoon, your Honor.  Federal

11   Defenders by Amy Gallicchio with Zawadi Baharanyi.  Also

12   present with us is Alondrda Rayes, who is paralegal on this

13   matter, and of course Mr. Bright.

14             THE COURT:  Good afternoon to you all.

15             So, I have a number of *in limine* motions.  I may start

16   with some questions and I will give you an opportunity.  If

17   there is anything else that anybody else wants to say, they

18   can.

19             Now, it comes up a couple of times in the excerpts.

20   There is a reference to the 17-year-old with the 14-year-old

21   sister, there is a 2011 conversation in which there is a

22   reference to a pop star.  The question is why does any

23   conversation regarding a 17-year-old, who is above the age of

24   consent in New York, come in?

25             MR. LI:  Your Honor, I think it is relevant for two

K275briC                        conference

reasons and both pertain to the defendant's intent.

First, your Honor, a 17-year-old, although it is within the age of consent in New York, for federal child pornography law purposes that is a person, a minor.  That is a minor for purposes of the child pornography laws.  The defendant's stated in parts of his post-arrest statement that he received "a nudish photograph" from the 17-year-old girl.  I think this puts this case squarely in the framework of *United States v. Brand* where the Second Circuit held that child pornography is relevant to the question of intent in a child entitlement case because it goes to whether the defendant has an abnormal sexual attraction to children.

THE COURT:  So what you would say is I should say to the jury:  *Ladies and gentlemen of the jury, as I will tell you at the conclusion of this case, the age of legal consent in New York is 17 and the defendant can only be convicted of this crime if the person who he was seeking to entice is below the age of 17.  Yet, in the case of child pornography, with which he is not charged, it could be a piece of child pornography which happens to be against a federal statute if communicated by a facility of interstate commerce or a wire if the person is under the age of 18.*

Is that what you want me to tell the jury?  Or just don't bother telling them that second part?  Or the first part?

MR. LI:  Your Honor, I think this does go to the

K275briC                        conference

1    question of the defendant's intent.  I think a limiting

2    instruction can cabin some of the concerns that the Court has.

3            THE COURT:  What I am asking you is wouldn't I have to

4    tell the jury all of that?

5            MR. LI:  I don't think the Court would need to tell

6    the jury all of that.

7            THE COURT:  So, give me your limiting instruction.

8            (Counsel conferring)

9            MR. LI:  Your Honor, I think the instruction would be

10   that the defendant is not charged with child pornography.

11   Whether in fact he received child pornography is not at issue.

12   The statement that the defendant might have -- the defendant's

13   own admission that he might have received a nudish photograph

14   or that he did receive a nudish photograph from this

15   17-year-old should only be used for the purpose of his intent

16   to commit the crime of child enticement, that is, whether he

17   intended --

18           THE COURT:  But what you are leaving out of your

19   limiting instruction -- the question that I asked you was about

20   the limiting instruction so let's talk about this.  What you

21   are leaving out of your limiting instruction is that it's

22   unlawful to possess a sexually explicit picture of someone

23   between the age of 17 and 18.  I am trying to get this jury to

24   understand that they can only convict if the intended persons

25   who were enticed were below 17, even though the statute refers

1    to the 18-year threshold.  That's a concept that this jury

2    needs to understand.  I can't just say something about, well,

3    child pornography, in general, without saying to them even

4    though you can't be convicted of the crime unless the intended

5    victims were below 17, you could be convicted of the crime of

6    child pornography if it is a nude image of someone between 17

7    and 18.  Wouldn't I have to tell them that?  Otherwise, how

8    would they know what child pornography is?

9             MR. LI:  Your Honor, I don't think the jury needs to

10   understand the concept of child pornography or the legal

11   concept of child pornography because that legal concept is not

12   at issue.

13            THE COURT:  How would they know it was child

14   pornography?

15            MR. LI:  The jury only needs to know the fact that he

16   received an image from someone who he believed to be 17 years

17   old and that picture was nudish and that that is sufficient for

18   them to infer the intent that he sexually --

19            THE COURT:  Would it be a fair inference if the child

20   was 18?

21            MR. LI:  No, your Honor.  We would not be arguing for

22   that inference if the child was 18.

23            THE COURT:  That's the problem you have here, is that

24   there is a distinction as to age and there is a distinction in

25   the case of child pornography that the child could be between

1   17 and 18 and it would be child pornography, but below 17 they

2   can't be guilty of the crime charged here under 2422(b).

3          MR. LI:  That is right, your Honor.  I agree that

4   there is a legal distinction that the Court has referenced

5   between child pornography and the federal case --

6          THE COURT:  Oh, you and I get that.  Everybody here

7   gets that.  The question is what I tell the jury and I told you

8   what I proposed to tell the jury if I were going to let this in

9   and you said, oh no, Judge, don't do that.

10          MR. LI:  Your Honor, maybe if I could go on to the

11   second reason why we think this is relevant and then we can

12   circle back to the limiting instruction that the Court would

13   potentially enter.

14          THE COURT:  Does this relate to the 17 and

15   14-year-olds but not to the pop star?

16          MR. LI:  Yes, your Honor.

17          THE COURT:  Okay.  So this, what you are about to tell

18   me has nothing to do with the pop star.

19          MR. LI:  Correct, your Honor.

20          THE COURT:  Okay.  And your second reason is because

21   it reflects that this man had no intention of informing or his

22   intent to inform law enforcement of bad conduct.

23          MR. LI:  Yes.  That's exactly right, your Honor.

24          THE COURT:  Okay.  Well, we are going to put that one

25   aside because I have some questions for the defendant on that

7

1   but at this stage of the game references to the pop star above

2   the age of 17 and to what you characterize as the quote or the

3   defendant characterized as the "nudish" pictures of the

4   17-year-old are out because, under 404(b) grounds, which is a

5   consideration on prior similar act testimony because of the

6   danger of unfair prejudice and jury confusion, quite frankly,

7   because I would have to explain how the distinction between a

8   person a day over 17 for the purposes of 2422(b) versus the

9   child pornography laws, and that would lead to juror confusion.

10          MR. LI:  I understand the ruling of the Court, your

11  Honor.

12          Just so the Court is aware, some of the post-arrest

13  videos talk about the 17-year-old and the 14-year-old

14  essentially in the same sentence.  We will work with the

15  defense to sort of parse this out as best we can but I just

16  wanted to let the Court know.

17          THE COURT:  Either that or I can give a limiting

18  instruction that you can only consider -- it can't be parsed

19  out, then I would allow it in, but I would say you can't

20  consider the references to the 17-year-old as prior similar act

21  testimony but, to the best of your ability, filter it out.

22          MR. LI:  We will do that, your Honor.  Just to be

23  clear, the Court is also saying the references to the

24  13-year-old pop star should come in?

25          THE COURT:  13-year-old?

1          MR. LI:  Yes, your Honor; the pop star was a

2     13-year-old.

3          THE COURT:  No.  There is a 17-year-old pop star and a

4     13-year-old pop star.  I'm only talking about the 17-year-old

5     pop star.

6          MR. LI:  Your Honor, the 17-year-old is not a pop

7     star.  The 17-year-old is an individual that the defendant

8     claimed he was communicating with.

9          THE COURT:  Well, I'm talking about the man's name is

10    Justin Bieber.

11         MR. LI:  Okay, your Honor.

12         THE COURT:  Is that something you are planning on

13    offering?

14         MR. LI:  No, it was not, your Honor.

15         THE COURT:  Well, why is it in the motion papers

16    before me?  I didn't see you disclaim that as what you were

17    seeking to offer in the 2011 conversation.  I am looking at it,

18    it is on file at document 29-2, filed on January 24th, page 2

19    of 2.

