K3GKBRI1

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                         19 CR 521 (PKC)

5   PETER BRIGHT,

6              Defendant.
                                          Trial
7   ------------------------------x

8                                         New York, N.Y.
                                          March 16, 2020
9                                         10:55 a.m.

10  Before:

11
                          HON. P. KEVIN CASTEL,
12
                                          District Judge
13                                        -and a Jury-

14                        APPEARANCES

15  GEOFFREY S. BERMAN
         United States Attorney for the
16       Southern District of New York
    BY:  MICHAEL D. MAIMIN
17       ALEXANDER LI
         Assistant United States Attorneys
18
    DAVID E. PATTON
19       Federal Defenders of New York, Inc.
         Attorney for Defendant
20  BY:  AMY GALLICCHIO
         ZAWADI S. BAHARANYI
21       Assistant Federal Defenders

22  Also Present:
    Elizabeth Jensen, FBI
23  Ariella Fetman, Government Paralegal
    Alondra Reyes, Defense Paralegal

24

25

K3GKBRI1

1          (In open court; jury not present)

2          THE COURT:  Good morning.

3          COUNSEL:  Good morning.

4          THE COURT:  I thought it would be a good idea to move

5  us to this larger courtroom, with a much larger jury room,

6  which will make things more comfortable for our jurors.

7          We have 11 jurors with us.  There was a phone message

8  left on the chambers' voicemail from Juror No. 3, who is the

9  foreperson.  He sought medical attention because he was feeling

10  unwell, left his phone number, by the way, and I spoke to him

11  this morning.  He sounded good on the phone but is unable to

12  come to court.  He has not received any medical diagnosis but

13  has been tested for multiple conditions.  One of the tests is

14  for COVID-19.  He has promised me that he will call me when he

15  gets the results of that test so that I can tell my jurors.

16          Rule 23(b)(3) provides as follows:  After the jury has

17  retired to deliberate, the Court may permit a jury of 11

18  persons to return a verdict, even without a stipulation by the

19  parties, if the Court finds good cause to excuse the juror.

20          Here, I find that there is good cause to excuse the

21  juror because of the juror's medical condition, and propose to

22  tell the jury that they may continue their deliberation with

23  the selection of a new foreperson.

24          Any objection from the government?

25          MR. MAIMIN:  No objection.  I think that's more

K3GKBRI1

1  efficient than pulling back an alternate at this point.

2         THE COURT:  Any objection from the defendant?

3         MS. GALLICCHIO:  Your Honor, we need to speak with

4  Mr. Bright about this for a few minutes?

5         THE COURT:  Sure.

6         (Defendant and counsel confer)

7         MS. GALLICCHIO:  Your Honor, thank you.  We have

8  consulted with Mr. Bright, and our first request would be that

9  the Court call an alternate in.  The jurors have only been

10  deliberating, I think, for a short period of time, so I think

11  it would be certainly reasonable and feasible for a juror to be

12  substituted at this point.

13         THE COURT:  And what's your second request?

14         MS. GALLICCHIO:  Short of that, your Honor, we would

15  object to proceeding with 11 and would --

16         THE COURT:  Okay.

17         MS. GALLICCHIO:  -- move for a mistrial.

18         THE COURT:  And the basis for the objection?

19         MS. GALLICCHIO:  Well, after consultation with our

20  client, we would prefer -- we would request to have a 12-person

21  jury.

22         THE COURT:  No, I understand that, but I was inquiring

23  whether there was a basis for the objection to the 11.  That's

24  all I was inquiring.

25         MS. GALLICCHIO:  Yes.  Only that he's entitled to a

1    12-person juror, and that's what we request.

2              THE COURT:  Okay, all right.

3              Rule 24 provides, at (c)(3), that the Court may retain

4    alternate jurors after the jury retires to deliberate.  The

5    Court must ensure that a retained alternate does not discuss

6    the case with anyone until that alternate replaces a juror or

7    is discharged.  If an alternate replaces a juror after

8    deliberations have begun, the Court must instruct the jury

9    begin its deliberations anew.

