UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

PETER BRIGHT,

        Defendant.

19 Cr. 521 (PKC)

**THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL**

AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York
One Saint Andrew's Plaza
New York, NY 10007

Alexander Li
Michael D. Maimin
Assistant United States Attorneys
    *Of Counsel*

**Table of Contents**

I. Preliminary Statement ................................................................................... 1

II. Statement of Facts ......................................................................................... 2

    A. The Government's Case ............................................................................ 2

    B. The Defense Case ...................................................................................... 8

III. Argument ........................................................................................................ 9

    A. Bright's Rule 29 Motion ............................................................................ 9

    B. Applicable Law ........................................................................................ 11

    C. Discussion ................................................................................................ 12

        1. Bright's Renewed Motion is Without Merit ............................... 12

        2. There Was Sufficient Evidence of Each of the Elements of the Crime of Conviction ............................................................. 14

IV. Conclusion .................................................................................................... 17

I.  **Preliminary Statement**

Peter Bright's fantasy was about to come true. He had met a woman online with two children—a 9-year-old boy and an 11-year-old girl—who was going to let Bright teach her children about sex by having them engage in sexual activity with Bright. Fortunately for everyone but Bright, the children were not real, and the woman was an undercover FBI agent. As far as the law is concerned, this was of little moment: Bright attempted to persuade, induce, entice, and coerce children to engage in sexual activity with him—through the good graces of their mother—which, because he used his phone and the Internet, is a federal crime, in violation of 18 U.S.C. § 2422(b). Bright exercised his right to trial; the jury unanimously agreed that Bright had committed this horrific crime.

During trial, Bright moved, pursuant to Federal Rule of Criminal Procedure 29(a), for a judgment of acquittal. Bright did not argue that there was insufficient evidence to prove the elements of the crime—that would be a foolhardy attempt—but instead carefully argued that "there's not sufficient evidence that Mr. Bright ever attempted to persuade or induce the children through the mother." (Tr. 299).[1] Bright contended that "[t]he evidence, in the light most favorable to the government, shows only that Mr. Bright would have been joining some preexisting plan other than inducing children to do something that they weren't already being encouraged to do." (*Id.*) The Court properly denied the motion. (Tr. 300).

---

[1] "Tr." refers to the trial transcript; "GX" refers to a Government exhibit received at trial.

In a one-paragraph letter, Bright renews his trial motion, declining to add anything, whether by way of argument or references to evidence. (Docket Entry 87 ("Mr. Bright now respectfully renews his motion for acquittal pursuant to Rule 29, resting on the existing record." (citing Tr. 299))). For the reasons the Court denied Bright's Rule 29 motion during trial, and because the trial evidence, viewed in the light most favorable to the Government and with all inferences drawn in the Government's favor, amply supports the jury's verdict, this Court should deny Bright's renewed Rule 29 motion.

## II. Statement of Facts

### A. The Government's Case

The evidence at trial overwhelmingly proved that Bright attempted to engage in sexual activity with two children—a nine-year-old boy and seven-year-old girl—using their mother (who was, in fact, an undercover FBI agent) as a go-between. To prove its case, the Government called four witnesses, including the undercover FBI agent, and submitted troves of damning evidence, including chats with the undercover FBI agent on KinkD and WhatsApp, a recording of the meeting between Bright and the undercover FBI agent created by Bright himself, items—including condoms—that Bright brought to the meeting where he thought he was going to begin his sexual tutelage, and Bright's post-arrest statements.

Between April and May 2019, Bright engaged in text message and telephone communications with an undercover FBI agent who was posing as the mother of two young children. During these communications, Bright described in graphic detail his intent to persuade, induce, entice, and coerce the two children into engaging in sexual

2

activity by giving them sexual "lessons." (GX 3A at 61). The lessons that Bright planned, which included teaching the children to handle the foreskin of his penis (GX 3A at 46) and to lick and rub his penis (GX 3A at 69), and penetrating the girl with a finger or a tiny toy (GX 3A at 69), would indisputably violate New York law. Bright took substantial steps to carry out his plan, not only by sending photographs of his penis (GX 3A at 79) and STD tests (GX 3O, 3I; Tr. 52–53, 76) to the woman he believed to be the children's "mother," but also by meeting the mother and walking toward her "home" to meet the children (Tr. 72–78). There was no real dispute that Bright believed the children were, in fact, under the age of 18, as not only had he learned their ages from their mother (Tr. 50), but he asked for photographs of the children (GX 3A at 23, 28, 74, 90), which he received (GX 3A at 75–76, 115). Indeed, after his arrest, Bright admitted that, at least as early as when he received the photographs, he realized that the children were real children, and not play-actors. (GX 9-2, 9T at 6–7).

