UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
UNITED STATES OF AMERICA            :
                                    :
       - v -                        :
                                    :            **19 CR 521 (PKC)**
**PETER BRIGHT,**                   :
       Defendant.                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


## SENTENCING MEMORANDUM
## ON BEHALF OF PETER BRIGHT


           DAVID PATTON, ESQ.
           Federal Defenders of New York
           Attorney for Defendant
           **Peter Bright**
           52 Duane Street, 10th Floor
           New York, NY 10007
           Tel.: (212) 417-8728
           **Amy Gallicchio**, Esq.
           **Zawadi Baharanyi**, Esq.
           Of Counsel

TO:      Audrey Strauss, Esq.
           Acting United States Attorney
           Southern District of New York
           1 St. Andrew's Plaza
           New York, NY 10007

Attn:    Alexander Li, Esq.
           Michael Maimin, Esq.
           Assistant United States Attorneys

**Federal Defenders OF NEW YORK, INC.**

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

Southern District of New York
Jennifer L. Brown
*Attorney-in-Charge*

October 23, 2020

**BY ECF AND EMAIL**

Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    <u>United States v. Peter Bright</u>
               19 Cr. 521 (PKC)

Dear Judge Castel:

      Peter Bright is a 39-year-old man with no prior criminal record and no history of sexual misconduct with or interest in children.  A Psychosexual and Risk Assessment of Mr. Bright concluded that he is not a pedophile.  <u>See</u> Dr. Kaplan Risk Assessment and CV, attached as Exhibit A.  Nevertheless, he was convicted after trial of attempted enticement of a minor to engage in illegal sexual activity, in violation of 18 U.S.C. § 2422(b), and faces a mandatory minimum sentence of ten years and an extremely harsh guideline range of more than twice that amount.

      Mr. Bright is scheduled to be sentenced on November 5, 2020 and we intend to ask the Court to impose a sentence, consistent with the recommendation of the Department of Probation, of no more than the ten years mandated by law.  Such a sentence, under all the circumstances, is "sufficient but not greater than necessary" to serve the purposes of sentencing as set out in 18 U.S.C. § 3553(a)(2).

The Honorable P. Kevin Castel                                                              October 23, 2020
United States v. Peter Bright
19 CR. 521 (PKC)

## MR. BRIGHT'S PERSONAL HISTORY AND CHARACTERISTICS

Mr. Bright's life has been defined by depression for as long as he can remember.  The letters from his parents and sisters, attached as exhibits B - D, provide the Court with great insight into his life-long struggle with mental illness.  His sister, Holly Long, writes, "To say that Peter was an unhappy child would be a gross understatement."  See Exhibit B.  Ms. Long goes on to describe a home environment that to the outside world might seem ideal but, in truth, was anything but.

Mr. Bright was a profoundly lonely child.  When his parents shipped him off to boarding school it validated his fears that he was unwanted and unlikeable.  Though Mr. Bright believes that his parents, in fact, cared for him, he felt that they didn't necessarily want to be in the same room with him.  This insecurity and lack of self-worth carried over to childhood friendships, of which he had few.  He was frequently rejected by schoolmates and always felt like an outsider.  Mr. Bright has expressed that as a child and into adulthood he viewed life as something to be endured.

It wasn't until adulthood that Mr. Bright finally got proper mental health treatment.  With treatment and antidepressant medication, his relationship with his wife and family improved and he began to experience some semblance of happiness in his life, ironically within a year or two of his arrest in this case.

Despite the emotional upheaval that marked his childhood, Mr. Bright's family describe him as a "kind-hearted man," See Exhibit C, and a "soft and caring soul."  Exhibit B.   His family has circled the wagons around him and have done some painful soul searching of their own. Mr. Bright's loved ones worry about his fragile mental health and the impact incarceration has and will continue to have on him, especially since they live in England and he is thousands of miles away.  Among their biggest fears is the dreadful prospect that Mr. Bright will never see his 83-year-old father again.

