```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                            19 CR 521 (PKC)

 5   PETER BRIGHT,

 6              Defendant.                    Sentence (by video)

 7   ------------------------------x

 8                                     New York, N.Y.
                                       November 4, 2020
 9                                     11:25 a.m.

10   Before:

11
                         HON. P. KEVIN CASTEL,
12
                                            District Judge
13
                              APPEARANCES
14
     AUDREY STRAUSS
15        Acting United States Attorney for the
          Southern District of New York
16   BY:  ALEXANDER LI
          TIMOTHY HOWARD
17        MICHAEL MAIMIN
          Assistant United States Attorneys
18
     FEDERAL DEFENDERS OF NEW YORK, INC.
19        Attorneys for Defendant
     BY:  AMY GALLICCHIO
20        ZAWADI BAHARANYI

21

22

23

24

25
```

1          THE COURT:  This is United States of America v. Peter

2    Bright.  Appearance for the government.

3          MR. LI:  Good morning, your Honor, Alexander Li for

4    the government on the video conference.  With me by telephone

5    is AUSA Timothy Howard and Michael Maimin.

6          THE COURT:  Good morning to you all.

7          For the defendant.

8          MR. LI:  Ms. Gallicchio, I cannot hear you.

9          THE COURT:  Have you dialed in?  Click the reconnect

10   audio and perhaps dial in.

11         Appearing for the defendant.

12         MS. GALLICCHIO:  Good morning, your Honor, the Federal

13   Defenders by Amy Gallicchio for Mr. Peter Bright.  Also by

14   telephone in attendance is Zawadi Baharanyi.

15         THE COURT:  Good morning to you both.

16         Mr. Bright, can you see me?

17         THE DEFENDANT:  Yes, I can.

18         THE COURT:  Mr. Bright, I guess that also means you

19   can hear me, is that correct?

20         THE DEFENDANT:  That's correct, yes.

21         THE COURT:  Ms. Gallicchio, this is a video proceeding

22   in which I can see the prosecutor, I can see you, I can see

23   Mr. Bright and Mr. Bright, I understand, can see me.

24         Can you tell me whether Mr. Bright consents to do this

25   sentencing remotely?  I want to state for the record, from the

1    Court's perspective, there is no burden to me in doing it in a

2    courtroom.  In fact, I have a sentencing on in courtroom 11D

3    this afternoon.  So if for any reason Mr. Bright would prefer

4    to do this in person, I can easily accommodate that and

5    accommodate that quickly.

6              Let me hear from you, Ms. Gallicchio.

7              MS. GALLICCHIO:  Yes.  Thank you, your Honor.

8              First of all, I seem to have lost the Court's video

9    feed.  I don't know if I'm the only one.  I see two videos of

10   Mr. Bright and one of Mr. Li.

11             THE COURT:  Mr. Li, can you see me?

12             MR. LI:  Yes, your Honor, I can see you.  You're at

13   the bottom of my screen.  So I don't know if Ms. Gallicchio is

14   seeing this the same way I am, but I see one row of three

15   screens.  I see myself, the defendant, Ms. Gallicchio, and then

16   in a lower row I see your Honor.  But I do see your Honor.

17             THE COURT:  Mr. Bright, can you see me?

18             THE DEFENDANT:  Yes, I can.

19             THE COURT:  Thank you.

20             I'm happy to wait, Ms. Gallicchio, if you want to log

21   out and log back in.  That's fine with me.  I certainly can see

22   you, but I would be happy to wait if you want to log out and do

23   it over again.

24             MS. GALLICCHIO:  That's OK, your Honor.  It's fine.

25   For some reason I have two videos of Mr. Bright instead -- it

1    does say judge under the caption, but it's a picture of

2    Mr. Bright.  I am prepared to proceed, your Honor.  I can hear

3    you clearly.

4           In response to the Court's question, I did have

5    extensive conversations with Mr. Bright by telephone and in

6    video conference with respect to his right to be present in

7    court in person with me by his side at the time of sentencing,

8    after consultation with me, and he has indicated that he

9    consented to and preferred to proceed by way of video.

10           THE COURT:  Is that correct, Mr. Bright?

11           THE DEFENDANT:  Yes, it is.

12           THE COURT:  With regard to sentencing materials,

13    Ms. Gallicchio and Mr. Li, the question will be whether I have

14    everything I should have.  I have a presentence report,

15    recommendation, and addendum, revised by probation on September

16    22, 2020.  I have a sentencing memorandum from Mr. Bright which

17    annexes letters from his parents, from each of his two sisters,

18    and a report from Meg Kaplan, Ph.D.  The sentencing memorandum

19    exists in both the redacted and in an unredacted form.  I also

20    have a letter from the government, dated October 30, 2020.  And

21    I have a letter from Inner City Press in which Inner City Press

22    seeks access to the redacted portion of the defendant's

23    sentencing submission, including Exhibit A thereof.

24           Do I have everything I should have on the subject of

25    sentencing, Ms. Gallicchio?

1            MS. GALLICCHIO:  Yes, your Honor, you do.

2            THE COURT:  Mr. Li.

3            MR. LI:  Yes, you do, your Honor.

4            I would ask, however, that before we proceed to the

5    substance of the sentencing that the Court make the CARES Act

6    findings with respect to the defendant's remote appearance and

7    that defense counsel states the basis of those findings for the

8    record.

9            THE COURT:  What specifically are you seeking me to

10   find?

