UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                   :

PETER BRIGHT,                      :

                             :    22 Civ. 8847 (PKC) (SN)

               Petitioner,    :    19 Cr. 521 (PKC)

                             :

        - v. -               :

                             :

UNITED STATES OF AMERICA,    :

                             :

              Respondent.    :

                             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

<br>

## MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA
## IN OPPOSITION TO PETITIONER PETER BRIGHT'S MOTION TO VACATE AND
## SET ASIDE HIS CONVICTION AND SENTENCE

<br>
<br>

                                  DAMIAN WILLIAMS
                                  United States Attorney for the
                                  Southern District of New York
                                  One St. Andrew's Plaza
                                  New York, NY 10007

Lisa Daniels
Assistant United States Attorney
    *Of Counsel*

<u>**TABLE OF CONTENTS**</u>

**PRELIMINARY STATEMENT** ................................................................................................. **1**

**BACKGROUND** ...................................................................................................................... **1**

    A.   THE INDICTMENT ........................................................................................................... 1

    B.   THE FIRST TRIAL ............................................................................................................ 2

    C.   THE SECOND TRIAL ....................................................................................................... 2

    D.   THE GOVERNMENT'S CASE ............................................................................................. 2

    E.   BRIGHT'S RULE 29 MOTION .......................................................................................... 6

    F.   THE DEFENSE CASE ....................................................................................................... 6

    G.   THE VERDICT AND POST-TRIAL MOTION ...................................................................... 7

    H.   THE APPEAL .................................................................................................................. 8

**ARGUMENT** ......................................................................................................................... **8**

    A.   APPLICABLE LAW .......................................................................................................... 8

    B.   DEFENSE COUNSEL DID NOT PROVIDE INEFFECTIVE ASSISTANCE OF COUNSEL .................... 10

        1.   Defense Counsel Was Not Constitutionally Ineffective Regarding an Entrapment
           Defense or for Declining to Present an Entrapment Defense at Trial ................................ 11

        2.   Defense Counsel Was Not Constitutionally Ineffective for Failing to Make Certain
           Objections at Trial ........................................................................................................ 13

        3.   Defense Counsel was Not Constitutionally Ineffective in Filing Post-Trial Motions .. 15

        4.   Bright is Not Entitled to Relief Based on the Onset of the COVID-19 Pandemic. ....... 15

    C.   BRIGHT IS PROCEDURALLY BARRED FROM ASSERTING A CLAIM THAT HE WAS ................... 15
       DEPRIVED OF THE RIGHT TO A FAIR TRIAL BECAUSE HE FAILED TO RAISE THE CLAIM ON
       DIRECT APPEAL ............................................................................................................ 15

    D.   BRIGHT CANNOT ESTABLISH A CONSTITUTIONAL VIOLATION BASED ON THE ONSET OF THE
       COVID-19 PANDEMIC ................................................................................................ 17

**CONCLUSION** ...................................................................................................................... **21**

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to the motion of Petitioner Peter Bright ("Bright") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (the "Petition"). Following a one-week trial, Bright was convicted of attempted enticement of a minor to engage in illegal sexual activity, in violation of 18 U.S.C. § 2422(b). The Court sentenced Bright to 144 months' imprisonment. The conviction and sentence were affirmed on appeal.

Bright argues that his conviction and sentence should be vacated because he contends that his trial attorney was ineffective in: (1) advising him regarding an entrapment defense, failing to seek a jury instruction regarding entrapment, and failing to argue that Bright was entrapped; (2) failing to object to statements in the Government's jury addresses and to certain questions the Government asked a witness; and (3) failing to argue fully in post-trial briefing insufficiency of the evidence. Bright argues also that he was denied his constitutional right to a fair trial because he asserts that jurors were influenced, distracted, and under pressure to reach a verdict as a result of the onset of the COVID-19 pandemic at or around the time the jury began deliberating. For the reasons explained below, the Petition is meritless and should be denied in its entirety without a hearing.

## BACKGROUND

### A. The Indictment

On May 23, 2019, Peter Bright was charged by complaint with one count of attempted enticement of a minor to engage in illegal sexual activity, in violation of 18 U.S.C. §§ 2422(b) and 2. (Docket Entry ("Dkt.")[1] 1). On July 16, 2019, a grand jury in this District returned an

---

[1] Dkt. refers to the docket in *United States v. Bright*, 19 Cr. 521 (PKC).

indictment, 19 Cr. 521, containing the same charge.  (Dkt. 9).  Following Bright's arrest, Amy Gallicchio, Federal Defenders of New York, was appointed to represent Bright.  Gallicchio represented Bright through trial and post-trial motions.

### B.  The First Trial

The first trial against Peter Bright commenced on February 11, 2020. (Dkt. 55). During the trial, Bright testified in his own defense.  On February 19, 2020, after the jury was unable to reach a unanimous verdict, the Court declared a mistrial.  (Dkt. 60).

