UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
PETER BRIGHT,

                                     Petitioner,                          19-cr-521 (PKC)
                                                                          22-cv-8847 (PKC)


              -against-                                          OPINION AND ORDER

UNITED STATES OF AMERICA,

                                     Respondent.
-------------------------------------------------------------x

CASTEL, U.S.D.J.

              Peter Bright, proceeding pro se, moves to vacate, set aside or correct his sentence

pursuant to 28 U.S.C. § 2255.  (19 Cr. 521, ECF 108.)  In a verdict returned on March 16, 2020,

a jury found Bright guilty of one count of attempted enticement of a minor to engage in illegal

sexual activity, in violation of 18 U.S.C. § 2422(b).  The Court sentenced Bright principally to

144 months' imprisonment.  (ECF 101.)  Bright urges that he did not receive the effective

assistance of counsel guaranteed by the Sixth Amendment because his trial attorney did not raise

an entrapment defense, bring certain objections at trial or assert an insufficiency-of-evidence

argument in post-trial briefing.  See generally Strickland v. Washington, 466 U.S. 668, 687-89,

693-94 (1984).  He also asserts that circumstances related to the onset of the Covid-19 pandemic

impaired the jury's ability to deliberate fairly, resulting in an unfair trial that deprived him of the

due process guaranteed by the Fifth Amendment.

              For the reasons that will be explained, Bright's motion for section 2255 relief will

be denied in its entirety.

BACKGROUND.

The Indictment charged Bright with one count of attempted enticement of a minor to engage in illegal sexual activity in violation of 18 U.S.C. § 2422(b).  (ECF 9.)

Bright's first trial commenced on February 11, 2020.  (ECF 55.)  The Court declared a mistrial on February 19, 2020, after the jury failed to reach a unanimous verdict.  (ECF 60.)

Bright's second trial commenced on March 10, 2020.  (ECF 75.)  The government rested on March 12, 2020.  The defense presented its case on March 12 and 13.  Bright testified in his own defense.  The jury began deliberations on Friday, March 13 and continued its deliberations on Monday, March 16, when it reached a verdict.  The Court excused one juror on March 16 after that person reported an illness, and the unanimous verdict was reached by an eleven-person jury.  (See ECF 83.)

At trial, the government offered evidence that Bright attempted to engage in sexual activity with a nine-year-old boy and seven-year-old girl by coordinating with an undercover FBI agent who posed as their mother.  The government called four witnesses, including the undercover FBI agent.  Evidence included chat records from messaging apps, a recording between Bright and the agent created by Bright himself, and items that he brought to a meeting where he and the undercover FBI agent discussed his preparatory steps for engaging in sexual activities with the two children.

Evidence reflected that in April 2019, Bright contacted a self-identified "[m]ommy" who claimed on an online platform called KinkD to be "[l]ooking for a teacher to teach my kids about the birds and the bees."  (Tr. 32-33.)  The undercover agent posing as that

mother identified her children as age seven and nine, and continued to engage Bright via messages on WhatsApp. (Tr. 41-42.)  These included graphic messages from Bright and requests for photos of the two children.  Trial evidence showed that over an eight-day period in May 2019, Bright exchanged 769 WhatsApp messages with the purported mother. (Tr. 79.)

In May 2019, Bright and the purported mother arranged for an in-person meeting, after which she was to bring him to her apartment for a sexual encounter with the two children. In advance of the meeting, Bright noted his "fear" that the mother was "a cop." (Tr. 71.)  When Bright arrived to the meeting in May 2019, he showed her his online test results for sexually transmitted diseases and confirmed that he wanted to walk to her home and meet her children. (Tr. 76.)  As they walked to the apartment to meet the children, Bright was arrested.  (Tr. 76-77.) Four condoms were found on his person at the time of his arrest.  (Tr. 221-26.)  Bright also had made an audio recording of his meeting with the purported mother.  (Tr. 226-27.)

In his post-arrest statements to law-enforcement, Bright stated that he initially believed that his prospective sexual partners would be adults role-playing as children, but once he received photographs of actual children, realized that this was not an exercise in fantasy.  He stated that he then decided to gather evidence against the mother.  At that time, he told law enforcement that he did not consider approaching authorities with evidence of the chats already in his possession.