20         MS. GALLICCHIO:  Your Honor, maybe I can clear that

21    up?

22         THE COURT:  Yes.

23         MS. GALLICCHIO:  I actually submitted the entire chat

24    log to the Court so that the Court could read what the

25    government was seeking to introduce in context because I

K275briC                    conference

1    thought the context of that statement was relevant.

2                THE COURT:  So, where do I find what the government

3    seeks to introduce?

4                MS. GALLICCHIO:  It is in that section.

5                THE COURT:  No, no, no, no.  I am asking what -- I

6    understand what your point is --

7                MS. GALLICCHIO:  Right.

8                THE COURT:  -- that there is the universe and then

9    there is some subset of that that they're seeking to introduce.

10   Where do I find the subset?

11               MR. LI:  Your Honor, it's in our motion *in limine*

12   paper in document no. 23 on page 3.

13               THE COURT:  I apologize.

14               (pause)

15               THE COURT:  And on the 2011 conversation all you are

16   offering is that portion?

17               MR. LI:  Yes, your Honor.

18               THE COURT:  Okay.  So that makes it a lot easier.

19   That makes it a lot easier.  Fine.

20               MR. LI:  Okay.

21               THE COURT:  So, we are good there.  And I apologize, I

22   looked at the full transcripts as the best source of the

23   information.  Okay.

24               MS. GALLICCHIO:  Your Honor, just if I may?

25               THE COURT:  Yes.

K275briC                    conference

1              MS. GALLICCHIO:  With respect to that, if the Court is

2       ruling to allow that in we would be seeking for the entire

3       conversation to come in or a large portion of it, so that that

4       comment is placed in context.  I don't know whether the

5       government has an objection to that and it may be something

6       that we can work on a compromise on but --

7              THE COURT:  Well, what you have to tell me is taking

8       the July 29, 2011, are you seeking to offer each and every word

9       of it or something else less than each and every word?

10             MR. LI:  Your Honor, based on our discussions with the

11      defense, we would propose to offer the entire chat because we

12      understand that the defense wants to use other portions of that

13      chat and so we would offer the entire chat message and then the

14      government is only going to be arguing from these five

15      sentences.

16             THE COURT:  I think what you mean to be telling me is

17      something different than that which is you're offering what's

18      on page 3.  You have no objection if the defendant wants to

19      offer the balance under the rule of completeness.

20             Is that what you are telling me?  Or do you want to

21      offer the whole thing.

22             MR. LI:  We are prepared to do it either way but just

23      to make it easier for everyone, we are prepared to offer the

24      entire thing.

25             THE COURT:  If you do then I'm going to rule against

1    you because I'm excluding certain portions that you can't get

2    into evidence.  Whether the defendant can get it into evidence

3    is a different standard.

4            MR. LI:  I understand, your Honor.  Then we will offer

5    just these five sentences.

6            THE COURT:  Right.  But under the rule of completeness

7    if the defendant seeks to offer other portions of it at the

8    same time they will come in at the same time.

9            MR. LI:  We have no objection to that, your Honor.

10           THE COURT:  And that's what you want to do, right?

11           MS. GALLICCHIO:  Yes, your Honor.

12           THE COURT:  Okay.  So that's fine, but let's just look

13   at the excerpts on page 3 of the government's *in limine* motion

14   A, B, and C.  Is there a reason for me to exclude those

15   portions that you want to argue or do you want to just stand on

16   your arguments in your brief?

17           MS. GALLICCHIO:  Your Honor, I stand on my arguments.

18   I think I fleshed them out.

19           THE COURT:  All right.

20           MS. GALLICCHIO:  I also ask that they be placed in

21   context as with the prior.

22           THE COURT:  So you will get together with the

23   government and see what you can agree on under the rule of

24   completeness, but what I am permitting the government to do is

25   what appears under A, B, and C, on document 23, page 3.

K275briC                    conference

1          Now, since this has come up, what you are seeking with

2     regard to the so-called rape law tweet and the jail bait tweets

3     are what you have quoted in numbers 1 and 2 on page 2; is that

4     correct?

5          MR. LI:  That is correct, your Honor.

6          THE COURT:  Okay.  And the defense stands on its

7     arguments in its brief?

8          MS. GALLICCHIO:  Yes, your Honor.

9          THE COURT:  I'm going to allow 1 and 2 in.  I will say

10    a little bit more about that in some of my comments, and then

11    you have heard what I have said about what is item 4, the

12    direct child communications on page 3 going on to 4 of the

13    government's brief.  And I will just say for the record that

14    Rule 404(b) provides that evidence of a crime, wrong, or other

15    act, is admissible for purposes of proving motive, opportunity,

16    intent, preparation, plan, knowledge, identity, absence of

17    mistake or lack of accident and it is subject to a four-factor

18    test, whether the evidence is offered for a proper purpose,

19    whether the evidence is relevant to the material issues in

20    dispute, whether its probative value is substantially

21    outweighed by prejudicial effect, and whether it's going to be

22    admitted with a limiting instruction if requested by the

23    defendant.  The Second Circuit takes an inclusionary approach

24    to prior acts whereby evidence is admissible for any purpose

25    other than to show criminal propensity and the government is

1    required to establish only a similarity or some connection to

2    establish that a prior act is relevant to one of the other

3    elements, in this case intent of the crime charged.  In order

4    to be relevant, the evidence must be sufficiently similar to

5    the conduct at issue to permit the jury reasonably to draw from

6    that act the state of mind inference advocated by the proponent

7    and so that's where I believe that the evidence comes in.  It's

8    true that the defense has the argument that Bright was not

9    speaking literally and that these posts and chats are either

10   too far in the past to be relevant or were either comments on

11   the arbitrariness of statutory rape laws or crude and tasteless

12   jokes and playful banter.  And it seems to me that that's a

13   question of the weight, if any, to be given to the statements

14   by the jury and of course I am, if the defendants request,

15   going to give a limiting instruction that some of the tweets

16   are from 2019 and 2013 and that the Google chats are from 2010,

17   2012 is not a basis to exclude.  The Circuit has affirmed the

18   admission of prior act testimony that was as much as 15 years

19   before the charged crime or charged conduct.  That's the Larson

20   case and they pointed out that there is no bright-line rule on

21   age, that's the Mostafa case, and here I find that there is

22   sufficiently relevant and probative evidence and there is

23   nothing about the age which makes them less so.

24          Now, let me find out from the defense, because this is

25   kind of a guiding -- may be a guiding principle for me.  What

1    is the theory of the case with regard to whether these were

2    adult role play, or whether these were efforts to catch a

3    predator, or both?  What is the theory of the defense?

4            MS. GALLICCHIO:  So, your Honor, I am prepared to do

5    that.  I just would ask the Court to ask that Agent Jensen step

6    out of the courtroom.  She is the agent, the undercover agent,

7    and so I would ask that she --

8            THE COURT:  I think that's fine.  I think that's a

9    reasonable request and I'm going to grant it.