10             The reality is, under Rule 23(b)(3), the defendant is

11   not entitled to have 12 jurors deliberate to a verdict --

12   that's the law -- if there is good cause to excuse a juror once

13   deliberations have begun.  The reason that permitting the jury

14   to proceed under 23(b)(3) is superior to having them proceed

15   under 24(c)(3) is as follows:

16             Number one, the jury would have to be sent home; they

17   could not deliberate today.

18             Number two, the Court would have to inquire of the

19   alternate juror or jurors -- I'd probably have to bring back

20   multiple ones -- to ensure that the retained alternate has not

21   discussed the case with anyone.

22             And number three, when replacing with the alternate

23   juror, the Court must instruct the jury to begin deliberations

24   anew.

25             I find that it is a poor alternative to the procedure

K3GKBRI1

1    permitted under 12(b)(3), or a less optimal alternative, and

2    that's why I proceed as I do.

3             If you'll kindly bring in our jurors.

4             (Jury present)

5             THE COURT:  Please be seated.

6             Good morning, ladies and gentlemen.  This is what we,

7    in the legal profession, call a change of venue.

8             It's good to see you, and I have arranged for us to be

9    in this beautiful large courtroom, with a beautiful, large jury

10   room.  The reason for the move is, it's more spacious, and I

11   thought you would be more comfortable in this more spacious

12   surrounding.

13            This morning, I spoke to your foreperson, Juror No. 3.

14   Wisely, when he was not feeling well, he went for medical

15   attention.  He sounded good on the phone when I spoke to him

16   this morning but is unable to come to court.  He has not

17   received any diagnosis but has received multiple tests.  One of

18   the tests is for COVID-19.  He has promised me that he will

19   call me when he gets the results of that test so that I can

20   tell you.  We will tell you, whether you're still deliberating

21   or you're home, you're done and you're home.  Either which way,

22   we're going to call you just so you know.

23            Now, when a juror is excused for good cause, the Court

24   may allow the remaining 11 jurors to deliberate to verdict.  I

25   find that there is good cause to discharge Juror No. 3 because

K3GKBRI2

1  of what he reported to me on the phone.  So you may all

2  continue deliberating towards a unanimous verdict.

3          Because the juror who is excused was the foreperson,

4  it will be necessary for you to select a foreperson.

5          With that said, ladies and gentlemen, you may return

6  to the jury room.

7          Thank you.

8          (Jury not present)

9          THE COURT:  Anything further?

10          MR. MAIMIN:  No, your Honor.

11          THE COURT:  All right.

12          We are adjourned.

13          MR. MAIMIN:  Thank you.

14          (Recess pending verdict)

15          THE COURT:  I have a note from the jury, which

16  reads -- it was received at 12:36 -- "We request to review

17  Government Exhibits 6 and 9 with associated transcripts, GX 6T

18  and GX 9T.

19          "2.  We request clarification on whether the FBI

20  examined the contents of the defendant's iPhone and personal

21  computer 2A.  If not, why not?"

22          It doesn't happened to be signed.  Have you actually

23  seen the physical note?

24          MS. BAHARANYI:  Your Honor, we have.

25          MR. LI:  We have, your Honor.

K3GKBRI2

1          THE COURT:  Okay.  That's wonderful.  And it's marked

2     as Court Exhibit 7.

3          So, the government has 6 and 9 and the transcripts

4     keyed up?

5          MR. LI:  Yes, your Honor, we're prepared to play

6     those.

7          Just as a point of clarification, for Government

8     Exhibit 6, there is one clip which is, essentially, the

9     entirety of the audio recording.  It's about 50 minutes.  We

10    did not play that for the jury, but we did include it in the

11    evidence.  We have spoken with the defendant, and our

12    interpretation of the jury note is that they don't want that

13    50-minute clip played, they want the clips played that were

14    actually played in the course of the presentations.

15         THE COURT:  Is that correct?

16         MS. BAHARANYI:  That's correct, your Honor, that's our

17    understanding.

18         THE COURT:  Okay.  That's fine.  That's what we'll do.

19         What is the government's proposed response to question

20    2 and 2A?

21         MR. LI:  Your Honor, our reading of the note is that

22    the jury is looking for the relevant portions of the transcript

23    to be read back.  We are happy to prepare those in consultation

24    with the defense.