Bright first met the mother in April 2019 on the online fetish platform KinkD. The mother's profile said she was a "[m]ommy" who was "[l]ooking for a teacher to teach my kids about the birds and the bees." (GX 1; Tr. 32–33). After Bright asked for further information, the mother replied about her children—"Kayla" and "Brayden" (Tr. 50)—that "[m]y princess is 7 and my Prince Charming is 9" (GX 2A; Tr. 39–40). Bright continued the conversation, and the parties soon moved their discussion to the online messaging application WhatsApp. (Tr. 41–42).

3

Between May 14, 2019 and May 22, 2019, Bright exchanged 769 messages with the mother on WhatsApp—enough to fill 132 printed pages. (GX 3A; Tr. 79–80). In the messages, Bright detailed his plan to teach the children "lessons" in sexual activity. (GX 3A at 61; Tr. 67). He was explicit: "I'm thinking maybe something involving foreskin is the way to start." (GX 3A at 46; Tr. 56). He later elaborated:

> Some girls at a very early age discover that it feels good to rub certain bits[.] But, otherwise, help her discover that herself, touching or vibrating her clit, putting a finger inside, or maybe a very tiny toy[.] How to hold my snake, showing her where the most sensitive parts of it are, the parts that feel best to lick or rub[.] How to take it in her hand and the kinds of motion that feel good.

(GX 3A at 69; Tr. 67). Bright asked whether Kayla was a virgin, and then reassured the mother that "I think the tip might be all I can manage." (GX 3A at 70; Tr. 68). Bright also wanted to know the level of the children's prior experience and heteronormativity, asking if Kayla "eat[s] flowers and Brayden suck[s] snakes." (GX 3A at 62; Tr. 66–67).[2] In a recorded phone call, Bright confirmed he wanted the first lesson to involve "the whole foreskin thing," and that he hoped to do the lessons "weekly." (GX 5-B, 5-C; GX 5T at 2–3; Tr. 57).

Bright's declared intent to engage in sexual activity with seven-year-old Kayla and nine-year-old Brayden was buttressed by his own pronouncements on chat messages and on Twitter, including:[3]

---

[2] Bright was asking if seven-year-old Kayla engaged in cunnilingus and nine-year-old Braydon engaged in felatio on others. (Tr. 67).

[3] The Court instructed the jury that evidence of Bright's prior chat messages, Twitter posts, and communication with the 14 year-old girl could be considered only "on the issue of the defendant's intent at the time of the charged conduct." (Tr. 246, 279).

- "[S]omeone who friended me on facebook (I have no idea) posted a picture of his daughter, I'm guessing she's like 13 or something[.] [I]t's all I can do to not post 'I'd hit it.'" (GX 40; Tr. 243).

- "I would bone a 15 year old girl in an instant." (GX 42; Tr. 245).

- "There is an astonishing amount of jailbait on this flight. Looks like some school orchestra or similar." (GX 47; Tr. 280).

- "I think age-based rape laws (rather than consent-based) are stupid." (GX 46; Tr. 280).

Bright had also been chatting online with a 14-year-old girl, who sent him pictures of her wearing panties and a T-shirt. (GX 9-9, 9T at 20). Bright explained that he kept chatting with the girl because he found her attention flattering. (GX 9-9, 9T at 21).

Not content with mere words, Bright repeatedly pressed the mother for pictures of Kayla and Brayden. (GX 3A at 23, 28, 74; Tr. 68). When the mother sent pictures of what appeared to be actual young children (GX 3A at 75–76; Tr. 69), Bright's reaction was as enthusiastic as it was swift. Only *20 seconds* receiving a photograph of seven-year-old Kayla, Bright responded: "She looks like a cutie." (GX 3A at 75–76; Tr. 189). The mother then sent a photo that appeared to be her preparing to perform cunnilingus on her own seven-year-old daughter, referring to it as "play time"; Bright's reaction was not disgust but excitement: within *27 seconds*, Bright responded "Oooh" and "Play time sounds fabulous." (GX 3A at 76; Tr. 69–70).[4] After expressing, once again, how excited he was about the prospect of an adult mother performing sexual acts on

---

[4] Bright later explained that he wanted even more explicit photos: "I must admit, I'd love to have more pictures of the three of you. The one with you kissing Kayla's thigh is thrilling, I only wish I could see what happens next!" (GX 3A at 90; Tr. 71).