The Honorable P. Kevin Castel                                        October 23, 2020
United States v. Peter Bright
19 CR. 521 (PKC)

## MR. BRIGHT IS NOT A PEDOPHILE

[text redacted]

The Honorable P. Kevin Castel                                                    October 23, 2020
<u>United States v. Peter Bright</u>
19 CR. 521 (PKC)

███████████████████████████████████████████
███████████████████████████████████████
████████████████████████

## NATURE AND HISTORY OF THE OFFENSE OF CONVICTION

      The jury found Mr. Bright guilty of attempted enticement of a minor to engage in illegal sexual activity. Having presided over two trials in this matter, the Court is familiar with the evidence, the defense arguments and Mr. Bright's position about that evidence. Relevant to sentencing is the fact that the first jury that heard the evidence in this case could not reach a unanimous decision and was divided 7 to 5 for conviction. This speaks to the ambiguous nature of the evidence and, specifically, the communications between Mr. Bright and "Princess Mom."

      Members of the second jury that convicted Mr. Bright informed counsel after the verdict that the jury as a whole did not believe that when Mr. Bright first encountered "Princess Mom" on KinkD, he thought that she was an actual mother seeking someone to molest her two children or that he was seeking children online. Even in light of the verdict, this fact is mitigating and, at a minimum, belies the government's theory that Mr. Bright actively sought children in dating apps or otherwise. In fact, there is no evidence to support any claim that Mr. Bright has a history of sexual interest or abuse of children.

      We ask the Court to consider that the investigation in this case did not reveal that Mr. Bright ever sought children online. He never created internet profiles intending to lure children in. His online sexual activity was all adult-seeking and all consensual. Furthermore, unlike many defendants facing allegations of this type, Mr. Bright did not search for, possess or share child pornography. The connection between child pornography and pedophilia has been recognized by the Second Circuit and its absence here, at a minimum, is a mitigating factor.

The Honorable P. Kevin Castel                                         October 23, 2020
United States v. Peter Bright
19 CR. 521 (PKC)

# **THE APPROPRIATE SENTENCE**

In selecting a sentence, this Court takes as its "lodestar the parsimony clause of 18 U.S.C. § 3553(a)." United States v. Douglas, 713 F.3d 694, 700 (2d Cir. 2013). That provision directs sentencing courts to "'impose a sentence sufficient, but not greater than necessary, to comply with' the factors set out in 18 U.S.C. § 3553(a)(2)," i.e., "proportionality, deterrence, incapacitation, and rehabilitation." Id. In United States v. Ministro-Tapia, 470 F.3d 137 (2d Cir. 2006), the Second Circuit explained that if the Court believes a lower sentence will be as effective as a higher sentence in serving the purposes of sentencing, **it must choose the lower sentence**. See id. at 142 (observing that where a guidelines sentence is "in equipoise with [a] below-the-range sentence," the parsimony clause requires imposition of the lower sentence) (emphasis added).

A. Guidelines Analysis

In Mr. Bright's case, the Probation Office has taken the unusual step of recommending a below-guidelines sentence of 120 months, the mandatory minimum sentence. See PSR, p. 19, 21.  We urge this Court to adopt this recommendation. For the following reasons, we submit that the applicable guideline range is excessive, unreasonable and unworthy of deference.

1. The Court Should Not Give Deference to USSG § 2G1.3

Post-Booker, judges are invited to question whether a particular guideline properly reflects the considerations laid out in 18 U.S.C. § 3553(a). Rita v. United States, 551 U.S. 338, 351, 357 (2007).  Thus, a district judge may determine that a particular guideline reflects unsound judgment, does not treat defendant characteristics the proper way, or that a different sentence is appropriate regardless.  Id.  Further, judges "may vary [from the Guidelines] based solely on policy considerations, including disagreements with the Guidelines." Kimbrough v. United States, 552 U.S. 85, 101 (2007) (internal quotation marks and citations omitted) (emphasis added).  Whether a judge may draw any useful advice from a

5

The Honorable P. Kevin Castel  October 23, 2020
United States v. Peter Bright
19 CR. 521 (PKC)

guideline depends first on whether the Commission, in promulgating or amending it, acted in "the exercise of its characteristic institutional role." Kimbrough, 552 U.S. at 109. As described in Rita, the exercise of this role has two basic components: (1) reliance on empirical evidence or pre-guidelines sentencing practice, and (2) review and revision in light of judicial decisions, sentencing data, and consultation with participants in and experts on the criminal justice system. Rita, 551 U.S. at 348-50. Where a guideline is not based on "empirical data and national experience," it is not an abuse of a court's discretion to conclude that such a guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." Kimbrough, 552 U.S. at 109-10; see also Spears v. United States, 129 S.Ct. 840, 843-44 (2009) ("we now clarify that district courts are entitled to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines"). In this case, the Sentencing Commission did not enact the applicable guideline in a manner consistent with "its characteristic institutional role."