11           MR. LI:  Yes, your Honor.

12           That under the CARES Act a felony sentencing can

13   proceed remotely by telephone or video conference only if the

14   Court finds specifically that the sentencing cannot be delayed

15   without serious harm to the interests of justice.  I believe

16   Ms. Gallicchio, based on our conversation, we have discussed

17   specific reasons why the defense believes that finding can be

18   made, and I would ask that Ms. Gallicchio state those reasons

19   on the record and the Court make the findings before we

20   proceed.

21           THE COURT:  Ms. Gallicchio.

22           MS. GALLICCHIO:  Yes, your Honor.  Thank you.

23           Your Honor, Mr. Bright has been incarcerated obviously

24   now for 18 months, and he has been incarcerated at the MCC

25   under extreme restrictive conditions, not only currently, due

6

1    to the pandemic.  But also prior to that, as the Court is well

2    aware, the conditions at the MCC are restrictive under normal

3    circumstances.

4          He has not had access to, at least during the

5    pandemic, the necessary mental health treatment that he did

6    actually receive prior to the pandemic.  And so we believe that

7    though we understand restrictions will be in place not only at

8    the MCC but at other institutions, we believe that the MCC's

9    ability to receive the necessary mental health treatment is

10   more restrictive than it would be at any other facility.

11   Therefore, the interests of justice would be that he be

12   sentenced as soon as possible so that he could be relocated to

13   a facility where hopefully he will receive better medical

14   treatment.

15         THE COURT:  I appreciate that.  But as I pointed out

16   before Mr. Li raised this issue, I'm doing a sentencing this

17   afternoon in courtroom 11D.  I could have sentenced Mr. Bright

18   in courtroom 11D at this hour.  I am in the courthouse, as you

19   can see, or maybe you can't see, but I'm here.  I have a plea

20   on and a sentence on.  So help me out here.

21         MS. GALLICCHIO:  Sure.  Your Honor, I'm sorry to cut

22   you off.  Since I can't see you, sometimes it's not clear to me

23   when you are finished speaking, so I apologize.

24         Your Honor, Mr. Bright does continue to have concerns

25   over the coronavirus, which is obviously still a concern

7

particularly for inmates and it is a concern in New York.  I

understand that there are precautions in place, of course, in

the courthouse, but I think that the dangers are increased for

those that are traveling from the jail by way of U.S. Marshals

into the courthouse, where they are in custody, potentially are

at greater risk than those of us entering through the front

door of contracting the coronavirus, those who come in and out

of the courthouse, new arrestees, etc.

Additionally, your Honor, even though I understand the

quarantines technically are not supposed to take place

following a visit to the courthouse, I understand that they are

still continuing on a certain basis.  That, additionally, is a

difficulty that we would like to avoid happening.  It is

incredibly restricted, punishing, isolating, and, therefore, it

was for that reason, those reasons, your Honor, that Mr. Bright

wished to proceed by way of video.

THE COURT:  Thank you.

Mr. Li, do you agree that the defendant has made out a

basis for an interest in justice in such a finding?

MR. LI:  I do, your Honor.  And specifically I would

note that although the Court is available today to sentence the

defendant in person, I think defense counsel has stated, and I

think that's correct, there would be a delay in getting him

into the courtroom due to the current coronavirus protocols,

and that defense counsel has stated a basis to avoid that delay

1    in order to avoid serious harm to the interests of justice,

2    specifically his need for treatment at a permanent facility.

3          THE COURT:  I find that the interests of justice are

4    served by proceeding remotely today and not delaying this

5    sentencing further.  I will note, in addition, I adopt the

6    reasons stated by both Ms. Gallicchio and, further, I will say

7    that having someone appear in a courtroom does require advanced

8    requests, and they cannot always be honored.  I cannot say that

9    I could have had two defendants in my courtroom today.  I only

10   know that I have one in my courtroom today.  That's the most I

11   could say.

12         Based on my review of the PSR, Mr. Bright appears to

13   be in a risk category because of his apparent body mass index

14   and, therefore, his concerns about being in the courtroom are

15   founded in fact.  So I find that it is in the interests of

16   justice to proceed telephonically and by video transmission and

17   not to do it in the courtroom or delay it further.

18         Now, with regard to the Inner City Press application,

19   I have filed the application or caused it to be filed on the

20   docket.  I am going to direct the parties to submit a letter

21   brief to be filed on ECF by noon on November 6.

22         And to help out here, the case that I think both the

23   government and the defendant should take a look at is Judge

24   Koeltl's decision in *United States v. Melissa King*, which is

25   2012 WL 2196674 in which Judge Koeltl indicated that a

1    sentencing submission, including one discussing the defendant's

2    medical conditions and the like, should be produced, but that

3    redactions would be appropriate for information regarding third

4    parties, such as discussions of the medical or mental situation

5    relating to parents or siblings or spouse.  I would ask for

6    that by noon on Friday.  That's where we are on that.

7          Ms. Gallicchio, has Mr. Bright read, reviewed, and

8    discussed with you the presentence report, recommendation, and

9    addendum?

10         MS. GALLICCHIO:  Your Honor, I have reviewed it with

11   him and read it to him.  I have not provided him with a copy of

12   it because of the obvious risks.

13         THE COURT:  Does the defendant have any objections to

14   the facts set forth in the presentence report?

15         MS. GALLICCHIO:  Your Honor, other than what we have

16   already noted in the presentence report -- obviously, we

17   dispute his guilt -- aside from that, no.