### C.  The Second Trial

Bright was retried before a new jury in March 2020.  Trial began on March 10, 2020.  (Dkt. 75).  The Government rested on March 12, 2020, the defense put in its case on March 12 and 13, during which Bright again testified in his own defense, and after closing arguments and jury instructions, the jury began deliberating on Friday, March 13.  (Dkt. 79, 81).  On Monday, March 16, 2020, the jury continued to deliberate, though one juror was absent because the juror was sick. (Dkt. 83).  Later that day, the eleven-person jury returned a verdict of guilty.  (Dkt. 83).

### D.  The Government's Case

During the second trial, the Government presented evidence that Peter Bright attempted to engage in sexual activity with two children—a nine-year-old boy and a seven-year-old girl—by discussing, planning, and coordinating with their mother.  The mother was, in fact, an undercover FBI agent.

The Government presented testimony from four witnesses, including the undercover FBI agent.  In addition, the Government presented evidence that included chats with the undercover FBI agent on two messaging apps, a recording of a meeting between Bright and the undercover FBI agent created by Bright himself, items—including condoms—that Bright brought with him to

the meeting where he thought he was going to meet the children and engage in sexual activity, and Bright's post-arrest statements.

1.  Bright's Initial Meeting Online with a Purported Mother

In April 2019, Bright first met a woman on the online fetish platform KinkD whose profile stated that she was a "[m]ommy" who was "[l]ooking for a teacher to teach my kids about the birds and the bees."  (GX 1; Tr. 32–33).  The woman, in fact, was an undercover FBI agent posing as the mother of two children.  Bright asked the purported mother for more information.  She responded that the children, "Kayla" and "Brayden," were seven and nine years old, respectively. (Tr. 39–40, 50).  Bright and the purported mother continued communicating and moved their discussion to the online messaging application WhatsApp.  (Tr. 41–42).

2.  Bright's Communications with the Purported Mother in April and May 2019 Regarding Engaging in Sexual Activity with the Seven-Year-Old Girl and Nine-Year-Old Boy

In conversations in April and May 2019, Bright described to the purported mother in graphic detail his intent and desire to give the children sexual "lessons."  (GX 3A at 61).  The lessons Bright planned included teaching the children to handle the foreskin of his penis, to lick and rub his penis, and to penetrate the seven-year-old girl with a finger or small toy.  (GX 3A at 46, 69).  From May 14, 2019 through May 22, 2019 alone, Bright exchanged 769 messages with the purported mother on WhatsApp.  (GX 3A).  In these messages, Bright was explicit, stating: "I'm thinking maybe something involving foreskin is the way to start."  (GX 3A at 46).  In a recorded phone call, Bright confirmed his intent stating that he wanted the first sexual "lesson" to involve "the whole foreskin thing," and that he hoped to do the lessons "weekly."  (GX 5-B, 5-C; GX 5T at 2–3; Tr. 57).

In addition to discussing the sexual activity in which he intended to engage with the children, Bright repeatedly pressed the purported mother for photographs of Kayla and Brayden.

(GX 3A at 23, 28, 74).  The undercover agent sent photographs of what appeared to be young children.  She also sent a photograph that appeared to be her preparing to perform cunnilingus on the seven-year-old girl, referring to it as "play time."  Bright responded almost immediately stating: "Play time sounds fabulous."  (GX 3A at 76).

Bright also sent the purported mother screenshots of his test results for sexually transmitted diseases.  (GX 3O, 3I; Tr. 52–53).  He stated that he "greatly prefer[s] partners who are tested and clean," "because condoms are much less fun."  (GX 3A at 81).  "That way," he said, "condoms can be restricted to lessons about condoms."  (GX 3A at 82).

3. <u>Bright's Meeting with the Purported Mother to Engage in Sexual Activity with the Seven-Year-Old Child and Nine-Year-Old Child</u>

In May 2019, Bright and the purported mother arranged to meet in person to then go back to the mother's apartment for Bright to begin the sexual "lessons" with the seven-year-old girl and nine-year-old boy.  Two days before the meeting, Bright stated to the mother:  "So my concern is, am I being set up here? . . . I was struck by the fear yesterday that I'd be met by a cop or something." (GX 3A at 84).  The purported mother responded that she had the same concern about Bright, which mollified Bright.  (GX 3A at 84–85, 89).

Shortly before the meeting, Bright messaged the mother to make sure they would be able to plan the children's "lessons," including what they would have the children do that day:

Bright:   I was hoping we might talk a little before they got home

Mother:   Ok - talk about what?

Bright:   Mainly just practicalities, availability, that kind of thing.

Mother:   Practicalities?

Bright:   Just, making sure we're on the same page about their lessons, that their lessons will be frequent enough, that kind of thing.