Bright testified in his own defense at trial, and the defense also called as a witness Dr. James Cantor, a clinical psychologist.  Cantor testified about a sexual kink called "age play" in which participants pretend to be an age different than what they are.  (Tr. 310.)  Bright testified that he first believed that the mother was an "age player," but after seeing photos of the children, concluded that she was either a "scammer or a child molester."  (Tr. 379-80, 448.)  He

testified that he intended to "play along" with her and "get some evidence, get a recording, and give that recording to law enforcement." (Tr. 449.) Bright testified that he met with the mother in order to learn where she lived and to record an incriminating statement, and that the condoms in his possession were from a date the preceding Friday. (Tr. 472-73, 429-30.) Bright testified that, contrary to his post-arrest statement, he had considered giving his chats to the police but did not want to surrender his phone. (Tr. 467-68, 472, 541.)

At the close of his case, the defense moved for a judgment of acquittal under Rule 29, Fed. R. Crim. P, based on insufficient evidence, and the Court denied the motion. (Tr. 299-300.) The defense did not renew the motion for acquittal at the close of Bright's own case. (Tr. 551-53.) After the verdict was returned, Bright moved for a post-trial judgment of acquittal under Rule 29, but did not raise any new arguments and cited to the existing record. (ECF 87.) The Court denied the motion in an Opinion and Order, concluding that there was sufficient evidence for a reasonable jury to conclude that Bright attempted to entice a minor to engage in illegal sexual activity in violation of 18 U.S.C. § 2422(b). (ECF 92.)

Bright filed a direct appeal. He urged that this Court deprived him of an impartial jury because it did not ask prospective jurors about their prejudices against people with nonconventional sexual practices with sufficient specificity, improperly excluded expert testimony about the lack of connection between "age play" and pedophilia, and improperly admitted certain evidence under Rule 404(b). The Second Circuit affirmed the judgment and conviction in a summary order. United States v. Bright, 2022 WL 53621 (2d Cir. 2022).

DISCUSSION.

I.    Legal Standard.

A person in federal custody may collaterally attack a final judgment in a criminal case based on "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in complete miscarriage of justice.'"  Graziano v. United States, 83 F.3d 587, 589-90 (2d Cir. 1996) (per curiam) (citation omitted).  Review of a section 2255 motion "is 'narrowly limited in order to preserve the finality of criminal sentences and to effect the efficient allocation of judicial resources.'"  United States v. Hoskins, 905 F.3d 97, 102 (2d Cir. 2018) (quoting Graziano, 83 F.3d at 590).  An evidentiary hearing may be necessary if the motion "set[s] forth specific facts supported by competent evidence," but not if the factual assertions are "vague, conclusory, or palpably incredible."  Gonzalez v. United States, 722 F.3d 118, 130-31 (2d Cir. 2013) (quotation marks omitted).

A defendant asserting that counsel's performance was constitutionally deficient under the Sixth Amendment must satisfy a two-prong test.  "Under Strickland, we first determine whether counsel's representation 'fell below an objective standard of reasonableness.'  Then we ask whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  Hinton v. Alabama, 571 U.S. 263, 272 (2014) (quoting Padilla v. Kentucky, 559 U.S. 356, 366 (2010)); Strickland, 466 U.S. at 694).

In deciding whether counsel's performance was objectively reasonable, a court must make "'every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time,' and 'must indulge a strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance.'" Bierenbaum v. Graham, 607 F.3d 36, 50–51 (2d Cir. 2010) (quoting Strickland, 466 U.S. at 689).  In deciding the prejudice prong, a court must determine whether "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  Id. (quoting Strickland, 466 U.S. at 694).  "'[A]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'"  Griggs v. Lempke, 797 F. App'x 612, 617 (2d Cir. 2020) (summary order) (quoting Strickland, 466 U.S. at 691).

II.    Bright Has Not Identified Ineffective Assistance Related to an Entrapment Defense.

Bright urges that trial counsel performed ineffectively by not pursuing an entrapment defense or advising him on the availability of such a defense.  He states that law enforcement "originate[d] a criminal design" in order "to implant in an innocent person's mind the disposition to commit a criminal act, and then induce the commission of the crime so that the government may prosecute."  (Def. Mem. at 10-11.)  He asserts that "[t]he question of entrapment was plainly one that should have been put to the jury."  (Id. at 13.)