10           (Agent leaves the courtroom)

11           THE COURT:  Go ahead.

12           MS. GALLICCHIO:  Yes.  Thank you, your Honor.

13           So, it is our theory, as we I think we have laid out

14   or touched on in our papers, your Honor, that Mr. Bright began

15   engaging with who turned out to be an undercover agent, under

16   the belief that he was engaging in a kinky chat room with an

17   adult who is engaging in a sexual practice known as role

18   playing or age playing where adults regress in age and take on

19   the persona and actions of a different age; a child perhaps, an

20   infant.  It's a kink that people engage in.  And, it is

21   something that he has engaged in on many occasions.  The

22   government does concede that, that he is a practicing

23   age-player with consenting adults and that he was in a dating

24   site called Kinked -- it's name tells you a lot -- and it is a

25   place where people who engage in kinky sexual activities,

fetishes and unconventional sexual practices, and that's where

he met her.  She had a profile page in which she described her

role as mommy.  "Mommy" is a term of art in that world, just as

"daddy" is.  And so, when he engaged in the communication with

her he believed he was engaging with an adult who is offering

age-play with herself and her, what we would call, "littles" is

what the people in the age-play world call adult regressing to

a younger age.  So, what he was expecting was a threesome,

basically, with consenting adults with the undercover agent

would be the mommy figure, dominant figure; and two other

adults would be playing the littles figures.

That is what he thought.  Now, that changed.  And his

communication with her throughout that was consistent with

that, is our position.  That changed at some point during the

communication when the agent sent a photograph of, presumably,

of children, because I don't think there is a question about

that, and then his focus changed he became suspicious.  I think

he had a lot of mental states at that point but he then decided

that he -- his intention changed -- that he was going to get

information about this woman so that he could turn it over to

law enforcement, concisely.  But there was sort of clues became

greater and greater along the way once he got the photograph of

the children and that he never intended, ultimately, to engage

in enticing a minor to engage in sexual activities through the

mother.

K275briC                    conference

1          THE COURT:  As you have heard me say, the interaction

2     with -- there was the communication with the agents about the

3     17 and 14-year-old, I gather sisters, and what I have indicated

4     is to the extent it can be redacted and still make sense, the

5     references to the 17-year-old are not relevant with regard to

6     the defendant's intent to entice a child under 17.  However,

7     the conversation with regard to the 17 and the 14-year-old,

8     which turns to the question of did you think about reporting

9     this to law enforcement and why didn't you report this to law

10    enforcement, why doesn't that become relevant because of the

11    defense which is asserted in this case, specifically that the

12    defendant's intent changed to one to which I will call an

13    "intent to catch a predator" and this would be some evidence

14    bearing on this defendant's intent?  Why wouldn't that come in

15    on that basis?

16          MS. GALLICCHIO:  So, a couple things, your Honor.

17          I guess we are talking about two intents here, right?

18    The intent -- really, the intent that is relevant in this case

19    is did he intend to entice a 7 and 9-year-old to engage in

20    illegal activity?  That is the intent that the statute requires

21    the government to prove, not that he intended to turn in

22    someone that he discovered was a child molester.

23          THE COURT:  I totally agree, that's why I asked -- I

24    mean, for example, if you told me that's not your defense and

25    you are not going to argue it, it would change my whole

1   thinking about this.  So, it doesn't come in as a part of the

2   government's case except for the fact that whether it is a fair

3   response to the defense raised, in essence.

4           So, I don't think we are in disagreement on this.

5           MS. GALLICCHIO:  Right.  I guess then this raises

6   again the question of how does the jury get charged without

7   being -- I don't know about misled but probably confused moreso

8   as to the relevance, in other words --

9           THE COURT:  Well, it is a limiting instruction.

10  Ladies and gentlemen, this is what the law sometimes refers to

11  as prior similar act evidence which can be considered on the

12  question of intent.  You can only -- this is not charged

13  conduct in this case, you may not convict Mr. Bright on the

14  basis of any of this evidence.  You can only consider it to the

15  extent that you conclude that it has some bearing on his intent

16  during the charged offense.

17          MS. GALLICCHIO:  Right, but I guess there is two

18  intents here.  Right?  There is the intent which we are talking

19  about, there is the intent to entice a minor, right, and then

20  there is the intent to turn him in because he is going to be,

21  when he testifies or even in his statement to the police, he

22  says the same thing.  When he engaged in this conversation

23  initially with this agent I intended to engage in age-play, I

24  wasn't trying to entice a minor to engage in sexual activity.

25          THE COURT:  Well, but whether it is by opening

1   statement or examination of witnesses the defendant suggests to

2   the jury, as I understand you desire to, that this was an

3   intent to catch these people and turn them in to law

4   enforcement.  Now you, I assume, would tell me that the

5   government has to prove beyond a reasonable doubt that the

6   intent was to entice people, these young people into sex and an

7   intent to turn somebody into law enforcement is inconsistent

8   with that.  Given that, my question is why isn't it a fair

9   response for the government to say we are going to show the

10  jury that that is not likely Mr. Bright's intent because of

11  what he said about an unwillingness to turn a person who is

12  engaged in prostitution to law enforcement and what appears to

13  be an unwillingness to report that a 14-year-old was being used

14  for sexual acts because of an opinion of his that this can

15  break up families.  All right?  I am not even getting into

16  judging whether that's a good idea or a bad idea but it's an

17  intent that is demonstrated by what he said on another

18  occasion.  Why isn't that relevant?

19          MS. GALLICCHIO:  No.  I understand, your Honor, what

20  you are saying.  I guess what I was saying is that I think the

21  problem is a limiting instruction would be with respect to that

22  intent so the jury would have to say it's not relevant to

23  whether he intended to entice a minor.

24          THE COURT:  Right.

25          MS. GALLICCHIO:  It is only relevant --

K275briC                      conference

1            THE COURT:  Yes.

2            MS. GALLICCHIO:  That's where the confusion is and how

3    do they separate, how does the jury separate, apply that.

4            THE COURT:  Very easily.  Very easily.  Because the

5    trial is going to go on and it is: *Ladies and gentlemen, this*

6    *evidence is limited to the issue.  You have heard the defense*

7    *say in their questioning of witnesses or in their opening*

8    *statements as it was said and this only goes to that issue and*

9    *not any other issue and you may only consider it on that issue.*

10   And then we move on.

11           Limiting instructions are a feature of trial practice,

12   they go on in every case and juries are very smart and judges

13   sometimes, if there is an uncertainty, the Judge repeats it or

14   reiterates it or searches for additional words with the aid of

15   counsel to drive home the point of the limiting instruction.

16           So, that's what I have to say there.

17           MS. GALLICCHIO:  Your Honor, can I have one moment?

18           THE COURT:  Yes.

19           (Counsel conferring)

20           MS. GALLICCHIO:  So, I guess I just want to point out

21   what I think -- so, the question of relevance becomes a

22   question of is there similarity, meaning similarity or

23   connection to the prior offense.

24           THE COURT:  Right.

25           MS. GALLICCHIO:  So, the offense charged is his intent

1    to report an adult who is committing crimes against another

2    person, right?

3                THE COURT:  Right.

4                MS. GALLICCHIO:  Against children.

5                THE COURT:  No.  Well, no.  That's not actually

6    accurate.

7                MS. GALLICCHIO:  The current offense, the offense

8    charged.

9                THE COURT:  I see.

10                MS. GALLICCHIO:  The offense charged.

11                THE COURT:  I see.  That is accurate.  Okay.

12                MS. GALLICCHIO:  That is accurate.  And so the prior

13    act, the 404(b) evidence is different in that it's not a

14    scenario where he's -- it's a scenario he is refusing to or not

15    willing to report a crime but not a crime that's being

16    committed against other people, right?  It's these girls

17    sending, unsolicited, their photographs.  Unsolicited and not

18    downloaded by him.  They send pictures.  He can't prevent them

19    from sending pictures.  They say -- one of them says -- the

20    17-year-old says I sometimes sell myself for money.  Right?

21                THE COURT:  Well, that's a crime.

22                MS. GALLICCHIO:  That is a crime.  Yes.  Yes, of

23    course I agree with the Court.