25         THE COURT:  And that has not been done yet?

1          MR. LI:  It has not, your Honor, not yet.

2          THE COURT:  All right.  Well -- yes, go ahead.

3          MS. BAHARANYI:  Your Honor, our understanding from the

4     note -- what we think the note probably calls for at this time

5     is asking the jury to rely on the evidence that -- their own

6     recollection of the evidence that was actually put in at trial.

7     If they have a follow-up question about specific parts of the

8     transcript, we're happy to consult with the government about

9     that, but, at this point, their question is ambiguous enough

10    that I think we need some more clarification from them about

11    what it is that they are looking for.  If it is just a matter

12    of, you know -- it might be simply answered by telling them

13    their recollection of the evidence is what controls.

14         THE COURT:  Well, when they ask for clarification, we,

15    as lawyers, might give it a slightly different meaning than a

16    juror would, but they say, "We request clarification on whether

17    the FBI examined the contents of the defendant's iPhone and

18    personal computer."  I read that to mean:  We want to know

19    whether the FBI examined the contents of the defendant's iPhone

20    and personal computer; if not, why not?  Well, I think we can

21    all agree that "if not, why not?" doesn't get answered unless

22    there was testimony about it.

23         MS. BAHARANYI:  Right.

24         THE COURT:  And whether it was examined or not could

25    be answered in a note, but is best answered, in my view, by the

K3GKBRI2

1    reading of the transcript.

2              MS. BAHARANYI:  Your Honor, and I think we agree, that

3    if it is the transcript that they need then we can consult with

4    the government about that.  It's just not clear, especially for

5    2A, that at this time they're looking for a reading -- at this

6    time, I think there's some uncertainty about what it is they're

7    asking for.

8              THE COURT:  Listen to me.  What I'm saying is, 2A can

9    be answered other than through the words of the transcript.  So

10   you can answer the question whether the FBI examined the

11   content of the defendant's iPhone and personal computer.  The

12   problem with answering it is that the answer -- and correct me

13   if I am wrong -- some they did, some they didn't, one iPhone

14   they did, another iPhone they didn't.  I think that may even be

15   true as to one of the hard drives, the homemade computer they

16   didn't.  So we could craft an answer that captures all of that,

17   but we could also be led into a debate about the meaning of the

18   words.  I invite you right now to craft the answer.  Go ahead,

19   craft it.

20             MS. BAHARANYI:  No, we're not asking to craft the

21   answer, your Honor.

22             THE COURT:  No, well, I'm asking you to craft the

23   answer because the question, as I read it -- "We request

24   clarification on whether the FBI examined the contents of the

25   defendant's iPhone and personal computer," this is my

K3GKBRI2

```
1    construction of the note -- I take to mean:  Did the FBI
2    examine the contents of defendant's iPhone and personal
3    computer?  And, if not, why not?  And what I'm saying to you
4    is, one way to answer that is by composing words.  I'm open to
5    that.  Another way to answer that is to give them the
6    transcript, so then there is no debate over what words we tell
7    them.
8               MS. BAHARANYI:  We would prefer the transcript, your
9    Honor.
10              THE COURT:  That sounds great.  I gather the
11   government does as well.
12              So let's see whether we can get that under way.  You
13   all have your transcripts, I assume?
14              MR. LI:  Yes, your Honor.
15              THE COURT:  Okay.
16              In the meantime, why don't I bring the jury in for
17   number 1.  Is that acceptable?
18              MS. BAHARANYI:  Yes, your Honor.  Thank you.
19              THE COURT:  Okay.
20              (Jury present)
21              THE COURT:  Please be seated.
22              Ladies and gentlemen, we have your note.  Will the
23   foreperson please identify themselves?
24              All right.  And you are Juror No.?
25              THE FOREPERSON:  5.
```

K3GKBRI2

1          THE COURT:  5?

2          So, just sign your notes, and that will be fine, but

3    we have it, and the first question is, "We request to review

4    Government Exhibits 6 and 9 with associated transcripts, GX 6T

5    and GX 9T," which we'll do right now in court.  And we take

6    that to mean the portions that were played in open court.  If

7    you intended something else, you'll let us know.