5

her own seven-year-old daughter—opining "Kissing her flower, I'm sure it's beautiful"— Bright turned to the son, asking "How big a boy is Brayden?" (Ex. 3A at 77; Tr. 70). Bright immediately clarified that he was referring to Brayden's "manhood!" (GX 3A at 77; Tr. 70), and then, ten minutes later, sent a photograph of his own penis (GX 3A at 79; Tr. 71). In order to make sure that the mother did not hesitate at the possibility of exposing her children to infection, Bright also sent screenshots of his test results for sexually transmitted diseases. (GX 3O, 3I; Tr. 52–53). Bright remarked that he "greatly prefer[s] partners who are tested and clean," "because condoms are much less fun." (GX 3A at 81). "That way," he added, "condoms can be restricted to lessons about condoms." (GX 3A at 82).

Bright eventually arranged to meet in person. Two days before the meeting, Bright, who had dispelled any possible doubt that the children were just adults engaged in sexual play-acting (GX 9-2, 9T at 6–7), expressed a reasonable worry: "So my concern is, am I being set up here? . . . I was struck by the fear yesterday that I'd be met by a cop or something." (GX 3A at 84; Tr. 71). The mother explained that she had had the same concern about Bright (GX 3A at 84–85; Tr. 71–72), and Bright, mollified, decided to meet on May 22, 2019. (GX 3A at 89; Tr. 72). As the meeting approached, Bright's excitement only grew: "At risk of sounding crude, I've been feeling unimaginably horny today and it has been phenomenally distracting." (GX 3A at 102). Along the way, Bright requested "more pictures of the three of you" (GX 3A at 90), and the mother obliged with two more photographs of her sleeping children (GX 3A at 115).

6

Bright responded to each photograph in less than a minute with "What a cutie" and "Such delights." (GX 3A at 115–16).

Shortly before the meeting, Bright messaged the mother to make sure they would be able to plan the children's "lessons," including what they would have the children do that day:

> Bright: I was hoping we might talk a little before they got home
>
> Mother: Ok - talk about what?
>
> Bright: Mainly just practicalities, availability, that kind of thing.
>
> Mother: Practicalities ?
>
> Bright: Just, making sure we're on the same page about their lessons, that their lessons will be frequent enough, that kind of thing.
>
> Mother: Hmmm , what do you mean frequent enough ?
>
> And same page regarding lessons ?
>
> Bright: I think once or possibly twice a week would be my limit
>
> Mother: Ok that works well. What are you interested in doing today with them?
>
> Bright: Introductions, showing me what they know already. Getting familiar with each other.

(GX 3A at 129–31).

When Bright showed up to meet Kayla and Brayden and begin their lessons, he first showed the mother his online test results for sexually transmitted diseases and "talked about logistics and how often to meet." (Tr. 76). The mother, in turn, spoke with Bright about meeting her children and confirmed that he wanted to walk over to her home. (Tr. 76). As they walked to the apartment to meet the children and begin their lessons, Bright was arrested. (Tr. 76–77). Bright had four condoms at the time

7

of his arrest. (Tr. 221–26; GX 10). Bright had also recorded his meeting with the mother. (Tr. 226–27; GX 6).

After his arrest, Bright spoke with law enforcement agents in a video-recorded post-arrest statement. (Tr. 236–37; GX 9). Among other things, Bright claimed that he initially thought his eventual sexual partners were adults pretending to be children. (GX 9-1; GX 9T at 3). Once he received photographs of real children, however, Bright realized that this was not fantasy and therefore, Bright claimed, he resolved to try to gather evidence against their mother. (GX 9-2, 9-4; GX 9T at 7, 11). Despite the fact that he claimed he had suddenly turned into a vigilante, Bright did not approach the authorities with the chats already in his possession, lamely explaining that he "didn't even think of that." (GX 9-13, 9T at 27).