The Congressionally directed ratcheting-up of the base offense level at § 2G1.3 is unmistakable. The guideline's historical notes trace several major Congressional enactments that resulted in creation of § 2G1.3, modifications to its predecessor guideline at § 2A3.2, and the jump from what had been a base offense level of 18 to a base offense level of 28. As a result, § 2G1.3 loses its tether to any empirically based data or national sentencing experience. The Second Circuit has confirmed this very problem in the context of § 2G2.2. See United States v. Dorvee, 616 F.3d 174 (2d Cir. 2010). The Court in Dorvee noted that, "It is fundamentally different from most and that, unless applied with great care, can lead to unreasonable sentences that are inconsistent with what § 3553 requires." Id at 184. Extending that reasoning, in 2017, the Court of Appeals held that a within-guidelines child pornography sentence was substantively unreasonable. United States v. Jenkins, 854 F.3d 181 (2d Cir. 2017). The Sentencing Commission itself

The Honorable P. Kevin Castel                                              October 23, 2020
United States v. Peter Bright
19 CR. 521 (PKC)

has recognized that the child pornography guideline leads to unduly harsh sentencing recommendations and should be revised. See U.S. Sent'g Comm'n, Report to the Congress: Federal Child Pornography Offenses (2012).[1]

Regarding § 2G1.3, at best, the closest the Commission came to its characteristic institutional role occurred in relation to the 2000 amendments to §2A3.2. Historical notes indicate that amendments were made "primarily in response to the Protection of Children from Sexual Predators Act of 1998, Pub. L. 105-314 (the "[2000] Act"), which contains several directives to the Commission." The historical notes, however, explain that the Commission conducted a "comprehensive assessment" before amending § 2A3.2 to reflect a base offense level of 18 for offenses involving a violation of chapter 117 of title 18, which includes violations of § 2422(b). It is unclear whether this "assessment" involved consideration of empirical data or national sentencing experience. Regardless, the base offense level 18 is a far cry from § 2G1.3's base offense level of 28.

The enhancements applied by the Department of Probation to this case apply to the vast majority of defendants changed under 18 U.S.C. § 2422(b). Thus, as in Dorvee, "an ordinary first-time offender" could quickly amass an offense level of 40, "based solely on sentencing enhancements that are all but inherent to the crime of conviction." Dorvee, 616 F.3d at 186.

Like the Department of Probation, this Court should therefore not anchor its sentence to the applicable guideline section in this case that produced an unduly harsh and exceedingly excessive sentencing range. The Court should instead weigh the other § 3553(a) factors to arrive at the parsimonious sentence.

---

[1] Available at: https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf

The Honorable P. Kevin Castel                                                                          October 23, 2020
<u>United States v. Peter Bright</u>
19 CR. 521 (PKC)

## 2. The Court Should Decline to Apply an Enhancement for Obstruction of Justice

The government suggests that Mr. Bright should receive an obstruction of justice enhancement under U.S.S.G. § 3C1.1 because it claims he lied to FBI agents in response to one question and that his trial testimony was false. PSR ¶ 17. The government has not met its burden with respect to this enhancement and the Court should not apply it. The PSR provides that the "Probation Office takes no position" as to whether a two-level enhancement for Obstruction of Justice, under § 3C1.1, is applicable." PSR at ¶ 18.

It is respectfully submitted that the Court should decline to impose an obstruction of justice enhancement as to Mr. Bright's trial testimony or to his answer to one question posed by FBI agents during post arrest questioning. In making this determination, "a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition we have set out." <u>Id</u>.; see also <u>United States v. Agudelo</u>, 414 F.3d 345, 349-50 (2d Cir. 2005) (finding error in imposing obstruction enhancement, where court credited officer testimony and therefore discredited defendant's affidavit, but did not make further findings to support enhancement); <u>United States v. Briceno</u>, No. 01 Cr. 943 (LTS), 2003 WL 22025870, at *5 (S.D.N.Y. Aug. 29, 2003) (declining to impose enhancement because government failed to establish perjury in hearing testimony, although court expressed doubts regarding truthfulness and completeness of defendant's account).