18         THE COURT:  Does the defendant have any objections to

19   the guideline range set forth in the presentence report?

20         MS. GALLICCHIO:  No, your Honor.  As we indicated, we

21   believe that the Department of Probation has accurately

22   calculated the guidelines.

23         THE COURT:  I have a point to raise about the

24   guidelines, and I'm always open to being educated.  But I'm

25   looking at the grouping of offenses section of the PSR and

1    specifically the two-level enhancement in paragraph 38.  But my

2    review of the guidelines indicate that grouping of offenses

3    only occurs where there are offenses to be grouped.

4           Mr. Bright, correct me if I'm wrong, was indicted and

5    convicted in a single-count indictment.  And under the

6    guidelines the grouping can relate to either a single charging

7    information, indictment or information, as well as some other

8    related indictment or information of which the defendant is

9    being sentenced.  All I know is of one single count.  And I

10   don't see where the grouping of offenses is appropriate because

11   I only know of one offense.

12          Help me out here, Ms. Gallicchio or Mr. Li.

13          MR. LI:  Your Honor, I refer the Court specifically to

14   guideline 2G1.3(d).  And specifically subsection (d)(1) states:

15   If the offense involved more than one minor, chapter 3, part D:

16   Multiple counts shall be applied as if the persuasion,

17   enticement, coercion, travel or transportation to engage in a

18   commercial sex act or prohibited sexual conduct of each victim

19   had been contained in a separate count of conviction.  I

20   believe that is the basis.

21          THE COURT:  The guidelines section is?

22          MR. LI:  Section 2G1.3(d)(1).

23          THE COURT:  I'm reading it and I must say, I never

24   encountered it before.  It's labeled special instruction.  If

25   the defense involved more than one minor, chapter 3, part D:

1    Multiple counts shall be applied as if the persuasion,

2    enticement, coercion, travel, or transportation to engage in a

3    commercial sex act or prohibited sexual conduct of each victim

4    had been contained in a separate count of conviction.

5            It appears that that is properly calculated under

6    grouping of offense principles.

7            Any basis to challenge that, Ms. Gallicchio?

8            MS. GALLICCHIO:  No, your Honor.  Unfortunately, that

9    section speaks for itself.

10           THE COURT:  Thank you.

11           Does the government have any objections to the facts

12   set forth in the presentence report?

13           MR. LI:  No, your Honor.

14           THE COURT:  Any objections to the guideline

15   calculation?

16           I know you take the position that Mr. Bright's

17   testimony at trial warrants an obstruction enhancement.  I have

18   read your argument and specifically read the case law under it.

19   And the case which I think you rely on most heavily, I think

20   it's *Davis*.  And that was a case in which the denial -- I have

21   it wrong.  It's *Bonds*, 933 F.2d 152.  That was a case where the

22   defendant claimed that he did not know that the currency was

23   counterfeit, an objectively viable fact, and, of course, it

24   could be that the falsity of that testimony could be proven by,

25   for example, the statement by the defendant that he knew it was

1    counterfeit, or some such thing of that.  I am not so sure that

2    the statements that you reference are of the type that would

3    enable the Court to form a firm and abiding belief that they

4    were perjurious.

5        Do you want to add anything to your papers in that

6    regard?

7        MR. LI:  Yes, your Honor.

8        I think in the case of *Bonds* that the Court

9    referenced, the Second Circuit specifically emphasized the

10   knowing elements, that is, the intent element.  And in the

11   *Bonds* case the defendant denied that he knew, that is, he

12   denied the intent element.  And what the Court held was that by

13   finding that the defendant Bonds was guilty of knowingly, and

14   the Court emphasized the word knowingly, distributing

15   counterfeit money, the Court necessarily determined that

16   Mr. Bonds knew that the money he distributed was counterfeit.

17       THE COURT:  That argument was subsequently rejected by

18   the circuit in a case, it was an appeal from a decision by

19   Judge Leval sitting in the district court, and they said that

20   judges are not to automatically apply the obstruction

21   enhancement.  It's not like, well, the statement is

22   inconsistent with the trial testimony.  Therefore, the

23   obstruction enhancement applies.  The circumstantial has

24   rejected that line of reasoning.

25       MR. LI:  I am not certain the case the Court is

1   referring to.  To my knowledge, *Bonds* has not been overruled.

2   And I do think that the line of cases reflecting that if the

3   testimony of the defendant is inconsistent with an element that

4   the jury must find in order to convict the defendant, then, by

5   a necessary inference, the jury must have found that the

6   defendant committed perjury in denying that element.  That is

7   essentially the principal set forth in the *Bonds* case.  And I'm

8   not aware of that principle being overruled in the Second

9   Circuit.

10          THE COURT:  I think I can help you with that.

11          I mixed up the case.  It may not have been an appeal

12   from a Judge Leval -- no.  It was.  Actually, it was.  My

13   recollection happens to be correct.  The Court said *Johnson*'s

14   reading of *Bonds* are similarly deficient.  And the Court goes

15   on to say:  I am not saying that they modified bonds, but

16   district judges -- if the argument that the defendant was

17   urging, district judges would be substantially deprived of fact

18   finding power, even when the judge has observed the witness at

19   trial and holds a firm and abiding belief that a witness has

20   lied on the witness stand.  Specifically, the guidelines were

21   not intended to turn sentencing judges entirely into sentencing

22   automatons devoid of fact-finding powers, and we refuse to read

23   them as such.