Mother:   Hmmm, what do you mean frequent enough?

4

|          | And same page regarding lessons? |
|----------|-----------------------------------|
| Bright:  | I think once or possibly twice a week would be my limit |
| Mother:  | Ok that works well. What are you interested in doing today with them? |
| Bright:  | Introductions, showing me what they know already. Getting familiar with each other. |

(GX 3A at 129–31).

When Bright showed up to meet Kayla and Brayden and begin their lessons, he first showed the mother his online test results for sexually transmitted diseases and "talked about logistics and how often to meet." (Tr. 76). The mother, in turn, spoke with Bright about meeting her children and confirmed that he wanted to walk over to her home. (Tr. 76). As they walked to the apartment to meet the children and begin their lessons, Bright was arrested. (Tr. 76–77). Bright had four condoms with him at the time of his arrest. (Tr. 221–26; GX 10). Bright had also recorded his meeting with the mother. (Tr. 226–27; GX 6).

After his arrest, Bright spoke with law enforcement agents in a video-recorded post-arrest statement. (Tr. 236–37; GX 9). Among other things, Bright claimed that he initially thought his eventual sexual partners were adults pretending to be children. (GX 9-1; GX 9T at 3). Once he received photographs of real children, however, Bright realized that this was not fantasy and therefore, Bright claimed, he resolved to try to gather evidence against their mother. (GX 9-2, 9-4; GX 9T at 7, 11). Despite the fact that he claimed he had suddenly turned into a vigilante, Bright did not approach the authorities with the chats already in his possession, claiming that he "didn't even think of that." (GX 9-13, 9T at 27).

### E. Bright's Rule 29 Motion

At the close of the Government's case, Bright's counsel moved for acquittal, arguing that

there was insufficient evidence that Mr. Bright attempted to persuade or induce the children

through the mother:

> MS. BAHARANYI: We would, at this time, move for a judgment of acquittal—the basis
> being: Even viewing the evidence in the light most favorable to the government, there's
> not sufficient evidence that Mr. Bright ever attempted to persuade or induce the children
> through the mother. There's no evidence that he ever tried to send photos to the children,
> or ask that photos be sent to the children, that he ever offered anything to the children,
> offered any promises, or money of the sort.  And, in fact, the evidence shows that the
> mother already had some preexisting plan involving these children and other teachers.
>
> The evidence, in the light most favorable to the government, shows only that Mr. Bright
> would have been joining some preexisting plan other than inducing children to do
> something that they weren't already being encouraged to do.
> For that reason, we would ask that the Court grant this Rule 29 motion.
>
> MR. LI: Your Honor, the law permits the government to prove its case by showing that
> the defendant attempted to persuade the children through a third party, in this case, the
> mother. The defendant engaged in extensive discussions with the mother about specific
> sexual acts he wanted to undertake with the children, including putting a finger in the girl
> or a toy in the girl, and, through the mother, he attempted to persuade the children to
> engage in those sexual activities.
>
> MR. MAIMIN: And I think that it bears addition that, in the conversations that he had, he
> made clear that he was going to do things to help make them comfortable with it. He said
> he wanted to meet with them in advance so he could figure out what their comfort level
> was, how far they wanted to go, and he discussed how he would teach them so that they
> could learn, which would be, presumably, an incentive, at least from his mind, to them to
> learn to engage in adult sexual acts.
>
> THE COURT: All right. Thank you, both.
>
> The motion is denied.

(Tr. 299–300).

### F. The Defense Case

The defense called Dr. James Cantor, a clinical psychologist.  Bright also testified in his

own defense.  Dr. Cantor testified that "age play" is a type of sexual kink in which "participants

are pretending that they're a different age than what they are." (Tr. 310).  Building on Dr. Cantor's testimony, Bright testified that when he first met the mother on KinkD, he believed she was an "age player" and that her children were "littles," *i.e.*, adults pretending to be children.  (Tr. 379–80).  Bright testified that, after he saw the photographs of actual children, he realized she was either a "scammer" or a "child molester."  (Tr. 448).  Bright testified that he resolved to "play along" because if the mother was, in fact, a child molester, then he needed to "get some evidence, get a recording, and give that recording to law enforcement."  (Tr. 449).  Bright claimed that he met the mother in person in order to learn where she lived and to record an incriminating statement (Tr. 472–73), and that the condoms he carried at the time of his arrest were from a date the preceding Friday (Tr. 429–30).  Contrary to his post-arrest statement that he "didn't even think" of bringing the chat logs to the police, however, Bright testified that he considered turning over the chats but did not want to surrender his phone.  (Tr. 467–68, 472).  Bright admitted that his contrary statement to the FBI was a lie.  (Tr. 472, 541).

Additionally, Bright generally attacked the investigation, arguing that the FBI had not sufficiently researched the "kink" community before investigating Bright, both during jury addresses and cross-examination.