Entrapment is an affirmative defense that requires a defendant to demonstrate that the government induced the crime, at which point the government must prove predisposition beyond a reasonable doubt.  The Second Circuit explains:

> Entrapment is an affirmative defense that [defendant] must show by a preponderance of the evidence.  The defense has two elements: (1) government inducement of the crime, and (2) lack of predisposition on the defendant's part.  If a defendant presents credible evidence of government inducement, then the prosecutor must show predisposition beyond a reasonable doubt.  A defendant is predisposed to commit a crime if he is ready and willing without persuasion to commit the crime charged and awaiting any propitious opportunity to do so.  The government may prove predisposition by, among other things, showing defendant's previously formed design

- 6 -

to commit the crime or his willingness to commit the crime as
evidenced by his ready response to the inducement.

United States v. Bala, 236 F.3d 87, 94 (2d Cir. 2000) (internal citations and quotation marks

omitted).

       According to Bright, the trial evidence shows he was not predisposed to commit

the underlying offense.  He notes "that many minutes elapsed before Mr. Bright even

acknowledged the sending of the picture of the male child; hardly what one would expect from

an eager criminal." (Def. Mem. 13.)  Bright states that he previously engaged in "full and frank

discussions of human anatomy and sex acts" but "became downright oblique and

uncharacteristically coy when faced with the picture, using euphemism and allusion where

before he had been explicit." (Id.)  He notes that he met with the undercover agent at 2 p.m. on a

weekday, a time when the two children would have been in school, and "explicitly told the agent

that he wanted to meet her alone, without the children being present.  These are not the acts of

someone eager and willing to commit a criminal act." (Id.)

       Trial counsel's decision to forgo an entrapment defense was not ineffective

performance under Strickland.  "When a petitioner claims that he 'would have pursued an

[entrapment] defense but for his lawyer[ ]' the Strickland 'prejudice inquiry will depend largely

on whether the affirmative defense likely would have succeeded at trial.'"  Stevenson v. United

States, 2021 WL 5401658, at *4 (S.D.N.Y. Nov. 18, 2021) (Preska, J.) (brackets in original;

quoting Kovacs v. United States, 744 F.3d 44, 53 (2d Cir. 2014)).  "An attorney is not required to

argue each and every potential defense.  This is especially true with regard to the entrapment

defense, which could materially harm the interests of the defendant and has a small likelihood of

success at trial." Aluear-Rodriguez v. United States, 1996 WL 67939, at *2 (S.D.N.Y. Feb. 15,

1996) (Duffy, J.).  That is because the entrapment defense "in effect admits that the defendant

engaged in criminal conduct, and attempts to explain away the commission of criminal acts.
Defense counsel tend to shy away from alternative arguments that dilute the force of a denial of
wrongdoing."  United States v. Balis, 2009 WL 1117274, at *6 (S.D.N.Y. Apr. 24, 2009)
(Lynch, J.).

        The evidence that Bright cites in support of an entrapment defense is thin: that
mere "minutes" elapsed before he responded to a photo of the "male child" does not suggest a
lack of predisposition, nor does any purported shift to "coy" or "oblique" language following
what Bright himself calls "explicit" and "frank" conversation.  Similarly, the fact that he met
with the purported mother approximately one hour before the children were to be released from
school does not suggest a lack of predisposition and is consistent with preparatory conduct.  In
its effort to prove predisposition, the government likely would have emphasized that Bright
himself initiated online contact with a self-described "mommy," requested photos of the two
children, and exchanged hundreds of explicit messages with the undercover agent posing as the
mother.  "Even more disastrously, had [Bright] raised such a defense, the door would have been
opened to further proof of predisposition . . . ."  Balis, 2009 WL 1117274, at *6.

        Based on the thin inferences that Bright draws from the trial record and the strong
risk that an entrapment defense could have badly backfired, his attorney performed reasonably in
not pursuing an entrapment defense.  Even if counsel performed ineffectively by not raising the
defense or fully advising Bright on the issue of entrapment, he has not shown a reasonable
probability that the trial outcome would have been different.  Bright has failed to show either
ineffective performance or resulting prejudice, and section 2255 relief premised on an
entrapment defense will be denied.