24                THE COURT:  All right.

25                MS. GALLICCHIO:  But it's different that he is like,

21

1    look, I'm not reporting that to the police.  That intent is

2    different than the intent that we are talking about in the

3    instant offense.  They are not similar or connected in a way

4    that makes it relevant to the intent in this case.

5              THE COURT:  I hear your argument and you are certainly

6    free to argue that to the jury but I have a different viewpoint

7    on that and I want to clarify one thing that I said before and

8    amend it, and that is what I was referring about the limiting

9    instruction relates to the 17-year-old because I said at the

10   outset I think it gets too off-point to get into the question

11   of age of consent yet the age for child pornography and the

12   like.  So, that is my thought with regard to the 17-year-old

13   and it being evidence that could be considered on intent as to

14   enticing, wholly apart from the defense you are raising.  But

15   in the case of the 14-year-old girl, the limiting instruction

16   would be different.  You can consider on both intent and also

17   on the defense that he was trying to catch a predator.

18             MS. GALLICCHIO:  Can I speak briefly, your Honor, to

19   the relevance of the prior statements regarding the

20   14-year-old?

21             THE COURT:  Yes.

22             MS. GALLICCHIO:  So, with respect to those statements,

23   and looking through the clips, your Honor, it is certainly our

24   position that there isn't anything about those statements

25   regarding the 14-year-old that provide prior bad acts, that

K275briC                        conference

1    provide anything relevant or similar to the crimes charged and

2    that is because when you look at the clips, largely, I think

3    the first two clips are mostly about the 17-year-old.  Clip 8

4    he actually denies interest in the 14-year-old.  If we look

5    through them individually, clip 6 is the first one of the

6    direct communications with the 14 and 17-year-old and that is

7    largely -- and that actually starts on page 2, line 24, and

8    that clip largely relates to -- it does in fact only relate to

9    the 17-year-old, and then going to clip 7, your Honor, it is a

10   short clip that's not even a page long, that actually doesn't

11   even -- it mentions a 14-year-old but it has nothing to do with

12   the 14-year-old.  Clip 8, your Honor, he actually, in that

13   clip, he denies having any sexual interest in a 14-year-old and

14   he distinguishes age regression and age-play with what the

15   agent is referring to.

16            THE COURT:  You may have a point.  Maybe I was right

17   the first time in a limiting instruction should be applied to

18   both the 17-year-old and 14-year-old.

19            I do want to hear the government on that one.

20            MS. GALLICCHIO:  I just --

21            THE COURT:  Yes.

22            MS. GALLICCHIO:  I think if you look through -- and I

23   don't have to go through them all, I know the Court has read

24   them -- when you look through them there is really nothing but

25   for the fact he received photos from her that were nude or

1    nudish and there is some dispute back and forth about what they

2    are and some debate with the agents about that.  There is

3    really nothing sexual, nothing indicating that he had any

4    sexual interest in the 14-year-old and therefore I would

5    suggest first that it is not relevant.

6           THE COURT:  Well, I think he describes the photos that

7    were sent by the 14-year-old, is my recollection, and he

8    received them.

9           MS. GALLICCHIO:  And then deleted them.

10          THE COURT:  And then deleted them.  But, the jury

11   is -- I mean, he was asked was it sexual and his answer, you

12   see it on line 18 on page 13 of 23 and he is asked:  *Is that*

13   *like the role playing is one thing?*  And he says:  *Yeah.*

14          MS. GALLICCHIO:  Right.  Right, it is different.  I

15   guess my point is that he didn't do anything --

16          THE COURT:  And he says it's just someone flirting

17   with you.

18          MS. GALLICCHIO:  Right.

19          THE COURT:  And so I think that bears on the intent

20   with regard to the charged crime because this is an instance

21   where the 14-year-old is a 14-year-old according to what I read

22   here and he is expressing an interest in having the 14-year-old

23   flirt with him.  That's why a jury could read it that way.

24   They might read it another way but I certainly can read that.

25   That's what I think the fair reading is.

K275briC                        conference

```
1       MS. GALLICCHIO:  I think what he is saying -- he found

2   it flirtatious, right?  But, put in context, if you look at the

3   whole picture here, he says she's a stupid teenager, I'm not

4   interested in her, it has nothing do with my age-play, she

5   sends me a picture, I delete it, I didn't ask her for any

6   pictures.  There is nothing about this that makes it more

7   probable that then, on May 22nd or whatever the date of this

8   case is, he intended to entice a minor to engage in sexual

9   activity.

10       THE COURT:  Yeah, it does.  Yeah, it really does.  In

11   my mind I think a jury could find that, that this person -- so,

12   let's just read this here.

13       MS. GALLICCHIO:  Which one, Judge?

14       THE COURT:  I am on page 13 of 23, 36-1:  This is the

15   defendant speaking:  Like I say, the text with the messages

16   with the 17-year-old and the 14-year-old were flirty, I would

17   say.  I didn't know what to make of her sex-for-money thing,

18   like.

19       SPIVACK:  So the texts with the 14-year-old were also

20   flirty?

21       DEFENDANT:  Yeah, you know, she was basically saying,

22   oh, like you know, English accents are so sexy and that kind of

23   thing.

24       SPIVACK:  Did the 14-year-old ever send you a pic?

25       DEFENDANT:  I think she sent me pictures but it's
```

1   deleted as well.

2            SPIVACK:  What did she send you?

3            ADAMCZYK:  What was the picture?

4            DEFENDANT:  I don't even remember.  It was like her,

5   in, like, little -- it was her in, like --

6            SPIVACK:  Was it sexual?

7            DEFENDANT:  Panties and a t-shirt.

8            SPIVACK:  Panties and a t-shirt?

9            DEFENDANT:  Like, yeah.

10           ADAMCZYK:  So here's the, like, role playing is one

11   thing?

12           DEFENDANT:  Yeah, but like why talk to a 14 and

13   17-year-old, like why do you even -- why even entertain that.

14           SPIVACK:  Especially if she's sending you panty pics.

15           DEFENDANT:  Yeah, it's kind of flattering to be --

16   just have someone flirt with you.

17           I think that bears on intent.  It will be a question

18   for the jury, not for me to decide, but a reasonable jury could

19   conclude that that indicates that this person is open to

20   engaging young minors.

21           MS. GALLICCHIO:  So, assuming the Court is obviously

22   finding the relevance of it I would say then the next step we

23   look at is that relevance, is it outweighed by the unfair

24   prejudice that it would create in a jury's mind, right, based

25   on our position is obviously no relevance but the relevance

K275briC                    conference

1    that the Court has identified that he had a flirty conversation

2    with a 14-year-old who, unsolicited, sent him a photograph.

3    Right?  That certainly is -- so it can be inflammatory, right?

4    And so, I would suggest that the probative value is outweighed

5    by what would be substantial prejudice.

6              THE COURT:  All right.  Now, one of the things we do

7    in this Second Circuit, and you are an experienced criminal

8    practitioner in this court house, is we look at whether this

9    evidence is more inflammatory than evidence just tending to

10   prove the indictment in this case and if, for example, you had

11   maybe some a kind of a drug transaction and you were trying to

12   offer prior similar act evidence that was going to get into a

13   murder or a torturing somebody, you would say the probative

14   value of that evidence is substantially outweighed by the

15   danger of unfair prejudice in the case.  Here, this is not

16   anymore inflammatory than the charge and the evidence in the

17   case.  So, I conclude that the danger of unfair prejudice does

18   not substantially outweigh its probative value.

19             MS. GALLICCHIO:  Understood, your Honor.

20             I think with respect to that, those very clips and in

21   particular clip 10 I did have another objection.