8          With regard to the second question, "We request

9    clarification on whether the FBI examined the contents of the

10   defendant's iPhone and personal computer," which I take to

11   mean:  Did the FBI examine the contents of defendant's iPhone

12   and personal computer?  If I'm wrong about how I'm reading it,

13   you'll let me know in another note.

14         And then 2A is, "If not, why not?"  We are working on

15   the response to 2 and 2A, but we'll proceed with the first

16   inquiry.

17         So, whenever the government is ready, you can play it.

18         (Audio playback)

19         THE COURT:  All right, ladies and gentlemen.  That

20   completes playing the tape.

21         MR. LI:  Your Honor, there's a second video,

22   Government Exhibit 9.

23         THE COURT:  Oh, I'm sorry.  Go ahead.

24         (Audio playback)

25         THE COURT:  Does that complete the exhibit?

K3GKBRI2

1          MR. LI:  It does, your Honor.

2          THE COURT:  All right.

3          Ladies and gentlemen, we'll work on 2 and 2A.  You may

4     return to the jury room to complete your deliberations.  Thank

5     you.

6          (Recess pending verdict)

7          THE COURT:  And you'll let us know when you're done.

8          MS. GALLICCHIO:  I think we're ready.  The government

9     proposed some excerpts to us, and we agree.

10         MR. LI:  Oh, okay.  That makes it easy.

11         THE COURT:  What are the excerpts?  Do you have them

12    there?  My deputy can make a copy.

13         MR. LI:  Your Honor, we'll pass it to your deputy.

14         THE COURT:  Yes.  Do you have the transcript there?

15         MR. LI:  We have the actual transcript as well, your

16    Honor.

17         MR. MAIMIN:  We do not have the hard copy for the very

18    last excerpt because I only printed out the transcript of

19    Tuesday.  We can display it.  I think you have a copy of the

20    hard copy -- I can run down and print those pages out as well.

21         THE DEPUTY CLERK:  What date?

22         MR. MAIMIN:  The last one, 400-something from Friday.

23         THE COURT:  Do we have the transcript?

24         It's in the courtroom.  Why don't you run down and get

25    the transcripts through Friday.

K3GKBRI2

1          THE LAW CLERK:  Sure.

2          THE COURT:  Are there any incomplete pages?

3          MR. MAIMIN:  Some of them will be portions of pages,

4     but we set forth what lines to start and end on, on those.

5          THE COURT:  All right.  Well, maybe somebody has a

6     marker, black marker, and we can --

7          MR. LI:  Yes, we'll mark that up, your Honor.

8          MR. MAIMIN:  Is your Honor going to give it to the

9     jury?

10         THE COURT:  That's what I propose to do.

11         MR. MAIMIN:  Oh, okay.

12         THE COURT:  Any objection?

13         MR. MAIMIN:  If your Honor wants do that, I can print

14    out a redacted version of exactly that.  It will take me five

15    minutes.

16         THE COURT:  Why don't you do that.

17         MR. MAIMIN:  I'll be back in five minutes, your Honor.

18         THE COURT:  Thank you.

19         All right.  We are in recess.  Thank you.

20         (Recess)

21         THE COURT:  I have received Court Exhibit 8, which has

22    excerpts from pages 84, 113, 192, 193, 196, 253, 254, 479 of

23    the transcript.

24         Has each side reviewed Court Exhibit 8?

25         MR. LI:  Yes, your Honor.

K3GKBRI3

1          MS. GALLICCHIO:  Yes, your Honor.

2          THE COURT:  Any objection?

3          MR. LI:  No objection, your Honor.

4          MS. GALLICCHIO:  No objection.

5          THE COURT:  All right.

6          Court Exhibit 8 can be given to the deputy marshal to

7     be handed to the jurors, Madam Deputy.

8          THE DEPUTY CLERK:  Okay.  All of them?

9          THE COURT:  Yes.

10         All right.  We are adjourned.  Thank you, all, very

11    much.

12         MR. MAIMIN:  Thank you, your Honor.

13         (Recess pending verdict)

14         THE COURT:  I have a note, signed by Juror No. 5, at

15    4:10 p.m.  It's been marked as Court Exhibit 9, and it reads:

16    "We have reached a verdict."