### B.   The Defense Case

Bright called Dr. James Cantor, a clinical psychologist, and also testified in his own defense. Dr. Cantor testified that "age play" is a type of sexual kink in which "participants are pretending that they're a different age than what they are." (Tr. 310). Building on Dr. Cantor's testimony, Bright testified that when he first met the mother on KinkD, he believed she was an "age player" and that her children were "littles," *i.e.*, adults pretending to be children. (Tr. 379–80). Bright testified that, after he saw the photographs of actual children, he realized she was either a "scammer" or a "child molester." (Tr. 448). Bright testified that he resolved to "play along" because if the mother was, in fact, a child molester, then he needed to "get some evidence, get a recording, and give that recording to law enforcement." (Tr. 449). Bright claimed that

8

he met the mother in person in order to learn where she lived and to record an incriminating statement (Tr. 472–73), and that the condoms he carried at the time of his arrest were from a date the preceding Friday (Tr. 429–30). Contrary to his post-arrest statement that he "didn't even think" of bringing the chat logs to the police, however, Bright testified that he considered turning over the chats but didn't want to surrender his phone. (Tr. 467–68, 472). Bright admitted that his contrary statement to the FBI was a lie. (Tr. 472, 541).

Additionally, Bright generally attacked the investigation, arguing that the FBI had not sufficiently researched the "kink" community before investigating Bright, both during jury addresses and cross-examination.

### III.    Argument

#### A.    Bright's Rule 29 Motion

At the close of the Government's case, Bright moved for acquittal, arguing that "there's not sufficient evidence that Mr. Bright ever attempted to persuade or induce the children through the mother":

> MS. BAHARANYI: We would, at this time, move for a judgment of acquittal—the basis being: Even viewing the evidence in the light most favorable to the government, there's not sufficient evidence that Mr. Bright ever attempted to persuade or induce the children through the mother. There's no evidence that he ever tried to send photos to the children, or ask that photos be sent to the children, that he ever offered anything to the children, offered any promises, or money of the sort. And, in fact, the evidence shows that the mother already had some preexisting plan involving these children and other teachers.
>
> The evidence, in the light most favorable to the government, shows only that Mr. Bright would have been joining some preexisting plan other than inducing children to do something that they weren't already being encouraged to do.

9

> For that reason, we would ask that the Court grant this Rule 29 motion.
>
> MR. LI: Your Honor, the law permits the government to prove its case by showing that the defendant attempted to persuade the children through a third party, in this case, the mother. The defendant engaged in extensive discussions with the mother about specific sexual acts he wanted to undertake with the children, including putting a finger in the girl or a toy in the girl, and, through the mother, he attempted to persuade the children to engage in those sexual activities.
>
> MR. MAIMIN: And I think that it bears addition that, in the conversations that he had, he made clear that he was going to do things to help make them comfortable with it. He said he wanted to meet with them in advance so he could figure out what their comfort level was, how far they wanted to go, and he discussed how he would teach them so that they could learn, which would be, presumably, an incentive, at least from his mind, to them to learn to engage in adult sexual acts.
>
> THE COURT: All right. Thank you, both.
>
> The motion is denied.

(Tr. 299–300). Bright did not again move for a judgment of acquittal at the close of his case. (Tr. 551–53).

In his written post-judgment Rule 29 motion, Bright raised no new arguments; rather, he simply renewed his trial motion, helpfully referring the Court to the page where he had made the motion:

> We write on behalf of Peter Bright to renew his motion for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. In February 2020, Mr. Bright was first tried on one count of attempted enticement of a minor to engage in illegal sexual activity, in violation of 18 U.S.C. § 2422(b). The jury could not reach a unanimous verdict and a mistrial was declared. On March 10, Mr. Bright was retried on the same count. At the close of the . . . government's evidence, Mr. Bright moved for acquittal pursuant to Rule 29 because the government failed to meet its burden of proving each element of the charged offense. Tr. 299. Mr. Bright now respectfully renews his motion for acquittal pursuant to Rule 29, resting on the existing record.

(Docket Entry 87).

### B. Applicable Law

Before a jury delivers its verdict, a defendant has two opportunities to move for a judgment of acquittal: "[a]fter the government closes its evidence," and "after the close of all the evidence." Fed. R. Crim. P. 29(a). If the defendant is convicted, he "may move for a judgment of acquittal, or renew such a motion." Fed. R. Crim. P. 29(c)(1).[5] A "defendant challenging the sufficiency of the evidence supporting a conviction," however, "faces a 'heavy burden.'" *United States v. Pugh*, 945 F.3d 9, 19 (2d Cir. 2019) (quoting *United States v. Glenn*, 312 F.3d 58, 63 (2d Cir. 2002)). A reviewing court must "uphold the conviction if '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Aguilar*, 585 F.3d 652, 656 (2d Cir. 2009) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis in original)).