Mr. Bright submits that his testimony was consistent with the evidence the defense proffered, as well as with Mr. Bright's prior statement to law enforcement regarding his conduct. Mr. Bright did not commit perjury or otherwise obstruct justice.

8

The Honorable P. Kevin Castel                                          October 23, 2020
United States v. Peter Bright
19 CR. 521 (PKC)

### B. A Sentence of Ten Years Adequately Serves the Goals of 18 U.S.C. § 3553(a)

1. Punishment

For a case in which no actual children were hurt, or even involved, a 120-month term in prison is more than sufficient punishment. Mr. Bright's encounter with FBI agents did not occur in a space designated for children, like a youth-oriented chat room or social media platform. Significantly, he has no history of predatory or exploitative behavior towards children.

This case represents Mr. Bright's first ever contact with the criminal justice system and first exposure to prison.  Ten years in prison, thus, will be more significant for him than for a defendant who previously had been imprisoned. See United States v. Baker, 445 F.3d 987, 992 (7th Cir. 2006). His time in pretrial detention has already been exceedingly difficult and isolating. Mr. Bright has not seen his family since the conclusion of his second trial in March.  Additionally, in the midst of these court proceedings, his wife filed for divorce and cut off all communication.

Furthermore, Mr. Bright is incarcerated during the unprecedented global pandemic, and the restrictions imposed by the BOP in an effort to curb the spread of the coronavirus has been experienced by him as extremely punitive. The ever-changing measures and restrictions have ranged from complete days-long lockdowns in cramped two-man cells without showers or communication with the outside world, to the current regimen of two hours a day out of the cell.  We hope the Court will consider these brutal conditions of confinement and the impact COVID-19 has had, and will continue to have, on Mr. Bright's mental and physical well-being.  Until a vaccine is approved and available for distribution, prisoners remain a particularly vulnerable population and the perpetual fear of contracting the virus increases the punitive nature of any period of incarceration.

The Honorable P. Kevin Castel                                                                    October 23, 2020
United States v. Peter Bright
19 CR. 521 (PKC)

      Life behind bars only stands to get worse for Mr. Bright. Just a fraction of inmates with mental illness receive consistent therapy in BOP facilities.[2] Mr. Bright has been deprived of consistent therapy since March, and this will likely become permanent once he is designated and placed in a long term facility. The lack of proper mental health treatment and care risks destabilizing his mental health and making life in prison even more difficult to navigate.

      Mr. Bright's time in custody will be more difficult and riskier than for any other type of inmate given the nature of his conviction. The instant offense will make him a target of attack and abuse. See United States v. Parish, 308 F.3d 1025 (9th Cir. 2002). In Parish, the Court affirmed imposition of a below guidelines sentence based, in part, on the district court's belief that "the nature of the offense . . . increas[ed] the [defendant's] susceptibility to abuse [in prison]." Id. at 1028. The Court noted that an individualized determination had been made by the district court in this regard. Id. at 1032. Evidence from a doctor demonstrated that "individuals convicted of sex offenses involving minors, including possessors of child pornography, came to prison with a 'bad label' and were in for 'a difficult time.'" Id. That same testimony noted by the Court would apply to Mr. Bright. Sadly, this has already been Mr. Bright's experience at the MCC. He had to change units on account of threats and harassment at the jail after individuals in his unit discovered the nature of his charge. Ten years in prison would be a long and difficult road for Mr. Bright and his family. No more is necessary to ensure that he is punished.

---

[2] Thompson, Christie and Taylor Eldridge, "Treatment Denied: The Mental Health Crisis in Federal Prisons," THE MARSHALL PROJECT, (2018), available at: https://www.themarshallproject.org/2018/11/21/treatment-denied-the-mental-health-crisis-in-federal-prisons.