24          I read the law of the circuit as not ever compelling

25   the application of the obstruction, regardless of judge's

1    observations.  That's where I stand on that.

2            Let me hear from Ms. Gallicchio.

3            MS. GALLICCHIO:  Your Honor, not surprisingly, I would

4    agree with the Court.  As we have already indicated in our

5    submission, and I think even in *Bonds*, your Honor, the Court

6    does hold that certainly -- this holding shouldn't be

7    interpreted as authorizing a sentencing Judge to impose

8    obstruction of justice whenever defendant has testified in his

9    own behalf.  I think the facts of *Bonds*, as the Court has

10   already indicated, really are distinguishable from the type of

11   testimony that we have here.

12           THE COURT:  Without any further delay, I find that the

13   enhancement is not warranted, and I decline to impose it.

14           Other than that, does the government have any

15   objections to the guideline calculation set forth in the

16   presentence report?

17           MR. LI:  No, your Honor.

18           THE COURT:  I find that the defendant is at total

19   offense level 40, criminal history category I.  The guideline

20   range is 292 to 365 months.  And I will give Ms. Gallicchio the

21   opportunity to speak.

22           MS. GALLICCHIO:  Thank you, your Honor.

23           I do also want to address, and perhaps maybe after we

24   make our statements, the question of the fine and the question

25   of the assessment.

1          I will begin with my argument with respect to

2     sentencing, your Honor.  Obviously, we have asked the Court to

3     consider a sentence of 10 years, which is the mandatory minimum

4     that the Court must impose.  It is our position that the

5     guidelines themselves, the guideline range that the Court has

6     found of 292 to 365 months, is excessive.  It's shockingly

7     unreasonable and, as we have indicated, unworthy of deference.

8     Honestly, it doesn't really seem to be that there is really

9     much dispute about that.  The Department of Probation is

10    clearly of the opinion, of that same opinion, by recommending a

11    sentence of 120 months.

12         If I may, even the government, though they don't

13    recommend a number of months, they don't suggest that the

14    guideline range is appropriate.

15         THE COURT:  I noticed that, Ms. Gallicchio.  The

16    silence on that point was deafening.

17         MS. GALLICCHIO:  Right.

18         We suggest that the Court seek guidance from the

19    sentencing practices in the district, which is why we provided

20    the Court with a sampling of cases that were in some regard

21    similar to the scenario that Mr. Bright was convicted of.

22    Obviously, it's hard to compare cases.  But this is what we

23    thought were good examples for the Court.  And the vast

24    majority of similarly situated defendants were sentenced only

25    to the mandatory minimum.

1          And I do recognize that in most of the examples

2     provided to the Court, they were guilty pleas.  However, I

3     think that can be balanced against or compensated by the fact

4     that the underlying conduct in those cases that we provided as

5     examples are actually, I think in most of them, more egregious

6     than that with which Mr. Bright was convicted of, including

7     cases where sexual conduct or contact actually took place.

8          So we ask the Court to look to sentences in this

9     district below guideline range.  Of course, our guideline range

10    is much more excessive than those others.  But based on the

11    nature of the underlying conduct, I think it's a fair

12    comparison to make.

13         Regardless, your Honor, a sentence in the guideline

14    range, whether it be, as the government has suggested, the 30

15    years to life, but as the Court has found, 292 to 365, is

16    certainly unreasonable, unwarranted, and irrational,

17    considering the other factors, considering 3553(a) factors.

18         Ten years, your Honor, is not a slap on the wrist.

19    It's an extreme sentence, even for the most hardened criminal.

20    And it's even more extreme and punishing for someone with no

21    prior record, like Mr. Bright, and someone like him, who

22    suffers from mental illness, and who, because of the offense of

23    conviction, will have a much more difficult and dangerous than

24    most.

25         Furthermore, your Honor, Mr. Bright is thousands of

miles away from his family and faces the real possibility that

he will never see his elderly father again, who is 83 years

old.  Certainly, this will be experienced as much more

punishing.

          Of course, Mr. Bright has already experienced extreme

punishment during his 18 months at the MCC, as I've already

indicated.  Despite the fact that pretrial detention is not

supposed to punish under normal times at the MCC, the

conditions are substandard and notoriously dangerous,

unsanitary, rat infested, and punitive.  But even more so now

that the pandemic has gripped the nation, its punishing nature

of the pretrial conditions of confinement have certainly

increased significantly.

          As the Court is well aware, I know I'm not the first

person who has made this argument to the Court, since March, at

least, there has been a perpetual lockdown.  And now, including

today, it is for 22 hours a day and that's on a good day.  It's

extremely debilitating and dehumanizing to be locked in a cell

for that amount of time every day for months on end.  In

addition, there is the constant fear of contracting the deadly

virus that exacts a price on a person's mental health,

including Mr. Bright's.

          The courts in this district, as the Court is aware,

and I know the Court has routinely taken this factor into

serious consideration when imposing sentence, and we are asking

1  your Honor to do the same in this case.

2          Your Honor, I would just like to also move on to this

3  case, the facts in this case, which don't contain the

4  aggregating factors that are commonly found in cases of this

5  type.

6          As the Court is well aware, there was no child

7  pornography found in this case, sent in this case, none

8  possessed, none produced, none traded.  There was no online

9  activity that incites children or teenagers.  There is no

10 online activity at all seeking minors.  And there is no

11 evidence of prior sexual contact with children.