Bright did not renew his motion for judgment of acquittal at the close of his case.  (Tr. 551–53).

### G. The Verdict and Post-Trial Motion

On March 16, 2020, the jury returned a verdict finding Peter Bright guilty of attempted enticement of a minor to engage in illegal sexual activity.  (Dkt. 83).  Subsequently, Bright, through counsel, moved for judgment of acquittal.  (Dkt. 87).  In his post-trial Rule 29 motion, Bright did not raise any new arguments.  He renewed his trial motion on the existing record.  (Dkt. 87).  On

September 16, 2020, the Court concluded that there was sufficient evidence for a reasonable jury

to conclude that Bright attempted to entice a minor to engage in illegal sexual activity in violation

of 18 U.S.C. § 2422(b) and therefore denied Bright's motion.  (Dkt. 92).

### H.  The Appeal

Bright appealed his conviction arguing that: (1) the District Court deprived him of an

impartial jury when it, according to Bright, refused to ask prospective jurors about their prejudices

against people who pursue nonconventional sexual practices with sufficient specificity; (2) the

District Court improperly excluded testimony of Bright's expert regarding the lack of connection

between age play and pedophilia; and (3) the District Court improperly admitted certain evidence

under Rule 404(b).  The Second Circuit concluded that the arguments lacked merit and accordingly

affirmed the judgment of the District Court.  *United States v. Peter Bright*, No. 20-3792, 2022 WL

53621 (2d Cir. 2022).

## ARGUMENT

### I.  Bright Has Not Established Constitutionally Ineffective Assistance of Counsel.

### A.  Applicable Law

A defendant seeking to attack his conviction based on ineffective assistance of counsel

must overcome a high hurdle.  He must: (1) show that counsel's performance "fell below an

objective standard of reasonableness" under "prevailing professional norms"; and (2)

"affirmatively prove prejudice," *i.e.*, demonstrate that "there is a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been different."

*Strickland v. Washington*, 466 U.S. 668, 687-89, 693-94, 104 S. Ct. 2052, 2064-65, 2067-68

(1984); *accord United States v. Vegas*, 27 F.3d 773, 777 (2d Cir. 1994).  In analyzing a claim that

trial counsel's performance fell short of constitutional standards, a court "'must indulge a strong

presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that 'there are countless ways to provide effective assistance in any given case' and that 'even the best criminal defense attorneys would not defend a particular client in the same way.'" *Aguirre*, 912 F.2d at 560 (quoting *Strickland*, 486 U.S. at 689).

Under *Strickland*,

> [an attorney's] strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.

*Strickland*, 466 U.S. at 690-91.  Decisions such as when to object and on what grounds are primarily matters of trial strategy and tactics that fall under this principle.  *United States v. Cohen*, 427 F.3d 164, 170 (2d Cir. 2005) (citing *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004)).

Whether to raise one defense over another is also a strategic decision and "the mere existence of a potential alternative defense theory is not enough to establish ineffective assistance based on counsel's failure to present that theory."  *Rosario-Dominguez v. United States*, 353 F. Supp. 2d 500, 513 (S.D.N.Y. 2005) (citing *United States v. Diaz*, 176 F.3d 52, 113 (2d Cir. 1999)).  A "lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision.  *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996)); *see United States v. Kirsh*, 54 F.3d 1062, 1072 (2d Cir. 1995).

A reviewing court must assess performance "as of the time of counsel's conduct," *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066, and may not use hindsight to evaluate strategy choices.  *United States v. Jones*, 918 F.2d 9, 11-12 (2d Cir. 1990).  To that end, a defendant cannot

prevail on a claim of ineffective assistance merely because he believes that his counsel's strategy was inadequate. *United States v. Sanchez*, 790 F.2d 245, 253 (2d Cir. 1986).

Finally, even if an attorney's performance was objectively unreasonable and unprofessional, the defendant must also prove prejudice. The defendant "must show 'that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 842 (1993) (quoting *Strickland*, 466 U.S. at 687). In other words, the defendant must show "a reasonable probability" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Moreover, "an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." *Lockhart*, 506 U.S. at 369. Thus, "the prejudice component of the *Strickland* test . . . focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Id*. at 372.

### B. Defense Counsel Did Not Provide Ineffective Assistance of Counsel

Bright primarily raises three alleged deficiencies in the performance of his trial attorney, Amy Gallicchio. He argues that his trial attorney was ineffective in: (1) advising him regarding an entrapment defense, failing to seek a jury instruction regarding entrapment, and failing to argue that Bright was entrapped; (2) failing to object to statements in the Government's jury addresses and to certain questions the Government asked a witness; and (3) failing to argue fully in post-trial briefing insufficiency of the evidence. Whether taken separately or together, the claims fall far

short of the high bar that Bright must meet in order to establish ineffective assistance under *Strickland*.