III.    <u>Bright Has Not Identified Ineffective Assistance Based on Counsel's Failures to Object.</u>

        Bright also asserts that his trial counsel was ineffective based on the failure to raise certain objections at trial.  He has not demonstrated either ineffective performance or resulting prejudice, and his motion for section 2255 relief will be denied.

        First, Bright contends that trial counsel performed ineffectively when she did not object to "prosecutorial mischaracterizations" when the government, in its opening statement, said that Bright told the FBI that he was a journalist for a technology website and that he recorded his meeting with the undercover agent.  (Def. Mem. 15-16.)  According to Bright, these statements mischaracterized his defense, which did not relate to work as an investigative journalist.  But Bright dos not dispute that he made this statement to law enforcement, and any objection likely would have been futile.  Even if such an objection were sustained, there is no basis to conclude that the trial outcome would have been different.

        Second, Bright contends that trial counsel should have objected to questions that the government asked of Kenneth Fisher, the editor-in-chief of a website that employed Bright.  (Def. Mem. 16.)  The government asked Fisher whether Bright was an investigative journalist and whether reporting on child exploitation would have been within his "usual domain."  (<u>Id.</u>)  The Court overruled defense counsel's objection to the question, "Would you have approved an article by Mr. Bright on child exploitation?"  (<u>Id.</u>; Tr. 288.)  Bright urges that defense counsel should have objected to the government's other questions because they "fundamentally misrepresented" his defense.  (Def. Mem. 16.)  But questions about Bright's journalistic background were appropriate and relevant in light of his statements to law enforcement, and Bright's attorney was not ineffective in failing to assert an objection that likely would have been

futile.  Also, there is no basis to conclude that the trial outcome would have been different if the objections had been raised and sustained.

Third, Bright contends that the government mischaracterized the evidence in its summation by stating that Bright "said he forgot" to turn over his chat records when the FBI inquired why he did not do so.  (Def. Mem. 17.)  The government then stated, "So he tried to cover it up again by telling you that he only pretended to forget."  (Id.; Tr. 563.)  Bright asserts that the government offered no evidence of statements by Bright claiming that he forgot or pretended to forget to turn over any chats, and that the government's summation mischaracterized the evidence.  (Def. Mem. 17.)  At trial, Bright testified that he had considered turning over his chats to law enforcement but did not want to surrender his phone, and conceded that his initial statement to the FBI that he did not consider turning over his chats was untruthful.  (Tr. 467-68, 472, 541.)  "The prosecution and the defense are generally entitled to wide latitude during closing arguments, so long as they do not misstate the evidence."  United States v. Tocco, 135 F.3d 116, 130 (2d Cir. 1998).  "The law has long recognized that summations – and particularly rebuttal summations – are not detached expositions," so "prosecutors' comments standing alone will rarely warrant overturning conviction."  United States v. Farhane, 634 F.3d 127, 167 (2d Cir. 2011) (internal quotation marks and citations omitted).  While the government's characterization placed an argumentative gloss on Bright's testimony, his trial counsel was not ineffective in failing to object because an objection would emphasized the inconsistencies in Bright's statements.  There also is no basis to conclude that the trial outcome would have been different if such an objection had been raised and sustained.

Fourth, Bright asserts that in its summation the government mischaracterized expert testimony with the statement, "Now, the defense wants to make this trial into something it

isn't about, to frame it as if, if he is into kink, then he cannot intend to have sex with minors."
(Def. Mem. 17; Tr. 601.)  As characterized by Bright, his defense was that "Mr. Bright cannot be
inferred to want to have sex with minors solely on the basis of his interest in age-play."  (Def.
Mem. 17.)  Bright urges that the government made "improper insinuations and assertions
calculated to mislead the jury."  (Id. 18.)  Bright's challenge to the government's argument is
semantic, and his trial counsel was not ineffective in failing to object to the government's view
of the evidence.  There also is no basis to conclude that the trial outcome would have been
different if such an objection had been raised and sustained.

Bright has not identified ineffective performance or resulting prejudice based on
trial counsel's failure to raise these objections at trial.