22             THE COURT:  Yes.

23             MS. GALLICCHIO:  When you are ready.

24             THE COURT:  Go ahead.

25             MS. GALLICCHIO:  The other objection I had, your

K275briC                    conference

1    Honor, was with respect to, particularly I think it was clip 10

2    which is on page --

3              THE COURT:  I have it here, 17 to 23.

4              MS. GALLICCHIO:  Yes; that throughout this clip,

5    through a good portion of it it does appear that the agents

6    are, first of all, cutting Mr. Bright off consistently from

7    giving his answers, giving their opinions, expressing their

8    skepticism and their judgments over what he says.

9              THE COURT:  I agree with you and I think I would like

10   the government to knock that out throughout the post-arrest

11   statements.  We don't care what Spivack or anyone else thinks,

12   Adamczyk.  There may be some, because this is a video

13   interview, where it is necessary to come in for context but you

14   and your client are entitled to a limiting instruction and you

15   should remind me, in the event I forget it, that the views of

16   Mr. Spivack and Mr. Adamczyk are utterly irrelevant and not to

17   be considered by you as evidence.  Their opinions or commentary

18   on the conduct is not part of this case and may not be

19   considered by you as evidence of anything.

20             So, I agree with you.  I have a similar reaction and

21   so the government has to cut it to the bone where they knock

22   off the commentary because there is opinions in there and

23   they're not relevant.

24             MS. GALLICCHIO:  And that was with respect to -- I

25   raise it with respect to another portion which was clip 11

K275briC                         conference

1    which doesn't have to do with the 404(b) but.

2              THE COURT:  Same point.  Same point.  I agree with

3    you.

4              Now, I have done a lot of talking, you have done a lot

5    of talking.  Is there anything else anybody wants to say with

6    regard to the government's motion *in limine*?  And then we will

7    talk about the defendant's evidence.

8              MR. LI:  Your Honor, are you including within that

9    question the motion *in limine* as to the expert?

10             THE COURT:  No.  Not really.  I wasn't really

11   considering that.  I was considering that more of a defendant

12   point but technically I guess it is in your *in limine*.  Exclude

13   that for the moment.

14             MR. LI:  Then nothing else for the moment, your Honor.

15             THE COURT:  Nothing else with regard to the statements

16   the government want to get in.  Is there anything further from

17   anybody about the statements the government wants to get in?

18             MS. GALLICCHIO:  No, your Honor.  I think we have

19   covered it.

20             THE COURT:  All right.  I don't know if this is

21   helpful or hurtful but there are different ways to go about

22   judging.  One is pretend that you haven't read the papers and

23   you haven't learned anything from the papers and just turn to

24   counsel and say, *What do you want to tell me?* and *What do you*

25   *want to tell me?* and we go back and forth and then I lay a

K275briC                      conference

ruling on you.  And I think sometimes lawyers like that better
but it's not as productive as my giving you a reaction and
you're trying to talk me out of it, which is what you are paid
to do, what your ethical obligation is to do.

          So, I have thought a lot about the testimony of
Dr. Cantor and I have read the January 28, 2020 letter several
times and Dr. Cantor says that he will testify about the
concept of age-play and he will also testify about the general
characteristics and behaviors of pedophiles and the opinion
that there is no relationship between engaging in age-play and
committing an illegal sex acts against a minor or desiring sex
with a minor.  And the important point under *Daubert* and *Kumho*
*Tire* and the Second Circuit's decision in the criminal context
which is *United States v. Williams*, 506 F.3d 151, it is with
opinions based on science and technology, there has to be a
reliable methodology that the Court looks to whether or not the
testimony is grounded on sufficient facts or data, the
testimony is product of reliable principles and methods, and
that the witness has applied the principles and methods
reliably to the facts of the case.  Other factors bearing on
reliability, whether a theory or technique has been or can be
tested, whether the theory or technique has been subjected to
peer review and publication, the techniques known or potential
rate of error and the existence and maintenance of standards
controlling the technique's operation and whether a particular

K275briC                       conference

1    technique or theory has gained general acceptance in the

2    relevant scientific community and those are not exclusive

3    factors.

4           It seems to me that testimony defining so-called

5    age-play is akin to what the prosecution often offers in cases

6    involving LCN or DTO -- LCN being La Cosa Nostra, DTO being

7    drug trafficking organizations -- where a witness takes the

8    stand and says, well, in my general experience this is what the

9    elements of a drug trafficking organization are, and this is

10   what a capo is, and this is what a soldier is, and this is what

11   an associate is, and this is what a consiglieri is, and this is

12   what an underboss is, and this is what a boss is.

13          So, I am inclined to allow Dr. Cantor to take the

14   stand and say there is something called age-based role play and

15   this is what age-based role play is.  However, I do not believe

16   that there is a basis for Dr. Cantor to offer opinions about

17   the characteristics of pedophiles, the likelihood that a

18   pedophile would engage in age-based role play or whether or not

19   the willingness to gauge in such role play is predictive or not

20   of whether somebody will engage in bad conduct.  And, listen, I

21   know and I believe that analogies are often times imperfect but

22   let's say someone is charged with committing a murder with a

23   .38 caliber weapon and a .38 caliber weapon is found in the

24   person's home.  And putting aside issues of ballistics but the

25   argument is most people who own .38 caliber weapons do not

1    murder people and, specifically, if you are the owner of a .38

2    caliber weapon and you go to a pistol range once a month, you

3    are a responsible gun owner and it makes it highly unlikely

4    that you would commit a murder.  That sort of evidence is most

5    emphatically inadmissible.

6            The nature of criminal conduct is, it is aberrational

7    relative to society at large and the fact that most people,

8    many people, 95 percent of all people, if he could opine to

9    this and there is no basis disclosed in the notice that the

10   defendant has, but if he could say that I have done a study and

11   95 percent of the people who engage in age-based role play

12   where they pretend to be engaging with a 7-year-old or a

13   4-year-old in sexual banter but in fact they're engaging with

14   an adult, most of these people are 96 percent unlikely to

15   commit a crime, that testimony wouldn't be admissible, most

16   likely, because the question before this jury is whether this

17   person did engage in a crime.  One could call a witness who

18   would say 99 percent of the population don't engage in this

19   crime.  99.9 percent of the U.S. population doesn't engage in

20   this sort of crime.  That testimony is not relevant to whether

21   this defendant committed this crime but Dr. Cantor isn't even

22   close to that because he does not disclose, and the defendant

23   has not disclosed, a reliable methodology.

24           So, the only point that his testimony will be allowed,

25   unless somebody wants to try and talk me out of this and that's

1  what I invited, is on the limited question of what is age-based

2  role play.

3          MS. BAHARANYI:  I would like to attempt to, your

4  Honor, talk you out of that.

5          THE COURT:  And I think the government is probably

6  going to try and talk me out of it too.  There you go.  Part of

7  it, at least.

8          MS. BAHARANYI:  Your Honor, I think I would like to

9  turn to a case that I think is particularly helpful here,

10  *United States v. Joseph*, which we cited in our papers.  It

11  addresses the issue of Dr. Cantor's qualifications and what he

12  can testify to.  He is not held to the same standard as those

13  who are experts in hard sciences, for example.  His expertise

14  is in human psychology, in human sexuality.  It is a social

15  science and *United States v. Joseph* addresses the standard that

16  applies to experts who are admitted or seek to be admitted on

17  the basis of some sort of expertise in social sciences just

18  like Dr. Cantor.  And there they said the question, whether --

19  excuse me.  Social science research theories and opinions

20  cannot have the exactness, the exactness of hard science

21  methodologies.