17         I also have an envelope from the jury, which purports

18    to be the verdict.

19         Please bring our jurors in.  Please stand for the

20    jury.

21         (Jury present)

22         THE COURT:  Please be seated.

23         Madam Foreperson, I understand the jury has reached a

24    verdict?

25         THE FOREPERSON:  We have.

K3GKBRI3

1          THE COURT:  And it's in this envelope.

2          THE FOREPERSON:  Yes, sir.

3          THE COURT:  And is it unanimous?

4          THE FOREPERSON:  Yes, it is.

5          THE COURT:  Is it signed and dated by you as

6     foreperson?

7          THE FOREPERSON:  Not very legibly, but yes.

8          THE COURT:  Okay.  Thank you.

9          I'm going to direct the deputy to mark it as Court

10    Exhibit 10, and return it to the foreperson, and take the

11    verdict, if you will, please.

12         Madam Foreperson, if you would please stand.

13         THE DEPUTY CLERK:  As to Count One, how do you find

14    the defendant?  Guilty or not guilty?

15         THE FOREPERSON:  Guilty.

16         THE COURT:  All right.  Please retrieve the verdict

17    sheet.

18         And, Madam Deputy, if you would kindly poll the jury.

19         THE DEPUTY CLERK:  Juror No. 1, is that your verdict?

20         JUROR:  Yes.

21         THE DEPUTY CLERK:  Juror No. 2, is that your verdict?

22         JUROR:  Yes.

23         THE DEPUTY CLERK:  Juror No. 4, is that your verdict?

24         JUROR:  Yes.

25         THE DEPUTY CLERK:  Juror No. 5, is that your verdict?

K3GKBRI3

1              JUROR:  Yes.

2              THE DEPUTY CLERK:  Juror No. 6, is that your verdict?

3              JUROR:  Yes.

4              THE DEPUTY CLERK:  Juror No. 7, is that your verdict?

5              JUROR:  Yes.

6              THE DEPUTY CLERK:  Juror No. 8, is that your verdict?

7              JUROR:  Yes.

8              THE DEPUTY CLERK:  Juror No. 9, is that your verdict?

9              JUROR:  Yes.

10             THE DEPUTY CLERK:  Juror No. 10?

11             JUROR:  Yes.

12             THE DEPUTY CLERK:  Juror No. 11?

13             JUROR:  Yes.

14             THE DEPUTY CLERK:  Juror No. 12?

15             JUROR:  Yes.

16             THE DEPUTY CLERK:  The jury has been polled.

17             THE COURT:  Any objection to my discharging the jury?

18             MR. LI:  No, your Honor.

19             MS. GALLICCHIO:  No, your Honor.

20             THE COURT:  Ladies and gentlemen, what I'm about to

21     say to you is exactly what I would say to you even if your

22     verdict were very different than the one you have returned in

23     this case:  I am in awe of you.  I'm in awe of your service.

24     It's something that you can be proud of for the rest of your

25     days, because when you were summoned, you came and you served.

K3GKBRI3

1   You could have ducked out, you could have deferred, you could

2   have said, I can't come during a national emergency, and it

3   would have been understandable, but you didn't.

4          Not only you, but Juror No. 3, who's not here, and the

5   six alternates, came every day of the trial, without complaint,

6   on time, listened carefully to the evidence, not because you

7   came here to do me a favor; you didn't come here to do the

8   government a favor, nor did you come here to do the defendant a

9   favor - you came here because this is one of the highest calls

10   of American citizenship.  It's one of the most direct ways that

11   a citizen can participate in governance.

12          You did this, and, as the years go by, I hope you can

13   look back and be very proud of this chapter in your life.

14   There was a judge who used to sit on this court -- his name was

15   Edward Weinfeld -- and he had an unusual custom; he would not

16   thank jurors for their service because he felt that cheapened

17   what they had done, because it wasn't a favor to anyone.

18          I want you to think with me what it would be like if

19   we had a system where men and women who wore black robes

20   decided the credibility of the witnesses and the guilt or

21   innocence of the defendant.  I know, from my own experience,

22   that these men and women would be very sincere and would do

23   their honest best.  And, doing their honest best, there would

24   always be a question in someone's mind:  Who appointed this

25   person?  Where did they come from?  Are they looking for some

K3GKBRI3

1    sort of a promotion?  Who are they afraid of?  Who are they

2    trying to curry favor with?  That would be a doubt that would

3    linger in someone's mind.