In considering a Rule 29 motion, the court should "review all of the evidence presented at trial in the light most favorable to the government, crediting every inference that the jury might have drawn in favor of the government." *United States v. Walker*, 191 F.3d 326, 333 (2d Cir. 1999) (internal quotation marks omitted). The court must analyze the pieces of evidence "not in isolation but in conjunction," *United States v. Matthews*, 20 F.3d 538, 548 (2d Cir. 1994), and must apply the sufficiency test "to the totality of the government's case and not to each element, as each fact may gain color from others," *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999). "[T]he

---

[5] Rule 29 contains various time limitations. This Court granted extensions of time such that Bright's renewal of his Rule 29 motion is timely.

11

court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *Id.* (internal quotation marks omitted).

"[T]o avoid usurping the role of the jury," *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000) (internal quotation marks omitted), the court must "resolve all issues of credibility in favor of the jury's verdict," *United States v. Desena*, 260 F.3d 150, 154 (2d Cir. 2001) (internal quotation marks omitted). "[T]he credibility of witnesses is the province of the jury, and [the court] simply cannot replace the jury's credibility determinations with [its] own." *United States v. James*, 239 F.3d 120, 124 (2d Cir. 2000) (internal quotation marks omitted). Moreover, the court must "credit[] every inference that the jury might have drawn in favor of the government," *United States v. Morrison*, 153 F.3d 34, 49 (2d Cir. 1998), because the "task of choosing among competing, permissible inferences is for the fact-finder, not for the reviewing court," *United States v. McDermott*, 245 F.3d 133, 137 (2d Cir. 2001).

### C. Discussion

#### 1. Bright's Renewed Motion is Without Merit

Bright has renewed his Rule 29 motion, as he is permitted to do. Fed. R. Crim. P. 29(c)(1) ("A defendant may move for a judgment of acquittal, *or renew such a motion*, . . . after a guilty verdict . . . ." (emphasis added)). His renewed motion—arguing that "there's not sufficient evidence that Mr. Bright ever attempted to persuade or induce the children through the mother" (Tr. 299)—fails now for the same reason that it failed at trial. Contrary to Bright's premise, a defendant need not communicate or attempt to communicate with a minor, directly or indirectly, in order to commit the

12

crime of child enticement. Rather, "a defendant may commit criminal enticement pursuant to § 2422(b) by communicating with an adult guardian of a minor," including "by persuading a minor's adult guardian to lead a child to participate in sexual activity." *United States v. Douglas*, 626 F.3d 161, 164–65 (2d Cir. 2010).

In this case, the evidence established that Bright provided detailed lesson plans to the mother, and sent her pictures of his penis and of his tests for sexually transmitted diseases. A rational juror could infer that Bright did so in order to persuade a mother to "lead [her children] to participate in sexual activity." *Douglas*, 626 F.3d at 165. Moreover, even if attempted communication with the children were required—and it is not—the evidence established that Bright began to walk to the residence where he believed seven-year-old Kayla and nine-year-old Brayden lived, believing that he would begin their sexual lessons, but not until he eased them into it by engaging in "[i]ntroductions, showing me what they know already. Getting familiar with each other." (GX 3A at 131). Moreover, Bright had already planned how he was going to provide lessons, including how he would do it in a way that would not make the children uncomfortable, thereby possible causing them to hesitate. For example, he had explained that he would start out by teaching the children about being comfortable with his foreskin, letting them "handle it," because it was "unusual" in America, and he was concerned because a prior partner "said no" because Bright was uncircumcised. (GX 3A at 46–49). Similarly, he had brought condoms to meet the children in order to give "lessons about condoms." (GX 3A at 82, 10). And he wanted to make sure that the lessons would take—that they would "be frequent enough." (GX 3A at 130).

13

Based upon this evidence, a rational juror could infer that Bright tried to go to the residence in order to persuade, induce, entice, and coerce the children himself, *e.g.*, by helping Kayla and Brayden get comfortable with him so that he could give them lessons in sexual activity without resistance.

Nor was Bright merely trying to "join[] some preexisting plan." (Tr. 299). As an initial matter, the existence of any "preexisting plan" is irrelevant: Bright did not submit an entrapment defense, which is "an affirmative defense that requires a defendant to prove by a preponderance of the evidence the government's inducement to commit the crime." *United States v. Brand*, 467 F.3d 179, 189 (2d Cir. 2006) (internal quotation marks omitted). And Bright does not cite a single case for the strained argument that, somehow, if a parent is already predisposed to molest her own children, it is suddenly legal for someone else to join and build upon the crime. In any event, the evidence showed that Bright personally developed "lessons" for seven-year-old Kayla and nine-year-old Brayden, including lessons about the foreskin of Bright's penis and about how to sexually pleasure Kayla. These lessons were of Bright's own design. *See*, *e.g.*, *Douglas*, 626 F.3d at 162–63 (finding sufficient evidence of intent to entice where the defendant told the undercover detective that he would "train" the detective's daughter, and reassuring the detective that "[w]e would take it slow. And not hurt her any if it can be avoided.").