The Honorable P. Kevin Castel                                          October 23, 2020
United States v. Peter Bright
19 CR. 521 (PKC)

    2. <u>Deterrence</u>

There comes a point when a term of imprisonment no longer serves the goals of sentencing and only serves to incapacitate. For Mr. Bright, that point would be any term beyond the statutory minimum of ten years. In 2010, The Sentencing Project released a report analyzing the deterrent effects of sentencing. It explained that:

> Existing evidence does not support any significant public safety benefit of the practice of increasing the severity of sentences by imposing longer prison terms. In fact, research findings imply that increasingly lengthy prison terms are counterproductive. Overall, the evidence indicates that the deterrent effect of lengthy prison sentences would not be substantially diminished if punishments were reduced from their current levels.[3]

A study conducted by the National Institute of Justice made similar findings, concluding that the ***certainty* of being caught rather than the *severity* of punishment** is the more powerful deterrent.[4]

A ten year prison sentence would provide adequate general and specific deterrence. The empirical evidence is unanimous that there is no relationship between sentence length and general deterrence, regardless of the type of crime. See Andrew von Hirsch et al., Criminal Deterrence and Sentence Severity: An Analysis of Recent Research (1999) (concluding that "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance," and that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects"); Michael Tonry, Purposes and Functions of Sentencing, 34 Crime and Justice: A Review of

---

[3] Wright, Valerie, <u>Deterrence in Criminal Justice, Evaluating Certainty vs. Severity of Punishment</u>, (2010), *available at* https://www.sentencingproject.org/publications/deterrence-in-criminal-justice-evaluating-certainty-vs-severity-of-punishment/

[4] <u>Five Things About Deterrence</u> (2016), National Institute of Justice, *available at* https://nij.ojp.gov/topics/articles/five-things-about-deterrence

The Honorable P. Kevin Castel                                              October 23, 2020
United States v. Peter Bright
19 CR. 521 (PKC)

Research 28-29 (2006) ("[I]ncreases in severity of punishments do not yield significant (if any) marginal deterrent effects. . . . Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence.").

Studies show that the same is true of specific deterrence; except for the incapacitation effect of incarceration, there is little apparent correlation between recidivism and the length of imprisonment. See David Weisburd et al., Specific Deterrence in a Sample of Offenders Convicted of White-Collar Crimes, 33Criminology 587 (1995) (finding no difference in deterrence for white collar offenders between probation and imprisonment); Donald P. Green & Daniel Winik, Using Random Judge Assignments to Estimate the Effects of Incarceration and Probation on Recidivism among Drug Offenders, 48 Criminology 357 (2010) (study of over a thousand offenders whose sentences varied substantially in prison time and probation found that such variations "have no detectable effect on rates of re-arrest," and that "[t]hose assigned by chance to receive prison time and their counterparts who received no prison time were rearrested at similar rates over a four-year time frame").

In fact, social science research indicates low recidivism rates for individuals like Mr. Bright with no prior criminal history. In 2004, the United States Sentencing Commission ("U.S.S.C.") issued a report as part of its research series on the recidivism of federal guidelines offenders entitled: Recidivism and the 'First Offender": A component of the Fifteen Year Report on the U.S. Sentencing Commission's Legislative Mandate, United States Sentencing Commission, May 2004. In its report, the U.S.S.C. notes:

> The 'first offender' philosophy in sentencing policy generally encourages lower sentences for offenders who have little or no prior criminal conduct. This philosophy, which can be derived directly from the guidelines' Chapter Four introductory commentary, postulates that first offenders are less culpable and less likely to re-offend. As such,

The Honorable P. Kevin Castel                                              October 23, 2020
United States v. Peter Bright
19 CR. 521 (PKC)

they are deserving of reduced punishment.[5]

A follow-up U.S.S.C. study of released federal offenders conducted from 2005 to 2013 confirmed the strong correlation between an offender's criminal history and the likelihood of recidivism. "Regarding criminal history in particular, the Commission found that an offenders' total criminal history points, as determined under Chapter Four of the Commission's Guidelines Manual, were closely correlated with recidivism rates."[6]

Prior to this case, Mr. Bright had never before been arrested, nor had he committed any crimes for which he had not been caught. For 39 years, he has lived a thoroughly law abiding life outside of the criminal justice system. Ten years in prison, during a time when life behind bars is more punitive and isolating than it has ever been, is more than sufficient to ensure that Mr. Bright will not return to the criminal justice system again.