12         Which leads me to Mr. Dr. Kaplan's report, which I

13 won't revisit in detail, but just to point out that, after a

14 battery of tests, Dr. Kaplan did not believe that there was any

15 hint of pedophilic or deviant sexual behavior.  She noted

16 Mr. Bright normal, not at all ill, and specifically that he was

17 not a pedophile.

18         Additionally, Mr. Bright's counselor, who he was

19 seeing about a year before he was arrested on this case, is in

20 complete agreement with that assessment and believes, as he

21 found, he meets no criteria for pedophilia.

22         I think those are factors important for the Court's

23 consideration and certainly do provide mitigation in support of

24 the sentence substantially below the guidelines range; if not,

25 a sentence of the mandatory minimum.

1          Lastly, your Honor, I would like to point to certainly

2     the history and characteristics of Mr. Bright and specifically

3     the letters of support that his family has provided to the

4     Court, which has provided a vivid picture of his childhood and

5     his struggles in life and particularly his struggle with

6     depression.  He does have a lifelong history of severe

7     depression, is diagnosed with major depressive disorder for

8     which he sought treatment in the community from a therapist,

9     and is on medication.

10          He has struggled with his depression during his

11     incarceration and certainly will continue to do so.  He has had

12     to adjust a new form of medication because the medication that

13     he was accustomed to is not one in which the BOP provides, and

14     he has certainly not received the degree and type of treatment

15     necessary to manage his illness.

16          And while hopefully things will be better in a state

17     facility, it never can be as good as what he actually requires

18     and would receive in the community.

19          His family, your Honor, is a hundred percent

20     supportive of Mr. Bright.  As I'm sure your Honor saw, his

21     family traveled from the UK to attend his sentencing

22     proceeding.  But their distance certainly will make his time in

23     prison even more challenging.

24          In sum, your Honor, considering all of the factors

25     discussed today and in our submission, we ask the Court to

1   impose a sentence of no more than the ten-year mandatory

2   minimum.

3          THE COURT:  Thank you, Ms. Gallicchio.

4          Mr. Bright, this is your opportunity to speak, to

5   bring to my attention any facts or circumstances that you

6   believe I should take account of in passing sentence upon you

7   today.  If there is anything you wish to say, this is the time

8   to say it.

9          THE DEFENDANT:  I have some specific things to say

10  just because I'm sure the prosecutor will make certain claims

11  that I would be lying to Dr. Kaplan and lying to my therapist.

12  I didn't lie to them.  Lying to my therapist in particular, who

13  I was paying a lot of money for, or my insurance company was,

14  would be entirely counterproductive.  I know if they get a hold

15  of my therapist, they deal with people with various sexual

16  issues, including people that identified themselves to him as

17  pedophiles.  If I was such a person, he would be someone who

18  would be safe to make an acknowledgement as part of his

19  experience and his expertise to talk to such people.  I didn't

20  identify myself as such because I am not.  I don't know.  And I

21  was not lying to my therapist over the course of a year.

22         THE COURT:  Thank you very much.

23         Ms. Gallicchio, you had something else you wanted to

24  say with regard to a fine.

25         MS. GALLICCHIO:  Yes, your Honor.  Thank you.

1          I know that the Department of Probation has

2    recommended a fine of $50,000 and the assessment pursuant to

3    the Justice for Victims of Trafficking Act.  That's a $5,000

4    assessment.  And it's our position, your Honor, that my client

5    does not have the ability to pay either the fine or the

6    assessment.  And I know the Court must make a finding of

7    indigency if that is the case.

8          I think that what the Department of Probation has

9    looked to are Mr. Bright's pensions that he has in the UK.  I

10   believe they are in the presentence report on page 13 in which

11   he has two pensions in the UK.  He has about $138 in the bank.

12   And then he has in the United States a $17,000 401(k) with

13   Condé Nast.

14         Your Honor, it's my understanding of the law in the

15   UK, based on my research, that pensions are not available to

16   someone until they reach the age of 55, and so he does not have

17   access to that money.  Currently he does not have the ability

18   to pay a fine or an assessment.  And with respect to his

19   401(k), early withdrawal would at least have, I suspect, about

20   a 20 percent withholding, leaving him with very little assets,

21   your Honor.

22         And so I would submit to the Court that a fine is not

23   appropriate, that Mr. Bright is, for all intents and purposes,

24   indigent.  His family is not here.  They are in the UK.  His

25   assets are in the UK.  And, therefore, he does not have the

1    ability to pay.

2              THE COURT:  Thank you.

3              MS. GALLICCHIO:  Thank you.

4              THE COURT:  Mr. Li, this is the government's

5    opportunity to speak.

6              MR. LI:  Thank you, your Honor.  I know the Court is

7    very well familiar of the facts from having tried the case

8    twice.  It's not my intention to summarize the trial or

9    sentencing submission.  Instead, I'd like to just take a few

10   minutes to respond to a few points that Ms. Gallicchio has very

11   capably made.

12             I think the thrust of what Ms. Gallicchio said is that

13   the defendant is not really a danger to the community.  And she

14   points to a few things.  First, she points to the offense

15   conduct, which -- I'll just sort of characterize her remarks

16   here, but I think the sense of it is, it's not as bad as it

17   could have been, that there are other cases in which other

18   defendants have been convicted of worse conduct.

19             I'd like to point out a few things.  One, the cases

20   that the defense cites in their submission largely involve

21   teenagers.  The age of the children here were seven and nine.