1.  Defense Counsel Was Not Constitutionally Ineffective Regarding an Entrapment Defense or for Declining to Present an Entrapment Defense at Trial

Bright claims that his trial counsel was ineffective for failing to: (1) counsel him adequately regarding an entrapment defense; (2) seek a jury instruction regarding entrapment; and (3) argue that Bright had been entrapped.  Brightfails to establish, however,  that the decision not to present an entrapment defense was unreasonable and that but for this decision, there is a reasonable probability that the result at trial would have been different.

The decision not to assert an entrapment defense at trial was a reasonable strategic decision in light of the risks associated and low likelihood of success of such a defense.  *See Strickland*, 466 U.S. at 690-91; *Brito v. United States*, No. 13 Cr. 589 (PKC), 2017 WL 3142074, at *5 (S.D.N.Y. July 24, 2017).  To successfully assert the defense of entrapment, a defendant must demonstrate, by a preponderance of the evidence, "(1) government inducement of the crime, and (2) lack of predisposition on the defendant's part." *United States v. Bala*, 236 F.3d 87, 94 (2d Cir. 2000).  "A defendant is predisposed to commit a crime if he is 'ready and willing without persuasion' to commit the crime charged and 'awaiting any propitious opportunity' to do so." *United States v. Salerno*, 66 F.3d 544, 547 (2d Cir. 1995) (quoting *United States v. Harvey,* 991 F.2d 981, 992 (2d Cir. 1993)).  Predisposition may be shown by evidence of "(1) an existing course of criminal conduct similar to the crime for which [the defendant] is charged, (2) an already formed design on the part of the accused to commit the crime for which he is charged, or (3) a willingness to commit the crime for which he is charged as evidenced by the accused's ready response to the inducement." *Id.* (internal quotation marks omitted).

The record demonstrates that Bright not only was willing but eager to commit the egregious crime for which he is charged.  In his messages with the purported mother of the nine-year-old boy and seven-year-old girl, Bright stated, among other things, that he wanted to give the children sexual lessons, that his plan for the first lesson involved "the whole foreskin thing," and that he hoped to do the lessons "weekly."  (GX 5-B, 5-C; GX 5T at 2–3; Tr. 57).  Because this and other evidence shows Bright's "willingness to commit the crime," it is unlikely that an entrapment defense would have been successful.  *See Jimenez v. United States*, No. 10-CR-316 (KBF), 2015 WL 5098075, at *6-7 (S.D.N.Y. Aug. 31, 2015) (denying ineffective assistance claim for failure to raise entrapment defense when such defense was not supported by the evidence and was unlikely to succeed at trial); *see also Avendano v. United States*, No. 02-CR-1059 (LTS), 2009 WL 137035, at *6 (S.D.N.Y. Jan. 21, 2009) (denying ineffective assistance claim for failure to raise entrapment defense when there was "no obvious weakness in the Government's evidence that would undermine an inference that Petitioner was predisposed to enter into the agreements for which he was convicted").

Moreover, the entrapment defense is "risky and rarely successful" because it "in effect admits that the defendant engaged in criminal conduct, and attempts to explain away the commission of criminal acts," and generally "dilute[s] the force of a denial of wrongdoing."  *Jimenez*, 2015 WL 5098075, at *6-7 ("Even if, as [defendant] contends, he had to be convinced to participate in the scheme through others' persistent requests, it was reasonable for [defendant's] counsel to conclude that [defendant] had shown 'a willingness to commit the crime' as demonstrated by a 'ready response to the inducement.'") (quoting *Salerno*, 66 F.3d at 548); *United States v. Balis*, No. 03-CR-1028 (GEL), 2009 WL 1117274, at *6 (S.D.N.Y. Apr. 24, 2009);  *Aluear-Rodriguez v. United States*, No. 95 Civ. 2381 (KTD), 1996 WL 67939, at *2

(S.D.N.Y. Feb. 15, 1996) (failure to raise entrapment defense did not constitute ineffective assistance of counsel because an entrapment defense "could materially harm the interests of the defendant and has a small likelihood of success at trial") (citing *Isaraphanich v. United States*, 632 F. Supp. 1531, 1534 (S.D.N.Y. 1986) ("it is a matter of legal realism that [entrapment] defenses rarely succeed")).   Therefore, it was reasonable for Bright's trial counsel to pursue a different strategy.

For similar reasons, Bright fails to show prejudice from Gallicchio's performance regarding an entrapment defense.  Bright asserts that had he understood the defense, he would have demanded that his counsel assert it at trial.  But even so, Bright does not and cannot demonstrate a reasonable probability that the result would have been different because the record does not support an entrapment defense and, as several courts in this district have recognized, it is a strategy that is rarely successful and carries considerable risk that it will backfire.