IV.    Bright Has Not Identified Ineffective Assistance Based on Counsel's Post-Trial Motion.

In a letter-motion of June 15, 2020, the defense moved for a renewed judgment of
acquittal pursuant to Rule 29.  (ECF 87.)  It urged that the government failed to meet its burden
on each element of the defense and cited to the portion of the trial transcript where the defense
moved for a judgment of acquittal.  (Id.)  The Court denied the motion in a nine-page Opinion
and Order, concluding that defendant did not meet the heavy burden of establishing that no
reasonable trier of fact could have found him guilty based on the trial evidence.  (ECF 92.)

Bright urges that his counsel performed ineffectively in filing a post-trial motion
that he describes as "proforma, perfunctory" and "relying only on the existing record."  (Def.
Mem. 23.)  He argues that the trial evidence showed, at most, actions that "might be considered
unusual" or "in poor taste" but did not demonstrate beyond a reasonable doubt that he attempted
"to attain the assent of minors to engage in some activity . . . ."  (Def. Mem. 26.)

"With respect to <u>Strickland</u>'s first prong, there is no professional requirement that defense counsel file a motion for a judgment of acquittal on every count in every case no matter the merits of the motion." <u>Awulye v. United States</u>, 2020 WL 774093, at *4 (S.D.N.Y. Feb. 18, 2020) (Sullivan, J.) (citing <u>United States v. DiTommaso</u>, 817 F.2d 201, 215 (2d Cir 1987)). For the reasons explained in the Opinion and Order of September 2020, the evidence was sufficient for a reasonable trier of fact to find Bright guilty. (ECF 92.) Counsel did not perform ineffectively by electing not to file a lengthier, more verbose memorandum, and Bright has not raised any arguments to support the conclusion that a more exhaustive Rule 29 memorandum would have succeeded.

V.    Bright Is Not Entitled to Section 2255 Relief Based on
      <u>Circumstances Related to the Covid-19 Pandemic.</u>

Bright asserts that the onset of the Covid-19 pandemic was a source of stress and distraction to the jury, causing them to rush deliberations and resulting in an unfair trial that deprived him of the due process guaranteed by the Fifth Amendment. (Def. Mem. 4-10.) He states that jurors confronted "a mortal risk" by attending trial, and were unable to "remain conscientious, fair and impartial . . . ." (<u>Id.</u>) He notes that in <u>United States v. Andrews</u>, 19 Cr. 131 (PAE), Judge Engelmayer stayed the trial on March 16, 2020, after the defense urged that the Covid-19 pandemic presented a health risk to the jurors, and that Judge Engelmayer later declared a mistrial. (Def. Mem. 6-9.)

Bright also points out that during the trial, one juror was excused on March 16, 2020, after he reported feeling ill. (<u>Id.</u> at 9; <u>see</u> Tr. 645.) Defense counsel then moved for a mistrial and that motion was denied. (Def. Mem. 10; <u>see</u> Tr. 645-47.) Bright argues that the juror's absence was a "constant reminder" to the remaining jurors about the dangers they faced from the Covid-19 virus. (Def. Mem. 9.)

Because Bright did not raise this claim on direct appeal, he is in procedural default and may not bring this claim for relief through a section 2255 motion. "A motion under § 2255 is not a substitute for an appeal. In general, a claim may not be presented in a habeas petition where the petitioner failed to properly raise the claim on direct review." Zhang v. United States, 506 F.3d 162, 166 (2d Cir. 2007) (quotation marks and internal citation omitted). "If such a claim has not been presented on direct review, the procedural default bar may be overcome only where the petitioner establishes either (1) 'cause' for the failure to bring a direct appeal and 'actual prejudice' from the alleged violations; or (2) 'actual innocence.'" Id. Bright suggests that the trial record was inadequate to raise this issue on direct appeal but does not identify what further developments would have been required. (Def. Mem. 10.) His vague assertion does not demonstrate cause for procedural default. As to prejudice, the Opinion and Order on Bright's Rule 29 motion explains that the evidence was sufficient to support a reasonable trier of fact's finding of guilt (ECF 92), and Bright has not demonstrated prejudice. For the same reasons explained in that Opinion and Order, Bright also cannot demonstrate actual innocence.