22          So, when we are talking about his ability to give an

23  opinion and to educate on this area of age-play as well as

24  pedophilia, this Second Circuit case is saying don't look to

25  whether he has the same sort of -- the same methodologies that

K275briC                        conference

1    we would expect in the scientific context, the hard science

2    context.  Look at the other parts of his qualifications that I

3    do think are laid out in his papers and his CV that was

4    provided to the government through the government's motion as

5    well.  He has extensive experience both treating and

6    interviewing people who engage in age-play who have alternative

7    sexual interests, age-play being one of them.  He has extensive

8    experience treating and engaging with individuals who have

9    pedophilia, which is a desire to have sex with children.  I

10   think his exponential experience in this area that is not quite

11   like chemistry, not quite like biology, but is this social

12   science makes him more than qualified to give a jury not just a

13   definition of things like age-play as well as pedophilia but to

14   opine, as well, on the relationship between the two.

15            The other part I would like to address --

16            THE COURT:  Well, now apply that to a social scientist

17   who has studied gun owners and murderers and he opines that a

18   gun owner who is careful enough to go to a pistol range on a

19   monthly basis to keep his skills up, who has gone to safety

20   training, is extremely unlikely to commit a murder.

21            Would you allow that if you were the Judge?

22            MS. BAHARANYI:  Your Honor, if there is some

23   documented sort of research of the psychology of gun owners and

24   we know this person who is this expert in gun owners, treats

25   them, interviews them, engages with them over the past 20 years

1    on a daily basis and has amassed this expertise that may not

2    be, you know, akin to what we see in another science but he has

3    amassed this expertise here from those interviews, that

4    experience, then I would say that might be possible.

5              THE COURT:  Spoken like a good defense counsel.

6              MS. BAHARANYI:  And that's what we have here.  He has

7    a tremendous amount of experience, again laid out more

8    thoroughly in the papers.  We are happy to provide additional

9    briefing on that as well, your Honor.

10             THE COURT:  I am going on the basis of your disclosure

11   and you have not disclosed a reliable methodology at all.  You

12   have disclosed a man's qualifications and experience but this

13   is not binary in the sense that does he have expertise?  Yes.

14   You are welcome to opine in any area you would like or, no, you

15   can't opine on anything, or you can't testify at all.  It

16   doesn't quite work like that.  In my opinion there has to be --

17   I just went through a moment ago, from *United States v.*

18   *Williams*, the Circuit went through many of the factor present

19   in the Daubert analysis in the context of a criminal case.

20             Okay, but you have another point so let me not stop

21   you there.

22             MS. BAHARANYI:  Your Honor, just briefly on that same

23   point before I move forward.  I do think that the Second

24   Circuit has established a different approach to sort of 702 and

25   the admissibility of expert testimony and a more liberal

1    approach than, perhaps, other circuits.  This is not a case

2    that we provided to the Court but I would like to give the cite

3    in case it is helpful.  This is in *Washington v. Kellwood*, it

4    is a district case out of this district, your Honor, the cite

5    is 105 F.Supp. 3d 293.

6              THE COURT:  Just one second, please.  Go ahead.

7              MS. BAHARANYI:  105 F.Supp. 3d 293, and I will point

8    you to a particular part of that case that I think is relevant.

9              THE COURT:  Magistrate Judge Dolinger.  Yes, I have

10   it.

11             MS. BAHARANYI:  Judge Dolinger, at 305, I think the

12   Court gives a good summary or explanation of what the standard

13   in the Circuit is that, in the Second Circuit, and I will

14   quote, the Second Circuit liberally construes expert

15   qualification requirements in consideration of the thrust of

16   the federal rules and their general relaxation of traditional

17   bearers to opinion testimony.

18             I think that, along with what we see in *Joseph* with an

19   expert who is qualified to testify, qualified to testify based

20   off of a similar subject matter, sort of role playing in the

21   Internet chat room whose qualifications are based, in part, on

22   his interviews with individuals and his clinical experience.  I

23   think we had something similar in this case that perhaps, under

24   a stringent 702 test, that expert in *Joseph* would not have been

25   able to or the Court would not have advised that he could

K275briC                    conference

testify.  But we are in this world of social sciences, we are

in this world where the Second Circuit says we sort of want to

encourage this sort of testimony and we are in this world where

we are asking for Mr. Bright to be able to present a defense,

as is his constitutional right, and I think the combination of

all of those factors means we have to be a bit more liberal

with how we view the qualifications of Dr. Cantor.  It doesn't

require much liberality because he is quite in fact very

thoroughly qualified and has tremendous experience, it is just

not the same that we see in certain other sciences.  And the

Second Circuit has recognized that that's okay.  Other

districts in the circuit -- other courts in the circuit have

recognized that that's okay.

          But for the second point, your Honor --

          THE COURT:  Yes.

          MS. BAHARANYI:  -- if I can address that?

          THE COURT:  Sure.

          MS. BAHARANYI:  Brief court's indulgence?

          THE COURT:  Go ahead.

          (Counsel conferring)

          MS. BAHARANYI:  I think the second point, your Honor,

goes to Dr. Cantor's ability to explain the typical practices,

the manners, the norms of individuals who actually engage in

sex with children or have a desire to engage in sex with

children.  I know your Honor has mentioned that that might be

K275briC                    conference

1    beyond what you would allow Dr. Cantor to testify to --

2              THE COURT:  No, I think I said that would be beyond

3    what I would allow him to testify to subject to hearing why I

4    shouldn't.  Not a might but I would not allow it.

5              MS. BAHARANYI:  That's why I would ask your Honor to

6    reconsider his 20 plus years of experience, research experience

7    as well, has been focused on the norms, the manners, the

8    behaviors of individuals who do in fact desire to have sex with

9    children.  The government has alleged that our client,

10   Mr. Bright, is an individual who wanted to have sex with a

11   7-year-old and 9-year-old when he showed up at a meeting with

12   an undercover last May.  That Dr. Cantor can provide an

13   explanation -- not an explanation, an education to the jury on

14   how those individuals typically behave, how they typically find

15   their victims, how they typically groom their victims.  It is

16   relevant here because the jury will hear from not just our

17   evidence but from the government's evidence that what

18   Mr. Bright was doing last May was very different.  I think that

19   this is the sort of --

20             THE COURT:  Well, is the government offering an

21   expert?

22             MR. LI:  We are not, your Honor.

23             THE COURT:  Okay.  Go ahead.

24             MS. BAHARANYI:  Through the government's evidence

25   through the post-arrest statements they intend to introduce,

K275briC                    conference

1    the conduct from the messages from the undercover they intend

2    to introduce.  The way in which Mr. Bright engaged,

3    communicated with the undercover, is not the way in which

4    someone who is actually desiring sex with children typically

5    engages or communicates.  And so that's something -- the expert

6    can give that education without opining on the ultimate

7    issue -- we will ensure that he steers clear of that -- but can

8    give the sort of background information the jury needs to hear

9    to be able to say whether this conduct, whether what the

10   government is alleging is Mr. Bright's conduct is really

11   consistent with that of someone who wants to have sex with

12   children, who has that intent to have sex with children.

13              THE COURT:  Thank you.

14              Let me hear from the government.

15              MR. LI:  Your Honor, if I can just begin with the

16   *Joseph* case that the defense has pointed us to?  I think the

17   difference between this case and the *Joseph* case is that the

18   Second Circuit was able to conduct at least a preliminary

19   Daubert analysis because it knew what the opinions were that

20   were being proffered and it knew what the bases were for those

21   opinions.

22              In the *Joseph* case the proposed expert was going to

23   testify about chat room practices which he had done studies on;

24   he a had done his Ph.D research on this area, proffered he had

25   done studies in this area, and the Court was able to say, well,

1   based on that experience that you have in this specific area of

2   chat room fetish exploration you can testify about this.