4          But when jurors, from all walks of life, people who

5    would never have met one another in their ordinary lives, come

6    together and act as one in reaching a unanimous verdict, that's

7    as close as we're going to get to a pure form of justice in

8    this very infallible world that we live in.  As I say,

9    regrettably, we can't get 12 people to agree on a pizza

10   topping, but you, as a jury, came to a unanimous verdict.  So,

11   I want to leave you with a couple of thoughts.

12         First of all -- and I said this to you once before,

13   I'm going to repeat it -- I don't want you ever to be mean to

14   anyone, but we're going to get past this national state of

15   emergency, and we'll be having barbecues and cookouts, maybe

16   it's not going to be the 4th of July, maybe it will be Labor

17   Day, I don't know, I don't have a crystal ball and neither does

18   anybody else, but it will happen.  Good days are ahead.  And

19   when those good days come and you run into somebody who you

20   care about -- a sister, a brother, a cousin, a neighbor -- and

21   they tell you how they plan to evade jury service or how they

22   did do it, don't be mean, but let them know that you don't find

23   that one bit funny because you know how important jury service

24   is, how difficult it is, how critical it is, to a civilized

25   society.  Don't ever forget that message.

K3GKBRI3

1          Secondly, if we should ever encounter one another in

2     the future, I'll hope you do me the favor of reminding me where

3     we first met.

4          Finally, I will tell you, as I told you at the

5     beginning, when the case is over, you can discuss the case with

6     anybody you like or with nobody, your call, totally free of all

7     obligations in that regard.  Some of my jurors have followed

8     the following rule, which I commend for your consideration and

9     for your good judgment:  They're happy to talk about what went

10    on in this courtroom or the courtroom downstairs, what the

11    testimony was about, what the case about, what the lawyers did,

12    what the judge did or didn't do -- that's something they feel

13    comfortable talking about -- but when it comes to what goes on

14    in the jury room between and among you as jurors, many jurors

15    find that that is a space that they will not invade, they will

16    keep that to themselves.  You get to make that choice.

17         I will tell you something else, and I hesitate to call

18    this good news but it is what it is:  I've heard from

19    Juror No. 3, your former foreperson, and he has tested positive

20    for the stomach flu or stomach bug, which is known as

21    norovirus.  That's not COVID-19.

22         Now, I'm not a doctor, I'm not a doctor, I don't know

23    whether you could have norovirus and also COVID-19, but it at

24    least preliminarily provides an explanation other than the

25    COVID-19 for why he wasn't feeling well, and I wanted to share

K3GKBRI3

1    that with you.  He called in to tell me that.

2          And if we get further news from him, as I expect we

3    will, we'll call you, just to close the loop on that.  And so

4    that's the other piece of news.

5          So, with all of that said, ladies and gentlemen, we

6    here in this courtroom are going to stand one last time out of

7    respect for you, the judges of the fact.

8          All rise.  The jury may exit.

9          (Jury discharged)

10          THE COURT:  If there are any postverdict applications,

11    please first consult the rules, and if there are any requests

12    for an adjournment, I'm happy to consider it, but first consult

13    and cite the rules so that I know I'm granting you a lawful

14    adjournment, if that's what you want.

15          I'll ask my deputy to give us a date for sentencing,

16    which is out.

17          THE DEPUTY CLERK:  June 29th?

18          THE COURT:  That sounds fine.

19          THE DEPUTY CLERK:  June 29th at 11:30.

20          MR. LI:  Yes, your Honor.

21          THE COURT:  Is that workable?

22          MS. GALLICCHIO:  Yes.

23          THE COURT:  Okay.

24          Anything further from the government?

25          MR. LI:  No, your Honor.

K3GKBRI3

1                    THE COURT:  Anything further from the defendant?

2                    MS. GALLICCHIO:  No, your Honor.

3                    THE COURT:  All right.

4                    With the thanks of the Court, this trial stands

5      adjourned sine die.

6                    (Adjourned)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25