### 2. There Was Sufficient Evidence of Each of the Elements of the Crime of Conviction

Even had Bright chosen to argue generally that there was insufficient evidence proving each element of the crime beyond a reasonable doubt, rather than renewing

14

his more focused Rule 29 motion, the Court would be able to deny such a motion swiftly. Put simply, the evidence at trial established beyond a reasonable doubt each of the elements of attempted child enticement:

- First, that the defendant knowingly used a facility or means of interstate commerce. . . .

- Second: That the defendant knowingly persuaded, induced, enticed, or coerced an individual to engage in sexual activity, or attempted to do so;

- Third, that the sexual activity would violate New York State law;

- And, fourth, that the individual was less than 18 years old at the time of the acts alleged in the indictment or that the defendant believed the individual was less than 18 years old.

(Tr. 626).

With respect to the first element, the evidence demonstrated that Bright communicated with the mother by using a telephone, the KinkD platform, and the Internet messaging application WhatsApp. Indeed, the jury heard recorded telephone calls and read the KinkD and WhatsApp messages themselves. These, alone, established that Bright used a facility or means of interstate commerce. *United States v. D'Amelio*, 683 F.3d 412, 416 (2d Cir. 2012) ("[T]he telephone, like the Internet, is a means of interstate commerce.").

With respect to the second element, the evidence—including Bright's messages on WhatsApp detailing the sexual "lessons" he planned for Kayla and Brayden—established that Bright intended to persuade, induce, entice, and coerce the children to engage in sexual activity. Bright's decisions to continue the conversations and further the plan even after seeing pictures of children, to provide STD tests both by message

15

and in person, to show up to meet Kayla and Brayden in order to make "introductions" and begin their lessons, to bring condoms for "lessons" to the meeting, and to walk toward Kayla and Brayden's home to meet them in person each established that Bright took a substantial step—indeed, a number of substantial steps—towards the commission of the crime.

With respect to the third element, the evidence—including Bright's messages on WhatsApp describing his plan to teach Kayla and Brayden to handle the foreskin of his penis and his plan to penetrate Kayla with a finger or a tiny toy—established that Bright's intended sexual activity would violate New York law. In New York, a person commits sexual abuse in the third degree when "he or she subjects another person to sexual contact without the latter's consent," N.Y. Penal Law § 130.55; sexual abuse in the second degree when "he or she subjects another person to sexual contact and when such other person is . . . [l]ess than fourteen years old," *id.* § 130.60(2); and sexual abuse in the first degree when "he or she subjects another person to sexual contact . . . [and] the other person is less than eleven years old . . . [or] the other person is less than thirteen years old and the actor is twenty-one years old or older," *id.* § 130.65(3) & (4). Moreover, "[a] person is deemed incapable of consent" under New York law when he or she is less than 17 years old. N.Y. Penal Law § 130.05(3)(a).

So Bright's planned sexual activity with seven-year-old Kayla and nine-year-old Brayden would have violated a series of New York State laws.[6]

With respect to the fourth element, the evidence—including the KinkD chats in which the mother told Bright that Kayla was seven years old and Brayden was nine years old, the photographs that Bright received of what appeared to be actual children, and Bright's post-arrest statement that no later than receiving the photographs, he realized Kayla and Brayden were actually children (and not adults who were acting)—established that Bright believed the children were under the age of 18.

## IV. Conclusion

Bright has not met his heavy burden of showing that "no reasonable jury could find guilt beyond a reasonable doubt." *Guadagna*, 183 F.3d at 130. The Court should therefore deny his motion for a judgment of acquittal.

Dated: New York, New York
      July 15, 2020

Respectfully submitted,

AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York

By: _____
Alexander Li
Michael D. Maimin
Assistant United States Attorneys
Tel.: (212) 637-2265 / (914) 993-1952

---

[6] Bright's planned sexual activity would also have constituted rape in the third degree, rape in the second degree, and rape in the first degree under New York law. *See* N.Y. Penal Law §§ 130.25, 130.30, 130.35.

17