   3. Parity

A sentence of 120 months would not result in a disparity when compared to sentences imposed in this district on defendants charged with and/or convicted of violating 18 U.S.C. 2422(b):[7]

- United States v. Muhammad Waqar, 18 Cr. 342 (SHS): After a jury trial, the defendant was found guilty of one count of attempted enticement of a minor and sentenced to 120 months. The defendant messaged an undercover officer posing

---

[5] U.S. SENTENCING COMM'N, RECIDIVISM AND THE FIRST OFFENDER (2004), available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_First_Offender.pdf., p. 1.
[6] U.S. SENTENCING COMM'N, RECIDIVISM AMONG FEDERAL OFFENDERS: A COMPREHENSIVE OVERVIEW (2016), available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf
[7] All information discussed in the case summaries were found in publically filed documents.

as a 12-year-old on social media to arrange for sex. He also sent explicit photographs of himself and requested the same from the purported minor. Waqar's guideline range was 97-121 months.

- United States v. Weber, 18 Cr. 641 (RJS): The defendant pled guilty to attempted enticement of a minor and was sentenced to 120 months. The defendant, who worked as a tutor, responded to a Craigslist advertisement posted by an undercover officer pretending to be a 13 year old girl interested in older men. He sent sexually explicit messages to the purported minor and attempted to arrange for sex on Valentine's Day.  Weber's guideline range was 70-87 months.

- United States v. McFadden, 17 Cr. 463 (LAK):  The defendant was charged with 18 U.S.C. § 2422(b) but pled guilty to one count of traveling with the intent to engage in illicit sexual activity and receipt of child pornography.  The defendant solicited a 14-year-old boy in a teen chat room and in private email exchanges, ultimately booking a hotel room for the boy's first sexual experience.  He also solicited the boy to send child pornography and to engage in "masturbation chat."  Defendant was also in communication with other minor boys who he attempted to meet for sex and instructed on of his victims who he called his "slave" to find him other 13-year-old boys.  McFadden was sentenced to 90 months.  McFadden's guideline range was 292 to 365 months.

- United States v. Cooper, 13 Cr. 66 (JPO): The defendant pled guilty to enticing a minor to engage in sexual conduct and was sentenced to 120 months. The defendant solicited oral sex and explicit photos from a 15-year-old that he met in a chat room. The defendant had sex with the minor child.  He was also in possession of thousands of pictures and videos containing child pornography. Cooper's guideline range was 120 months.

The Honorable P. Kevin Castel                                      October 23, 2020
United States v. Peter Bright
19 CR. 521 (PKC)

- United States v. Fantau, 13 Cr. 358 (DLC): The defendant pled guilty to enticing a minor to engage in sexual conduct and possession of child pornography and was sentenced to 120 months. The defendant used craigslist to solicit sex from underage girls. He had sexual contact with a 14-year-old and agreed to pay the minor in exchange for sex. He was also found in possession of child pornography, including a video of a prepubescent child being anally penetrated by an adult male. Fantau's guideline range was 120-135 months.

For the majority of the above summarized cases, the applicable guideline range is significantly lower than that for Mr. Bright. However, despite lower guidelines, the conduct alleged against all of the above listed defendants is more egregious than that alleged against Mr. Bright. Mr. Bright's guideline range is overly inflated due to an enhancement related to the ages of the purported children and a grouping analysis. This vast disparity in the guideline range for a similar offense of conviction provides more support for the argument that the applicable guidelines deserve little deference.

Sentences above ten years have typically been reserved for individuals exhibiting behavior far more predatory than that which Mr. Bright was convicted of:

- United States v. Irizarry, 18 Cr. 5 (VEC): The defendant pleaded guilty to attempted enticement of a minor to engage in sexual conduct, receipt and distribution of child pornography, and possession of child pornography. The defendant messaged an undercover officer posing as the father of a 9-year-old girl. He then sent the undercover nearly 80 image and video files depicting the sexual exploitation of children, including infants and toddlers. He attempted to arrange a meeting with the purported 9-year-old daughter for sex and to take sexually explicitly photos and videos of her for his collection of child pornography. In a post arrest statement, he admitted that he traded child

15

pornography with approximately three people per week and that he had inappropriate physical contact with four children several years prior to his arrest. At the time of his arrest he was on state probation for possession of child pornography. His guideline range was 235 to 293 months and he faced a mandatory minimum sentence of 15 years. He was sentenced to 240 months.