22   I do think that is a very important difference.  It is

23   different to attempt to engage in sexual activity with a

24   prepubescent child who really has no ability to resist, as

25   opposed to try to engage in sexual activity with a teenager.  I

1   do think that it's different in culpability and that does

2   require a different level of condemnation and deterrence.

3          I also take issue with this notion that the conduct

4   wasn't so bad.  And I don't think Ms. Gallicchio really

5   explicitly said this, but I think there was sort of an

6   underlying current that because this was a sting operation,

7   maybe he would have done differently if it were not a sting

8   operation because, for example, he didn't have postings online

9   that were explicitly looking for children.

10         I really don't agree with that.  Sting operations are

11  incredibly important because the whole purpose of them is to

12  deter and prevent somebody from engaging in sexual activity

13  when they do have that opportunity.  The defendant in this case

14  took some pretty incredible steps once he found out, by his own

15  admission, that the children in this case were real.

16         After he saw the photographs, after he saw the

17  photographs, he responded enthusiastically.  He sent a

18  photograph of his penis.  Later on he told the purported

19  mother, the FBI agent, that he was incredibly horny.  He met

20  her.  He showed her his STD test in person, and he brought four

21  condoms, and he tried to walk to the kid's home.

22         Yes, it was a sting operating, but we had every reason

23  to believe that had the defendant been confronted with a real

24  seven-year-old and a real nine-year-old, he would have done

25  exactly the same thing.  That's why he is here today and that's

1    why his conduct, it's so important to condemn it and to deter

2    it.

3           Now, Ms. Gallicchio has also pointed to the reports of

4    a psychologist and the defendant's psychotherapist who had been

5    treating him for some time.  I have every comfort that these

6    doctors evaluated him in good faith based on the information

7    that they had.

8           I do think that it's really difficult, really

9    impossible to square the ultimate conclusion that he is not a

10   pedophile with a verdict of the jury and the jury's implicit

11   finding that the defendant was not truthful when he testified

12   that he did not intend to have sex with the children in this

13   case.

14          I realize the Court has made its determination that

15   the defendant did not obstruct justice, and I understand the

16   Court's ruling, but, at a minimum, the defendant's testimony

17   was inconsistent with the verdict of the jury and with the

18   theory of the defense, that the defense put in this jury charge

19   before the jury, and there is every reason to believe that the

20   defendant gave the same information to his treating doctors

21   that he gave to the jury.

22          And I realize the defendant has said just now that he

23   has paid a lot of money for a psychotherapist and why would he

24   lie to his psychotherapist.  I don't think that having a sexual

25   attraction to children is a thing that most people are proud of

1  or that they would casually admit, certainly not to a jury, but

2  also not to a doctor, and I do think there is a reason to

3  believe that the defendant would not have been totally candid

4  with his doctors about something like that.

5       Unless the Court has any further questions, I don't

6  have anything further for the Court.  Thank you.

7       THE COURT:  This is the Court's statement of reasons

8  for the sentence to be imposed on Peter Bright.

9       In sentencing Mr. Bright I have considered all the

10 materials which I referenced at the outset of this proceeding.

11 I have considered very thoughtful observations of

12 Ms. Gallicchio and those of Mr. Li, both in writing and also

13 orally today.  I've considered Mr. Bright's statement.  I have

14 considered the joint letter from his parents and the letter

15 from each of his two sisters.  I have considered Dr. Meg

16 Kaplan's report.  And I have considered each of the factors

17 under Section 3553(a).  I need not recount all I have

18 considered, but I have considered them all.

19      With regard to the defense conduct, the government is

20 quite correct, I did preside at two trials.  I am thoroughly

21 familiar with the testimony.  I will say that while perhaps

22 raised in the postverdict motions or not raised in the

23 postverdict motions, I believe that the jury correctly found

24 the defendant guilty by proof beyond a reasonable doubt.  The

25 fact that I did not impose the obstruction-of-justice

1    enhancement does not mean that I believe the defendant's trial

2    testimony, and certainly the jury rejected it.

3          There are technical elements of perjury that would be

4    required for the obstruction enhancement, and I decline to

5    impose those, but that does not mean that I believe the

6    defendant's trial testimony.  I did not believe it.  And the

7    trial testimony of Mr. Bright was utterly inconsistent with the

8    ultimate finding of the jury as to his intent in committing the

9    crime.

10         The fact of the matter is that Mr. Bright testified

11   that he initially entered the KinkD site with an intent to

12   engage in role play and role play with adults posing as

13   children or pretending to be children.  And this Court, over

14   the objections of the government, allowed an expert to testify

15   on the subject of what is role play.

16         But the testimony of Mr. Bright was, there came a

17   point in time when it dawned on him that this was likely a real

18   person with real children who he was offering up for sexual

19   contact and that he decided that he would act as, if you will,

20   a private citizen to capture this pedophile mother.  That's

21   what the jury found was not true.  That was not his intent.

22         His intent was to take it as far as he could in

23   enticing, encouraging, and engaging in sexual activity with

24   these two young children and that's supported by how he

25   reacted, the text messages he sent, once he formed the belief

1    that the mother was offering up real children.

2         The crime of enticing or attempting to entice a minor

3    to engage in illegal sexual activity is of the utmost

4    seriousness in our society.  We individually as parents,

5    grandparents, and collectively as a society view the protection

6    of children as one of the highest obligations of a society, and

7    in this respect Mr. Bright's conduct transgressed.

8         It's very difficult to compare two different crimes,

9    but certainly relative to mere possession of child pornography,

10   this is a much more serious circumstance because there was a

11   real danger that had this been other than a sting operation

12   that real children could have been sexually molested and likely

13   their lives ruined.  So there is a need for just punishment.