## 2. Defense Counsel Was Not Constitutionally Ineffective for Failing to Make Certain Objections at Trial

Bright claims that trial counsel was ineffective for failing to object to: (1) the Government's reference in its opening statement to Bright's statement to law enforcement at the time of his arrest that he was a journalist; (2) the Government's questioning of a witness, the editor-in-chief of Bright's employer at the time, regarding whether Bright's work involved investigative journalism or writing about child exploitation; (3) the Government's argument in summation that Bright's testimony was not credible; and (4) the Government's characterization of the defense theory and expert testimony related to age play.  The arguments lack merit.

The failure to raise an otherwise futile objection does not render counsel ineffective. *See Cuevas v. Henderson,* 801 F.2d 586, 592 (2d Cir.1986) (concluding that because "[t]he prosecutor's summation was appropriate . . . defense counsel's failure to object does not support a

conclusion that his performance was not reasonably competent"). And the decision of whether to object to an arguably improper remark in the Government's opening statement or closing argument or to wait and attack it in the defense opening or closing argument is "strictly a matter of tactics." *United States v. Daniels,* 558 F.2d 122, 127 (2d Cir. 1977).

Bright's counsel's decisions not to object to the statements and questions cited were reasonable because any objections would have been futile. First, the Government's reference in its opening statement to Bright's statement to law enforcement at the time of his arrest that he was a journalist was appropriate because it was "based squarely on the evidence." *United States v. Salameh*, 152 F.3d 88, 138 (2d Cir. 1998). Second, the Government's questioning of the editor-in-chief was relevant and proper in light of Bright's statement to law enforcement at the time of his arrest that he was a journalist. Third, the Government's argument in its summation regarding Bright's lack of credibility was a fair inference that the jury was entitled to draw from the evidence. *United States v. Bonventre*, 646 Fed. App'x 73, 88 (2d Cir. 2016) (summary order) (citing *Salameh*, 152 F.3 at 138). Fourth, the Government's argument in closing that the defense of age play is irrelevant to whether Bright intended to have sex with children was accurate and in no way shifted the burden of evidence as Bright suggests. Trial counsel's decisions not to object therefore were reasonable.

Moreover, Bright has failed to establish prejudice from counsel's decisions not to object to these statements and questions. In light of the significant evidence against the defendant presented at trial, "there is little reason to believe that alternative counsel would have fared any better." *United States v. Cohen*, 427 F.3d 164, 171 (2d Cir. 2005) (quoting *United States v. Simmons*, 923 F.2d 934, 956 (2d Cir. 1991)).

3.  Defense Counsel was Not Constitutionally Ineffective in Filing Post-Trial Motions

Bright argues that his counsel was ineffective in failing to argue fully the insufficiency of the evidence in the Rule 29 motion.  Bright, however, cannot demonstrate ineffective assistance on this basis.  There is no requirement that defense counsel file motions—let along lengthy or detailed motions—where such motions would be unavailing.  *See Awulye v. United States*, 2020 WL 774093, at *4 (S.D.N.Y. Feb. 18, 2020) (citing *United States v. DiTommaso*, 817 F.2d 201, 215 (2d Cir. 1987).  The evidence here was overwhelming and the Court twice denied defense Rule 29 motions and concluded that there was sufficient evidence for a reasonable jury to conclude that Bright attempted to entice a minor to engage in illegal sexual activity in violation of 18 U.S.C. § 2422(b).  A lengthier motion may have been more detailed but would no more have availed the defendant than the motion that counsel filed.    Bright therefore cannot demonstrate unreasonableness or prejudice based on his counsel's post-trial Rule 29 motion.

4.  Bright is Not Entitled to Relief Based on the Onset of the COVID-19 Pandemic.

Bright argues that he was deprived of his right to a fair trial under the Due Process Clause of the Fifth Amendment because, he contends, jurors were influenced, distracted, and pressured to reach a verdict due to the onset of the COVID-19 pandemic.  The argument not only is procedurally barred but also lacks merit.

**C.  Bright is Procedurally Barred From Asserting a Claim That He Was Deprived of the Right to a Fair Trial Because He Failed to Raise the Claim on Direct Appeal**

Bright claims that the onset of the COVID-19 pandemic deprived him of his right to a fair trial because, according to Bright, the jury was influenced, distracted, and pressured into reaching a verdict.  But Bright failed to raise this issue on direct appeal.  As a result, the claim is barred because Bright cannot establish both cause for his failure to raise the issue previously and actual prejudice from the alleged violation.  Nor can he establish actual innocence.