In a reply memorandum and related declaration, Bright asserts that he urged his appellate counsel to raise on appeal the effect of the Covid-19 pandemic on jury deliberations, but that appellate counsel elected not to do so. (ECF 120, 121.) Ineffective assistance of counsel may demonstrate cause sufficient to excuse procedural default. See Sapia v. United States, 433 F.3d 212, 218 (2d Cir. 2005). "In attempting to demonstrate that appellate counsel's failure to raise a state claim constitutes deficient performance, it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made. However, a petitioner may

establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (citation omitted); accord McKee v. United States, 167 F.3d 103, 106-07 (2d Cir. 1999) (applying Mayo to section 2255 motion). As noted, Bright's appellate counsel urged on direct appeal that the Court deprived him of an impartial jury because it did not ask prospective jurors about their prejudices against people with nonconventional sex practices with sufficient specificity, improperly excluded expert testimony about the lack of connection between "age play" and pedophilia and improperly admitted certain evidence under Rule 404(b). See Bright, 2022 WL 53621, at *1. While these arguments were unsuccessful, Bright does not demonstrate why these arguments "were clearly and significantly weaker" than Bright's speculative contentions about the effect of Covid-19 on jury deliberations. See Mayo, 13 F.3d at 533.

Even if this argument were not procedurally barred, Bright does not identify a due process violation. "[A] collateral attack on a final judgment in a federal criminal case is generally available under § 2255 only for a constitutional error . . . or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" United States v. Bokun, 73 F.3d 8, 12 (2d Cir.1995) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)). Bright does not point to evidence suggesting that jurors were influenced or distracted by the onset of the pandemic in a way that impeded their ability to deliberate fairly. The jury began deliberations on the afternoon of Friday, March 13 and resumed deliberations on Monday, March 16, when it reached a verdict. On March 16, the Court moved the trial to a larger courtroom with a larger jury room in order to provide more space. (Tr. 645.) At 12:36 p.m. on March 16, the Court received a jury note requesting review of certain exhibits and

clarification about the FBI's review of Bright's devices.  (Tr. 649.)  The request is consistent

with careful review of the evidence, as opposed to a jury rushing to a verdict because it was

preoccupied by pandemic-related concerns.  When the jury returned its verdict, the Deputy Clerk

polled the jurors, who each confirmed his or her verdict.  (Tr. 658-59.)  At no point in trial

proceedings did any juror indicate that he or she was influenced by concerns related to Covid-19

or act in a way suggesting a rush to judgment.

To the extent that Bright points to the stay of trial in Andrews, that trial was

positioned differently than Bright's.  On the morning of March 16, 2020, Judge Engelmayer

observed that there was "a ways to go in this trial" and that a verdict would likely not be reached

until Thursday, March 19 at the earliest, during which time there was "a grave risk" of juror

distraction.  See 19 Cr. 131 at Tr. 827 (ECF 448).  Judge Engelmayer also noted that if the

timing had been different, it may have been appropriate to question the jurors daily regarding

their ability to deliberate fairly.  See id. 828.  He expressed doubt that "we could have retained

12 jurors through Thursday."  (Id.)  In Bright's case, however, the evidence was closed,

summations complete, Court instructions delivered and deliberations in their second day.  The

circumstances of the trial stay in Andrews do not speak to the jury's deliberations in this trial or

support an inference that Bright did not receive a fair trial.

Accordingly, Bright is procedurally barred from raising this argument in a section

2255 motion, and if he were not, the motion would be denied on the merits.

CONCLUSION.

Bright's motion for section 2255 relief is DENIED.  The Clerk is respectfully

directed to terminate the motion (19 Cr. 521, ECF 108) and to close the civil case, 22 Civ. 8847.

Bright has not made a substantial showing of the denial of a constitutional right, and accordingly, a certificate of appealability will not issue.  28 U.S.C. § 2253; see Blackman v. Ercole, 661 F.3d 161, 163-64 (2d Cir. 2011).  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
        December 12, 2024

COPY MAILED TO:

Peter Bright
Reg. No. 76309-054
FCI Petersburg Medium
Federal Correctional Institution
P.O. Box 1000
Petersburg, VA  23804