3          This is something totally different.  We do not know

4   from the notice what Dr. Cantor's opinions are about age play,

5   what is the defining characteristics of an age-player.  What

6   are the defining characteristics of a pedophile.  What is the

7   relationship, if any, between the two concepts.  We just don't

8   know from the notice much less the bases for those opinions.

9          I will add on this point, your Honor, that since the

10  filing of the papers the government has tried to figure out

11  what Dr. Cantor might say by looking at the literature in the

12  CV that the defendant gave us and also looking at the

13  Dr. Cantor's website.  We have not been able to find any

14  research, published research, that he has put out there on

15  age-play.  As far as we can tell, the thrust of his research

16  seems to be on the biological characteristics of pedophiles.

17  So, he studies pedophiles; he puts them in MRI machines, he has

18  been able to do correlation analyses that correlate pedophilia

19  with brain matter, with left-handedness, with IQ, with height.

20  This is not the kind of characteristics of a pedophile, I

21  think, that the defense is going to be trying to offer and

22  certainly that kind of characteristic, that kind of biological

23  characteristic would not be relevant to this case.

24         So, I think for purposes of this Court's analysis

25  which is the Daubert analysis, there is really nothing to go

K275briC                        conference

1     off of.  We don't know what the expert's opinions are and we

2     don't know what the bases are and it is the proponent of expert

3     testimony's burden to show the Court that expert evidence is

4     admissible and we don't believe the defense has met that burden

5     here.

6              THE COURT:  Thank you.  I adhere to my proposed

7     ruling.

8              There remains the question of voir dire.  Let me say

9     that attorneys are welcome and will be welcome at this trial to

10    propose areas of further follow-up.  Everyone has had the

11    opportunity to submit proposed voir dire to the Court and the

12    Court is taking that into account, in framing its questions of

13    jurors, but the proposal, which quite precisely is giving the

14    government and giving the defense a 30-minute blank check to

15    conduct voir dire, of course with the opportunity of either

16    side to jump up and say, *Your Honor, that's an outrageous*

17    *question to ask.  You should strike it.  It's irrelevant*.  Etc.

18    is, in a case like this, a recipe for disaster and the oddity

19    of this is that, what persuades me of this is something that

20    defense counsel wrote and wrote quite well and eloquently and

21    with which I agree:  *This case presents a number of sensitive*

22    *issues which require careful and precise juror questioning to*

23    *uncover biases and prejudices.  Undoubtedly, many prospective*

24    *jurors will have strong feelings about the charge in this case.*

25    *Without careful questioning which is informed by a thorough and*

1    *specific knowledge of the facts of the case, these biases may*

2    *well remain undetected.*

3              It is precisely for the reasons, therein, that I am

4    disinclined to have attorney-conducted voir dire on the basis

5    of you have 30 minutes, try not to ask any objectionable

6    questions and we will see how it goes.  So, I'm not going to do

7    that.  I will do my best to interview the jury.  Jurors who

8    have affirmative responses will come to the side bar, we will

9    talk about it.  I often will have the juror stand back and then

10   have some interaction with counsel to see if there is any

11   follow-up or what their positions are based on the responses

12   given.  My experience is the jurors will speak and I will get

13   them to speak and the question is whether what they have said

14   indicates that they can be a fair and impartial juror and fair

15   to both sides or they can't, based on what they've said.

16             So, that's where I am on that.

17             I have indicated that we are going to start the trial

18   on Tuesday morning because of the funeral service for Judge

19   Batts and --

20             MS. GALLICCHIO:  Your Honor?

21             THE COURT:  Yes.  Go ahead.

22             MS. GALLICCHIO:  I'm sorry.  I think one issue is

23   remaining and that was the defense 404(b).

24             THE COURT:  Oh.  You are so right.  You are so right.

25             MS. GALLICCHIO:  I hate to skip that, but.

1          THE COURT:  No.  No.  No.  We should not skip that.

2     We should not skip that at all.  I am getting ahead of myself

3     and you are quite right.

4          So, the defense has tendered a number of transcripts

5     or partial transcripts which they say indicate a desire or

6     intent to engage in age-based role play with an older person.

7     My review of the transcripts, at least as far as I could tell,

8     that was explicit in one of the transcripts but not in all of

9     them.

10         Let me hear the government's view on whether I should

11    allow that evidence in and, if not, why not.

12         MR. LI:  Your Honor, our view is that this is not

13    probative of the defendant's intent in this case.  The

14    government does not contest, there is no dispute that the

15    defendant has an interest in age-play.  Frankly, from our

16    perspective, we don't care.  The question is not whether he was

17    engaged in age-play on some other occasions or whether he is

18    interested in age-play in general.  The question is simply

19    whether he intended, in this particular instance, to actually

20    entice minors for sexual activity or as the defense as I

21    understand it will argue, that in fact he was actually trying

22    to engage in sexual activities with adults pretending to be

23    children.

24         THE COURT:  One moment, please.

25         (pause)

1       THE COURT:  Go ahead.

2       MR. LI:  So in our view, the fact that he may have, on

3  five occasions or a hundred occasions previously engaged in

4  consenting age role-play with adults does not bear on the

5  question at all of whether he, on this particular occasion,

6  intended to entice a child for sexual activity.  It seems

7  simply like all the other prior good act evidence that a

8  defendant could offer, in any criminal case, that on other

9  prior occasions that defendant did not engage in criminal

10  activity to prove that on this occasion they did not engage in

11  criminal activity, it is propensity evidence pure and simple.

12       THE COURT:  Let me hear from the defense.

13       MS. GALLICCHIO:  Yes, thank you.

14       We are not offering this as character evidence as we

15  have outlined in our papers, your Honor.

16       THE COURT:  Well, because if it was character evidence

17  it would be inadmissible so are you not offering it for that.

18  I know that.

19       MS. GALLICCHIO:  Right, but it's other acts which are

20  relevant to the issue of intent and motive just like the

21  government's 404(b).  I know it is unusual for the defense to

22  seek to offer it but it is -- the rule does not preclude the

23  defense from offering prior acts on the issue of intent.

24       THE COURT:  I agree with you.  Just so the record is

25  clear, I do not see a limitation in Rule 404(b) and there is at

K275briC                    conference

1    least one case in which a defendant has done so or sought to do

2    so relating to 404(b) evidence relating to a co-conspirator.

3    So, on that point, I'm not seeing a limitation in the Rule that

4    would foreclose you from offering it.

5              MS. GALLICCHIO:  Right.

6              So, with respect to -- we are not offering this

7    evidence I think that the government was objecting to.  We are

8    not saying that on a prior occasion in which he had an

9    opportunity, he was in a situation where he could have

10   committed a crime against a minor and didn't.  That's prior

11   good acts.  Right?  He was in a scenario -- with some of the

12   cases, the *Scarpa* case had that scenario; the *Benedetto* case as

13   well discusses where, on prior occasions, the defendant did not

14   engage in criminal activity under any circumstances in which he

15   could have.  This is different.  That's character, this is

16   different.

17             We are not saying only these five instances here but

18   we just selected a small sampling of his history of age-play

19   that it goes to just like prior bad acts go to intent, this

20   also addresses intent or motive in this case because it is our

21   theory of the case, your Honor, that he intended to engage in

22   age-play, that he intended to communicate with this undercover

23   officer to have a sexual encounter.

24             THE COURT:  But this is where one of the parts where

25   your proffer starts to fall apart, in my view.