- <u>United States v. Zauder</u>, 12 Cr. 659 (LAK): The defendant pleaded guilty to enticing a minor to engage in sexual conduct. Initially he was only charged with possession of hundreds of images and videos of child pornography. While on pretrial release, however, he viewed sexually explicit websites depicting apparent minors engaging in sex acts. His bail was revoked, and a search of his computers then revealed that he had direct sexual contact with three minors, some of whom also sent him explicit images of themselves. The Probation Department scored the defendant's risk of re-offense as "Moderate-High," and found that he had "a strong sexual interest in underage males, pro-offending attitudes, and a sense of intellectual superiority that allowed him to believe he could break societal rules without being detected." Based on these facts, and the defendant's high risk of recidivism and danger to the community, the government recommended a sentence "substantially higher" than the 10-year mandatory minimum. The defendant's guidelines range was 262 to 327 months and he was sentenced to 156 months' imprisonment.

- <u>United States v. Perez</u>, 08 Cr. 798 (DLC): The defendant, a volunteer at a New York City public elementary school, pleaded guilty to enticing a minor to engage in sexual conduct. By his own admission he volunteered at the school "to be around the young boys." Over a three-year period, he sexually abused a child whom he met when the child was a 12-year old student at the school. The defendant relentlessly pursued this child and ultimately induced him to come to his apartment, where they engaged in sexual conduct that the child ultimately

The Honorable P. Kevin Castel                                        October 23, 2020
United States v. Peter Bright
19 CR. 521 (PKC)

reported was forced. The child's father, an Army Reserve Soldier mobilized twice to Iraq, was overseas while the defendant began forcing sexual relations on the child. The defendant also sought out other minors and succeeded in making contact on at least one other occasion. He also used Google on his school computer for information on how to get a boy to perform oral sex. The defendant's guidelines range was 120 to 135 months and he was sentenced to 168 months' imprisonment.

- United States v. Pugo, 18 Cr. 422 (NSR):  The defendant pleaded guilty to coercion and enticement of a minor to engage in sexual activity. The defendant sexually abused a 13-year-old girl on multiple occasions and sent her sexually explicit photographs of himself. Additionally, he pressured the victim to take Plan B after one of their sexual encounters. His guideline range was 188-285 months and he was sentenced to 156 months

- United States v. Terwilliger, 14 Cr. 701 (VB): The defendant was charged with production of child pornography and attempted enticement of a minor to engage in sexual activity. The government dropped the production count and the defendant pleaded guilty to enticement. The defendant solicited explicit photos from an undercover officer who he believed was a 13-year-old girl and attempted, at length, to persuade the undercover to meet him for sex and live with him and his girlfriend in a "three-way relationship." He planned to impregnate the 13-year-old girl and also admitted that he had previously had sexual intercourse with a 15-year-old girl while his girlfriend watched. The defendant's guidelines range was 235 to 293 months. He was sentenced to 144 months.

Finally, on parity more broadly, it is worth noting that a conviction in New York State Court for the most serious of the underlying New York State Penal Law Sections contained in Count One of the indictment, attempted rape in the first

17

The Honorable P. Kevin Castel                                         October 23, 2020
United States v. Peter Bright
19 CR. 521 (PKC)

degree, would yield a mandatory minimum sentence of 3 ½ years and a maximum sentence of 25 years.  See New York P.L. § 110/130.35(3) and 70.80(4)(a)(ii).

## CONCLUSION

For all the above stated reasons, a substantial variance from the applicable guideline range is warranted.  A sentence of ten years for a 39-year-old man with no criminal record, no history of sexual misconduct with or sexual interest in minors, who suffers with major depressive disorder, and who has and will continue to endure harsh and traumatic conditions of confinement, is more than sufficient to reflect the seriousness of the offense of conviction, promote respect for the law, provide punishment, and afford adequate deterrence.

Respectfully submitted,

*/s/ Amy Gallicchio*
_____
Amy Gallicchio, Esq.
Zawadi Baharanyi, Esq.
Assistant Federal Defenders
Federal Defenders of New York
O: (212) 417-8728
M: (917) 612-3274

Cc:   AUSA Alexander Li
      AUSA Michael Maimin