14   There is a need to protect the public from further crimes of

15   this defendant which incarceration accomplishes.  There is also

16   a need to deter others.  Knowing that there is a long prison

17   sentence associated with it discourages others from engaging in

18   similar conduct.

19        I have considered the sentencing guidelines policy

20   statements and official commentary of the United States

21   Sentencing Commission.  I have considered it in an advisory

22   manner and recognize I'm not obligated to sentence within the

23   guidelines.  I recognize that I have variance discretion.

24        I also have considered the submission of

25   Ms. Gallicchio and the defense with regard to sentencings in

28

other cases with either greater aggravating factors or what the

defense views as similar mitigating or similar lack of

aggravating factors, and I acknowledge the need to avoid

unwarranted sentence disparities.

        Considering all of the foregoing, I intend to sentence

the defendant to 144 months' imprisonment, seven years'

supervised release.  I waive the fine based on limited assets,

limited earning ability, impose the $100 special assessment and

impose the $5,000 JVTA assessment.  I find that the defendant

is not indigent to the point that he is unable to pay that

$5,100.  The foregoing is, in my view, sufficient but not

greater than necessary to achieve the purposes of Section

3553(a).

        Does the defendant or his counsel have any objections

to the Court's proposed sentence or the statement of reasons

for that sentence?

        Ms. Gallicchio.

        MS. GALLICCHIO:  No, your Honor.

        THE COURT:  Same question for the government.

        MR. LI:  No, your Honor.

        THE COURT:  Peter Bright, it is the judgment of this

Court that you are hereby remanded to the custody of the United

States Bureau of Prisons to be imprisoned for 144 months.

        Following release from imprisonment you shall be

placed on supervised release for seven years with the following

terms and conditions:  You must not commit another federal,
state, or local crime.  You must not unlawfully possess a
controlled substance.  You must refrain from any unlawful use
of a controlled substance.  You must submit to one drug test
within 15 days of release from imprisonment and at least two
periodic drug tests thereafter.  You must cooperate in the
collection of DNA as directed.  You must comply with the
requirements of the Sex Offender Registration and Notification
Act as directed by probation, the Bureau of Prisons, or any
state sex offender registration agency in which you reside,
work, are a student, or were convicted of an offense, of a
covered offense.

You must comply with the standard conditions of
supervision, which are set forth in conditions 1 through 12 on
pages 23 and 24 of your presentence report recommendations
section, with the following special conditions:  You shall
submit your person and any property, residence, vehicle,
papers, computer, or other electronic communication data
storage devices, cloud storage, or media and effects to a
search by any probation officer and, if needed, with the
assistance of any law enforcement.  The search is to be
conducted when there is reasonable suspicion concerning a
violation of a condition of supervision or unlawful conduct by
the person being supervised.  Failure to submit may be grounds
for revocation.  You shall warn any other occupants that the

1    premises may be subject to search pursuant to this condition.

2    Any search shall be conducted at a reasonable time and in a

3    reasonable manner.

4           You shall permit probation to install any application

5    or software that allows it to survey and/or monitor all

6    activity on any computer, automated service, or connected

7    devices that you will use during the term of supervision and

8    that can access the Internet.  These are collectively referred

9    to as the devices.  And the probation office is authorized to

10   install such applications or software.  Tampering with or

11   circumventing the monitoring capabilities is prohibited.

12          To ensure compliance, you must allow the probation

13   officer to conduct initial and periodic unannounced

14   examinations of any devices that are subject to monitoring.

15   You must notify any other people who used the devices that they

16   are subject to examination pursuant to this condition.  You

17   must provide probation advanced notice of planned use of any

18   device and will not use any devices without approval until

19   compatibility, i.e., software operating system, e-mail browser,

20   e-mail, web browser is determined and installation is

21   completed.  Applications for your devices shall be approved by

22   probation once the probation office ensures compatibility with

23   the surveillance monitoring application or software.

24          Websites, chat rooms, messaging, and social networking

25   sites shall be accessed via the device, web browser, unless

otherwise authorized.  You will not create or access any

Internet service provider or encounter other online services

using someone else's account, name, designation, or alias.  You

will not utilize any peer-to-peer and/or file-sharing

applications without the prior approval of your probation

officer.  The use of any devices in the course of employment

will be subject to monitoring or restriction as permitted by

the employer.

You shall undergo a sex-offense-specific evaluation

and participate in an outpatient sex offender treatment and/or

outpatient mental health treatment program approved by

probation.  You shall abide by all rules, requirements, and

conditions of the sex offender treatment program, including

submission to polygraph testing and refraining from accessing

websites, chat rooms, instant messaging, or social networking

sites to the extent that the sex offender treatment and/or

mental health treatment program determines that such access

would be detrimental to your ongoing treatment.

You will not view, access, possess, and/or download

any pornography involving adults unless approved by the

sex-offender-specific treatment provider.  You must waive your

right of confidentiality and any records from mental health

assessment and treatment imposed as a consequence of this

judgment to allow probation to review the course of treatment

and progress with the treatment provider.  You must contribute

1    to the cost of services rendered based on your ability to pay

2    and the availability of third-party payments.