15

Generally, claims not raised on direct appeal may not be raised in a Section 2255 petition. *Zhang v. United States*, 506 F.3d 162, 166 (2d Cir. 2007). A petitioner may not raise new grounds for relief in a section 2255 proceeding that previously could have been raised in a direct appeal, unless he has shown either "(1) 'cause' for the failure to bring a direct appeal and 'actual prejudice' from the alleged violations; or (2) 'actual innocence.'" *Id*. (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)); *see also United States v. Pipitone*, 67 F.3d 34, 38 (2d Cir. 1995) ("A party who fails to raise an issue on direct appeal and subsequently endeavors to litigate the issue via a § 2255 petition must 'show that there was cause for failing to raise the issue, and prejudice resulting therefrom.'") (quoting *Douglas v. United States*, 13 F.3d 43, 46 (2d Cir. 1993)). "To satisfy the cause requirement, the petitioner must show circumstances external to the petitioner, something that cannot be fairly attributed to him." *Zhang*, 506 F.3d at 166 (internal quotation marks omitted). Alternatively, to establish actual innocence, a petitioner must demonstrate by a preponderance of the evidence that "'it is more likely than not that no reasonable juror would have convicted him.'" *United States v. Thorn*, 659 F.3d 227, 234 (2d Cir. 2011) (quoting *Bousley*, 523 U.S. at 623).

Bright cannot establish cause for failing to raise the issue on direct appeal. He contends that the trial record was inadequate at the time to raise the issue. But he does not point to any new addition to the record rectifying this claimed inadequacy. To the extent that Bright's argument suggests that facts regarding COVID-19 discovered after the jury returned its verdict are relevant to whether there was any influence, distraction, or pressure on the jury to reach that verdict, the argument is nonsensical. A jury cannot be influenced by what is not yet known.

Bright also cannot establish actual prejudice. The Court twice considered Bright's Rule 29 Motion and twice denied it, concluding that there was sufficient evidence for a reasonable

16

jury to conclude that Bright attempted to entice a minor to engage in illegal sexual activity.  For

the same reason, Bright cannot establish actual innocence.  The evidence of Bright's guilt

introduced at trial was substantial and compelling.

### D.  Bright Cannot Establish a Constitutional Violation Based on the Onset of the COVID-19 Pandemic

Even if Bright's claim were not procedurally barred, it would fail on the merits.  Bright

argues that he was deprived of his right to a fair trial under the Due Process Clause of the Fifth

Amendment because, he contends, jurors were influenced, distracted, and pressured to reach a

verdict due to the onset of the COVID-19 pandemic.  It is undisputed that the beginning of the

pandemic in New York City was a difficult and uncertain time.  But Bright's argument assumes

influence in the absence of any indication that a single juror in fact was influenced or pressured

to reach a verdict, and that any such pressure was to reach a guilty rather than not guilty verdict.

To succeed on a collateral attack on a final judgment under Section 2255, a Petitioner

must demonstrate either the existence of a "constitutional error . . . or an error of law or fact that

constitutes a fundamental defect which inherently results in a complete miscarriage of justice."

*United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotation marks and citations

omitted).  Bright cannot do so here.

The jurors in Bright's trial committed to being impartial and took an oath expressing that

commitment.  (Tr. 6, 636).  The Court instructed the jury to bring any issues that might affect

that impartiality directly to the Court's attention.  (Tr. 13 ("Now, it may become necessary, in the

course of the trial, to send the Court a note.  Maybe it's about something you saw, you heard,

you read, you experienced. . . . Send the note to the judge directly, to me.")).  After closing

arguments and the Court's instructions on the law, the jury began to deliberate on Friday, March

13, 2020, at 3:37 p.m.  (Tr. 639).  At 5:06 p.m., the Court read a note from the jury, which stated:

17

"We're done for the day.  We will return on Monday."  (Tr. 641).  Trial then adjourned until Monday, March 16, 2020, at 10:00 a.m.  (Tr. 643).

On Monday, March 16, 2020, the Court moved the trial into a larger courtroom with a larger jury room to allow the jurors more space.  (Tr. 645).  Juror Number Three, however, did not return because he was feeling unwell.  The Court found good cause to excuse the juror and continue with a jury of eleven, pursuant to Federal Rule of Criminal Procedure 23(b)(3).  (Tr. 645).  The defense objected, arguing that Bright was entitled a jury of twelve.  (Tr. 646–47).  The Court disagreed based on the text of Rule 23(b)(3), which provides for a jury of eleven if there is good cause to excuse a juror once deliberations have begun, as the Court found here.  (Tr. 647).  The defense did not make any other objections or seek a mistrial on the grounds of influence or pressure due to the COVID-19 pandemic, and the jury continued its deliberations.

At 12:36 p.m., the Court received a note from the jury requesting to review certain exhibits and for clarification regarding the FBI's review of Bright's devices.  (Tr. 649).  After addressing the note, the Court sent the jury back to the jury room to continue deliberating.  At 4:10 p.m., the jury sent a note stating: "We have reached a verdict."  (Tr. 657).  The Court confirmed that the verdict was unanimous.  (Tr. 658).  The Deputy Clerk asked whether the jury had found Bright guilty or not guilty.  (Tr. 658).  The Foreperson responded that the jury's verdict was guilty.  (Tr. 658).  The Deputy Clerk then polled the jury, each of whom confirmed that it was his or her verdict that Bright was guilty.  (Tr. 658–59).