1          So, this is not a criminal charge of directly

2    interacting with two young people.  This was a situation where

3    the trial evidence will be that the defendant interacted with

4    an adult and at no time did the adult indicate that the adult

5    planned to impersonate any child.  That was never, from what I

6    understand the evidence, that will not come out that the

7    special agent impersonating the mother claimed that she was

8    going to put on some role play impersonating a 7-year-old and a

9    4-year-old.  That's very different than what we are dealing

10   with here.

11          MS. GALLICCHIO:  Well, what she was proposing is that

12   she would have her companions; she would be the mother figure

13   of her companions who would play the role of her children.

14          THE COURT:  Well, I tell you what.  If that's the way

15   the testimony comes out then at the close of the government's

16   case you will point to that evidence and I will consider this

17   issue but you may not bring it out in opening or refer to these

18   transcripts in questioning of witnesses.

19          MS. GALLICCHIO:  So, just some clarification, Judge.

20          I understand from the government that they have no

21   objection and I guess I need to know the Court's ruling, of

22   course, whether witnesses can testify.  We can question

23   witnesses about the fact that one, they, for example, for the

24   agent, they searched his phone, they saw that he has a history

25   of engaging in age-play, or if Mr. Bright testifies he can

K275briC                        conference

1     testify to the fact that, *I engaged in age-play, I'm an age*
2     *player.*

3            THE COURT:  I am absolutely going to allow that.  I am
4     absolutely going to allow that.  That is different in kind and
5     character than I think what you are proposing and it may be, if
6     that testimony comes in, it may influence a ruling on your
7     seeking to get these transcripts in but we are not up to that
8     at this stage of the game.

9            MS. GALLICCHIO:  Okay.  I think, just to be clear, I
10    wasn't -- I'm not suggesting that the agent -- the agent is not
11    going to say I was role-playing, of course.  My client believed
12    in his mind, it was his state of mind that she was engaging --
13    she and her friends would be engaging in role-playing.  She was
14    role-playing, her friends were age-playing, and so he believed
15    that's who he was communicating with.

16           THE COURT:  He can definitely take -- nothing I am
17    saying implies in any way, shape, or form that I would preclude
18    him from so testifying.  And then it may be that I will also
19    allow in these transcripts, but on the record as it stands now
20    this is, in my view, akin to what we have seen in some cases
21    where fraudulent intent is an issue and the claim is that with
22    knowledge of falsity, a person prepared multiple asylum
23    applications.  And to rebut that evidence and contention of
24    intent, they offered evidence of the many occasions in which
25    they prepared asylum applications that were 100 percent

K275briC                        conference

1    truthful and accurate.  And that evidence is not admissible.

2    It is, actually, I don't consider it character evidence but I

3    consider it propensity evidence; that it's more of a propensity

4    to do the right thing on other occasions.  The fact that a

5    defendant has engaged in conduct that is not unlawful on other

6    occasions does not speak to whether or not the conduct he

7    engaged in on this occasion was lawful or not.  And I see a big

8    difference between this evidence and the evidence the

9    government is offering because it really is through the lens of

10   evidence that is otherwise coming in.  The evidence of the

11   conversations with the agent are coming in and this sheds light

12   on that and I don't see where the transcripts of your client

13   engaging in age-related role play does because there was no one

14   here who was, at least so far as the transcripts or least so

15   far as I understand the evidence, will come out that they were

16   proposing to impersonate children.

17          Now, if that evidence comes out, I may change my

18   inclination.

19          MS. GALLICCHIO:  No.  I don't expect that the agent

20   will say -- well, I don't know.  The agent is not going to say

21   she intended to impersonate but it is what my client believed,

22   it is what his mental state was.

23          THE COURT:  Well, he is allowed to take the stand and

24   testify to his mental state.  I think that's perfectly his

25   right.

K275briC                          conference

1          MS. GALLICCHIO:  Right.  And he actually also, it is

2     clear in his statement to the police and his recorded

3     interrogation statement he does give that defense which will

4     come out in the government's case-in-chief.  I intend largely,

5     my expectation is, or our hope would be, through his testimony

6     we would offer it.

7          So, I understand the Court's ruling that you are, at

8     this point, denying it, but I would like him to be able to --

9     and I see the government not objecting -- to be able to testify

10    that he has engaged in age-play before and give examples,

11    through testimony, without using the transcript and tell the

12    Court, unless and until the Court allows it.

13         THE COURT:  Right.  That, offhand, I believe you are

14    entitled to do that.

15         Any objection from the government?

16         MR. LI:  No objection, your Honor.

17         THE COURT:  Okay.  So, I will see you -- I would like

18    you to get here at 9:30 on Tuesday morning.  I don't know how

19    long we are going to wait for jurors, but if there are any last

20    minute issues we can take them up.

21         The schedule of the trial will be from 10:00 to 1:00,

22    an hour off for lunch, 2:00 to 5:00.  If it gets to be 10

23    minutes to 5:00, call your next witness.  If you don't have a

24    witness, reserve the right to conclude that you are resting

25    your case.  And the reason I do this is because I am focused on

K275briC                      conference

1    the jury and the sacrifice that our jurors make in serving and

2    it is important that I work hard and the lawyers work hard in

3    using the jurors' time judiciously.

4            I will just say this week on Monday I had to wait for

5    civil jurors.  I didn't get my jurors up into the courtroom

6    until 11:00 and we had a trial in which there were, I think,

7    five witnesses.  We had openings, the five witnesses, closings,

8    and the Court's instructions, and it was in the hands of the

9    jury by 4:00 p.m. the second day.

10           So, criminal cases are a little different; the voir

11   dire takes longer but that's what I anticipate here.

12           How long is the government's direct case going to

13   take?

14           MR. LI:  Your Honor, we anticipate calling four

15   witnesses; two will be very, very short witnesses.  My guess is

16   we will finish -- setting aside cross-examination -- but the

17   government's case will probably be done within a day.

18           THE COURT:  Okay.  All right.  I think I excluded time

19   through Monday.  Anybody want to exclude time through Tuesday?

20           MR. LI:  Your Honor, we will make the motion.

21           The government respectfully asks the Court to exclude

22   time until Tuesday in the interest of justice for the parties

23   to prepare for trial.

24           THE COURT:  Any objection?

25           MS. GALLICCHIO:  No, your Honor.

1          THE COURT:  Okay.  I find that the ends of justice

2    will be served by granting a continuance until Tuesday,

3    February 11th, and the need for the continuance outweighs the

4    best interest of the public and the defendant in a speedy

5    trial.

6          The reasons for my finding are that the time is needed

7    to enable the Court to honor his good friend, the Honorable

8    Deborah Batts, who served this Court for 25 years and gave this

9    Judge a lot of joy in life.

10          So, that's the reason.

11          MS. GALLICCHIO:  Absolutely, your Honor.

12          THE COURT:  So, time is included until Tuesday

13    morning.

14          Anything else?

15          MR. LI:  Nothing from the government, your Honor.

16          MS. GALLICCHIO:  I'm sorry, Judge, just with regard to

17    scheduling.  Can I just get a -- we are flying in Dr. Cantor

18    from Canada so I expect that -- I know.

19          THE COURT:  You will have to talk to the government on

20    that.  You will have to see how Tuesday goes.  You can also

21    talk to the government about the possibility of his testifying

22    out of order if there is a jam.  Such things have happened

23    before and usually counsel on either side are reasonable about

24    such things.

25          MS. GALLICCHIO:  Very well.

K275briC                        conference

1           THE COURT:  All right.  Have a very, very pleasant

2    weekend and see you on Tuesday morning.

3           MS. GALLICCHIO:  You as well.

4           MR. LI:  Thank you, your Honor.

5                         o0o

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25