3           The Court authorizes the release of available

4    psychological and psychiatric evaluations and reports,

5    including the PSR, to the sex offender treatment provider

6    and/or mental health treatment provider.  You must not have

7    deliberate contact with any child under 18 years of age unless

8    approved by probation.  You must not loiter within 100 feet of

9    places regularly frequented by children under the age of 18,

10   such as school yards, playgrounds, and arcades.  You must not

11   view and/or access any web profile abusers under the age of 18.

12   This includes, but is not limited to, social networking

13   websites, community portals, chat rooms, or other online

14   environment, audio visual or messaging, etc., which allows for

15   real-time interaction with other users without prior approval

16   from your probation officer.

17          You are restricted from viewing, accessing,

18   possessing, and/or downloading any sexually explicit material

19   involving minors, including those created via the method of

20   morphing or other image creation format.  You will not view or

21   possess any visual depiction, including any photograph, film,

22   video, picture or computer generated image or picture, whether

23   made or produced by electronic mechanical or other means of

24   sexually explicit conduct by a minor under the age of 18.

25          You will inform the probation office prior to

accessing any websites within the following categories:  Adult,

alternative lifestyles, chat and social networks, dating and

personals, download media downloads, free hosting, gambling,

hacking, and Warez, illegal activities, kids and teens,

lingerie, park domains, sex education, weapon related, web

mail, and XXX for the first time and will not access any such

websites until such access is approved by the probation office.

The probation office must approve within three business days

any such access unless the volume of that request makes that

impractical, in which case probation may seek the Court's

approval for more time.

You will not access any websites, chat rooms, instant

messaging, or social networking sites where your criminal

history, including this conviction, would render such access in

violation of the terms of service of that website, chat room,

instant messaging, or social networking site.

If the probation officer determines, based on your

criminal record, personal history or characteristics, that you

pose a risk to another person, including an organization, the

probation officer, with the prior approval of the Court, may

require you to notify the person about the risk, and you must

comply with that instruction.  The probation officer may

contact the person and confirm that you have notified the

person about the risk.  You must provide the probation officer

with access to any requested financial information.  You must

1    not incur new charges or open additional lines of credit

2    without the approval of the probation officer, unless you are

3    in compliance with the installment payment schedule.

4         It is further ordered that you must pay to the United

5    States a special assessment of $100, which shall be due

6    immediately.  You are subject to the provisions of the Justice

7    for Victims of Trafficking Act of 2015.  The Court assesses

8    $5,000 upon you under that act.  The fine is payable within 90

9    days of the judgment in this case.

10        As noted, the special assessment is due immediately.

11   Any other fine is deemed waived.  If the defendant is engaged

12   in a BOP non-UNICOR program, the defendant must pay $25 per

13   quarter towards the criminal financial penalties.  However, if

14   the defendant participates in the BOP's UNICOR program, as a

15   grade 1 through 4, the defendant must pay 50 percent of your

16   monthly UNICOR earnings towards the criminal financial

17   penalties consistent with BOP regulations.

18        Is the government seeking forfeiture?

19        MR. LI:  The government is not seeking any monetary

20   forfeiture.  There is forfeiture of the two devices.  I can

21   provide the IMEI number for the devices.  These are the two

22   phones on the defendant's person at the time of his arrest.

23        THE COURT:  The defendant shall forfeit to the United

24   States any and all property, real and personal, constituting or

25   derived from proceeds obtained, directly or indirectly, as a

1  result of the offense and any and all property, real and

2  personal, that was used or intended to be used to commit or

3  facilitate the commission of said offense, including, but not

4  limited to, two cell phones that were found on the person of

5  the defendant at or about the time of his arrest.

6        Mr. Bright, you have the right to appeal the sentence

7  I have imposed on you.  If you cannot afford the cost of an

8  appeal, you may apply for leave to appeal as a poor person.

9  The time limits for filing a notice of appeal are brief and

10  they are strictly enforced.  If you request, the clerk of court

11  will prepare and file a notice of appeal on your behalf

12  immediately.

13        Do you understand that?

14        THE DEFENDANT:  I do, yes.

15        THE COURT:  Anything further from the government?

16        MR. LI:  No, your Honor.

17        THE COURT:  Anything further from the defendant?

18        MS. GALLICCHIO:  Your Honor, I just want to get

19  clarification again with respect to the letter brief the Court

20  wishes us to file by noon on the 6th.

21        THE COURT:  Yes.  You will find on the ECF filing in

22  this case a letter, dated November 2, 2020, from Inner City

23  Press, Mr. Lee.  And essentially the parties should show cause

24  why I ought not grant that request.  And I've told you about

25  the *King* case decided by Judge Koeltl and, of course, this

1  request relates to both the defendant's sentencing submission

2  and also the report of Dr. Kaplan.

3          Now, it may well be, reading the *King* case, that

4  following *King* it may be there is information about third

5  persons which would not usually be considered material or may

6  not have been material here.  So you can take whatever position

7  you want and an alternative position, if you are going to order

8  it, that the following redactions be made.  That you would have

9  to spell out with specificity.

10         MS. GALLICCHIO:  Understood.

11         THE COURT:  Anything further from the defendant?

12         MS. GALLICCHIO:  No, your Honor.  Nothing further.

13         THE COURT:  Anything further from the government?

14         MR. LI:  No.  Thank you, your Honor.

15         THE COURT:  Mr. Bright, I wish you and your family

16  peace, good health, and I wish you a long life, and I hope that

17  you will engage in self reflection and continue on the path of

18  endeavoring to maintain good mental health as well as physical

19  health.

20         We are adjourned.  Thank you, all.

21         (Adjourned)

22

23

24

25