The record is clear that the jury understood its oath and its obligation to communicate any issues or questions to the Court.  The jury deliberated for several hours, rather than rushing to a verdict.  At no point did any juror raise that he or she felt influenced or pressured to reach a verdict due to the onset of the COVID-19 pandemic.  *Cf. Jacobson v. Henderson*, 765 F.2d 12

(2d Cir. 1985) (noting that jurors had the opportunity to bring to the Court's attention any undue outside influence or inability to remain impartial and that none had done so).  Nor did the jury deadlock.  The jury rendered its service according to its oath, notwithstanding challenging circumstances, and in light of the significant and compelling evidence of Bright's guilt, returned a verdict of guilty after a little less than a day and a half of deliberations.

Contrary to Bright's argument, the fact that the trial in *United States v. Andrews*, 19 Cr. 131, was stayed and Bright's was not does not establish that Bright's right to a fair trial was violated.  Jury deliberations in Bright's trial proceeded on March 16, 2020, consistent with an order from the Chief Judge regarding the COVID-19 pandemic, *see In re: Coronavirus/COVID-19 Pandemic*, 20 Misc. 154 (S.D.N.Y. Mar. 13, 2020), and the jury returned its verdict later that day.  By contrast, on the same day, March 16, the Court in *Andrews* stated that there was "a ways to go in this trial," and that the Court did not expect the jury to be in a position to reach a verdict until Thursday, March 19, 2020, at the earliest.  *Andrews*, 19 Cr. 131, Tr. 827.  The Court noted that it anticipated "the better part of a day of evidence to come, including from a cooperating witness," followed by closing arguments and a "complex charge" on the offenses at issue, before the jury would even begin to deliberate.  *Id.*  The Court's determination in *Andrews* that there was a serious risk that jurors would be distracted due to the COVID-19 pandemic contemplated that timeline.  It also contemplated that if the timing and circumstances had been different, a different approach would have been appropriate, such as an inquiry of the jurors regarding their ability to deliberate fairly.  *Id.* at 828.  The timing and circumstances of Bright's trial were different, and permitting the jury to continue deliberating on March 16, 2020 was appropriate and consistent with the Order of the Chief Judge.  Whether the Court would have stayed Bright's trial had the jury not reached a verdict on that day is both purely hypothetical and irrelevant to

the instant Motion.  The record relevant to this Motion indicates that no juror expressed concern

about his or her ability to deliberate fairly and impartially, and nothing in the record indicates

that any juror in fact failed to uphold the oath to deliberate fairly and impartially.[2]

Ultimately, the jurors in Bright's trial performed their civic service in challenging

circumstances and returned a verdict of guilty, which the Court determined was supported by the

evidence.  Bright has failed to establish a constitutional violation or a "fundamental defect which

inherently results in a complete miscarriage of justice."  The Court therefore should deny the

Petition.

---

[2] In addition, there are no grounds for a hearing in these circumstances.  In an inquiry into the
validity of a verdict, Rule 606(b)(1) prohibits juror testimony regarding the jury's internal
deliberations, including any statements made or incidents that occurred during deliberations, the
effect of anything on a juror's vote, and any juror's mental processes concerning the verdict.
Rule 606(b)(2), on the other hand, permits juror testimony about whether an outside influence
was improperly brought to bear on any juror for purposes of invalidating or supporting a verdict.
Fed. R. Evid. Rule 606(b).  Outside influences typically fall into categories such as outside
prejudicial information, for example, a newspaper article, contacts between jurors and third
persons, and bribes of jurors to find a defendant guilty.  But "Rule 606(b) does not permit a juror
to testify as to the actual effect of these matters on the testifying juror or on any other juror."
*Marcavage v. Board of Trustees of Temple University*, 400 F. Supp. 2d 801, 805–806 (E.D.P.A.
2005).  Thus, to the extent that the nightly public reporting regarding the onset of the COVID-19
pandemic constituted outside influence, Rule 606(b) still would prohibit testimony "regarding
the impact of [that] outside influence" because such testimony "would necessarily be testimony
regarding the deliberative process, which is clearly prohibited by Rule 606(b).  *Id.* at 806.

## **CONCLUSION**

For the foregoing reasons, this Court should deny Bright's motion to vacate and set aside his conviction and sentence. Because the defendant has not made a substantial showing of the denial of a constitutional right, no certificate of appealability should issue.

Dated: New York, New York
         February 10, 2023

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:   /s/ Lisa Daniels                      __
        Lisa Daniels
        Assistant United States Attorney
        (212) 637-2955